UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

      Plaintiff,

v.

MICHIGAN STATE
UNIVERSITY BOARD OF
TRUSTEES, *et al.*

      Defendants.

Case No. 1:24-cv-01029-HYJ-SJB
Hon. Hala Y. Jarbou
Mag. Sally J. Berens

**Oral Argument Requested**

---

## DEFENDANTS MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES' AND THE MOVING TRUSTEES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT[1]

Defendants Michigan State University Board of Trustees and the Moving Trustees—Dianne Byrum, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna Scott, and Kelly Tebay—move under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss all claims against them in Plaintiff Jack Lipton's Amended Complaint. ECF No. 10, PageID.65-104. In support of their motion, the Board and the Moving Trustees state:

1.      Lipton filed an Amended Complaint alleging two counts for damages under 42 U.S.C. § 1983. ECF No. 10, PageID.96-100, ¶¶ 182-205.

---

[1] In this motion and the attached supporting brief, the "Moving Trustees" refers collectively to Defendants Dianne Byrum, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna Scott, and Kelly Tebay.

2.      Count I alleges First Amendment retaliation against each of the eight MSU Trustee defendants (including the Moving Trustees) in both their official and personal capacities. ECF No. 10, PageID.96-98, ¶¶ 182-196.

3.      Count II alleges *Monell* liability against the Board and the eight MSU Trustee defendants (including the Moving Trustees) in both their official and personal capacities.  ECF No. 10, PageID.98-100, ¶¶ 197-205.

**Claim Against the Board**

4.      The single claim against the Board under *Monell* should be dismissed because the Board is not a "person" subject to suit under 42 U.S.C. § 1983.

5.      The Board is also protected from suit because, as an arm of the State, it has sovereign immunity under the Eleventh Amendment.

**Claims Against the Moving Trustees**

6.      Lipton's damages claims against the Moving Trustees in their *official* capacities fail because official-capacity suits against state officials—like university trustees—are treated as suits against the state. The Moving Trustees are thus not subject to suit under § 1983 in their official capacities.

7.      Lipton's *Monell* claim against the Moving Trustees should be dismissed for another reason too: *Monell* is inapplicable to claims against individuals in their *personal* capacities.

2

10173833.7

8.    The Moving Trustees are also entitled to qualified immunity for the claims against them in their personal capacities.

**Injunctive Relief**

9.    The Amended Complaint includes a purported third count entitled "Injunctive Relief," ECF No. 10, PageID.100-101, ¶¶ 206-217, even though "injunctive relief is not a cause of action, it is a remedy." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (citation omitted).

10.    Lipton's injunctive relief "claim" seeks the "recall, resignation, or removal" of Trustees Rema Vassar and Dennis Denno from the Board, and "an order enjoining any further disparagement or retaliation" against Lipton "by *any* employee, agent, representative, or Trustee of MSU." ECF No. 10, PageID.100-101, ¶¶ 211-212 (emphasis added).

11.    Because the Board is immune from suit, Lipton cannot obtain any damages, much less injunctive relief, against it here.

12.    Lipton's "claim" for injunctive relief against the Moving Trustees should also be dismissed because: (1) he does not allege any ongoing constitutional violations; (2) the relief sought is outside the power and authority of the Court; and (3) the relief sought is, in any event, too overbroad and vague to satisfy the standards for injunctive relief.

13.    The Board and the Moving Trustees rely on and incorporate their Brief in Support by reference.

WHEREFORE, the Board and the Moving Trustees respectfully request that the Court grant their motion and dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted,

ZAUSMER, P.C.

s/ Mark J. Zausmer
MARK J. ZAUSMER (P31721)
MICHAEL A. SCHWARTZ (P74361)
JASON M. SCHNEIDER (P79296)
Attorneys for Defendants MSU Board,
Byrum, Kelly, Knake Jefferson, Pierce,
Scott, and Tebay
32255 Northwestern Highway, Ste. 225
Farmington Hills, MI  48334
(248) 851-4111; Fax: (248) 851-0100
mzausmer@zausmer.com
mschwartz@zausmer.com
Dated: March 6, 2025                  jschneider@zausmer.com

4

10173833.7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

     Plaintiff,              Case No. 1:24-cv-01029-HYJ-SJB
                            Hon. Hala Y. Jarbou
v.                      Mag. Sally J. Berens

MICHIGAN STATE         **Oral Argument Requested**
UNIVERSITY BOARD OF
TRUSTEES, *et al.*

     Defendants.

_____

**BRIEF IN SUPPORT OF
DEFENDANTS MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES' AND THE MOVING TRUSTEES'
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.     Should the Court dismiss Plaintiff Jack Lipton's claims against Defendant Michigan State University Board of Trustees (the "Board") where courts in this District have consistently held that the Board is an arm of the State and is therefore not subject to suit under § 1983 and protected by sovereign immunity?

>      The Board and the Moving Trustees say:  Yes.
>      Lipton says: No.

2.     Should the Court dismiss Lipton's official-capacity damages claims against the Moving Trustees because courts treat such claims as ones against the state itself under § 1983?

>      The Board and the Moving Trustees say: Yes.
>      Lipton says: No.

3.     Should the Court find the Moving Trustees are entitled to qualified immunity where they did not violate Lipton's First Amendment rights, much less any clearly established First Amendment rights?

>      The Board and the Moving Trustees say: Yes.
>      Lipton says: No.

4.     Should the Court dismiss Lipton's claims for injunctive relief because he has not alleged any ongoing constitutional violations, doing so would violate separation of powers principles, and the relief sought is overbroad and too vague to satisfy the standards for an injunction?

>      The Board and the Moving Trustees say: Yes.
>      Lipton says: No.

10173833.7

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUES PRESENTED.................................... ii

INDEX OF AUTHORITIES................................................................... iv

I.   INTRODUCTION................................................................................1

II.  FACTUAL ALLEGATIONS............................................................3

III. MOTION STANDARDS...................................................................10

IV.  LEGAL ANALYSIS ..........................................................................12

A. Lipton has failed to state a claim against the Board because it is not a "person" under 42 U.S.C. § 1983. ...............................................................12

B. The Board is protected from suit by the Eleventh Amendment and sovereign immunity.....................................................................................14

C. The Eleventh Amendment and § 1983 bar Lipton's claims for damages against the Moving Trustees in their official capacities................................15

D. Lipton has failed to state a *Monell* claim against the Moving Trustees because individual officials cannot be liable under *Monell*.........................................15

E. The Moving Trustees are entitled to qualified immunity for Lipton's claims against them in their personal capacities. ......................................................16

F. Lipton cannot obtain the injunctive relief he seeks. .....................................21

V. CONCLUSION ................................................................................25

10173833.7

# INDEX OF AUTHORITIES

**Cases**

*Amini v. Oberlin Coll.*,
    259 F.3d 493 (6th Cir. 2001) ................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................11

*Buback v. Romney*,
    156 N.W.2d 549 (Mich. 1968) ............................................................22

*Catlett v. Washington*,
    No. 2:20-cv-13283, 2021 WL 3363394 (E.D. Mich. Aug. 3, 2021)....................13

*Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*,
    727 F.2d 566 (6th Cir. 1984) ..............................................................24

*DeCrane v. Eckart*,
    12 F.4th 586 (6th Cir. 2021) ........................................................ 18, 21

*Directv, Inc. v. Treesh*,
    487 F.3d 471 (6th Cir. 2007). .............................................................11

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ............................................................................14

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*,
    428 F.3d 223 (6th Cir. 2005) ..............................................................19

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...................................................................... 17, 18

*Gardner v. Mich. St. Univ. Bd. of Trustees*,
    No. 1:12–cv–1018, 2014 WL 558818 (W.D. Mich. Feb. 11, 2014)....................12

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) ................................................................................11

*Getz v. Swoop*,
  833 F.3d 646 (6th Cir. 2016) ................................................................................17

*Gibson v. O'Donnell*,
  254 F. Supp. 3d 913 (E.D. Mich. 2017) ...............................................................21

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ..............................................................................................17

*Higbee v. Eastern Mich. Univ.*,
  399 F. Supp. 3d. 694 (E.D. Mich. 2019) ..............................................................19

*Hill v. Bd. of Trustees of Mich. St. Univ.*,
  182 F. Supp. 2d 621 (W.D. Mich. 2001) ..............................................................12

*Hutchins v. Bd. of Trustees of Mich. State Univ.*,
  595 F. Supp. 862 (W.D. Mich. 1984) ...................................................................12

*Johnson v. Moseley*,
  790 F.3d 649 (6th Cir. 2015) ................................................................................17

*Kaplan v. Univ. of Louisville*,
  10 F.4th 569 (6th Cir. 2021) .................................................................................13

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ..............................................................................................15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..............................................................................................11

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) ..............................................................................23

*Maben v. Thelen*,
  887 F.3d 252 (6th Cir. 2018) ................................................................................15

v

*McKenna v. Bowling Green State Univ.*,
  568 F. App'x 450 (6th Cir. 2014) ................................................................. 12, 13

*Monell v. Dep't of Soc. Svcs. of City of New York*,
  436 U.S. 658 (1978) ....................................................................................... 16

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ........................................................................................... 19

*N.L.R.B. v. Teamsters*, *Chauffeurs*, *Helpers and Taxicab Drivers*, *Local Union 327*,
  419 F.2d 1282 (6th Cir. 1970) ....................................................................... 23

*Phillips v. City of Cincinnati*,
  No. 1:18-cv-00541, 2019 WL 2289277 (S.D. Ohio May 29, 2019) ................... 16

*S&M Brands*, *Inc. v. Cooper*,
  527 F.3d 500 (6th Cir. 2008) ......................................................................... 13

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ....................................................................................... 24

*Smith v. Burk*,
  No. 1:19-CV-1018, 2022 WL 1459921 (W.D. Mich, May 9, 2022) ................... 24

*Stephens v. Hayes*,
  374 F. App'x 620 (6th Cir. 2010) ................................................................... 12

*Summers v. Leis*,
  368 F.3d 881 (6th Cir. 2004) ......................................................................... 20

*Thaddeus-X v. Blatter*,
  175 F.3d 378 (6th Cir. 1999) ......................................................................... 17

*Uraz v. Mich. St. Univ. Bd. of Trustees*,
  No. 1:19-cv-00223, 2019 WL 2442314 (W.D. Mich. June 12, 2019) ............... 14

*Verizon Md.*, *Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002) ....................................................................................... 21

10173833.7

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ........................................................................ 12, 15

*Wilson v. Civil Town of Clayton*, *Ind.*,
    839 F.2d 375 (7th Cir. 1988) ...............................................................16

## Constitutions

U.S. Const. amend. XI ...............................................................................14

## Statutes

42 U.S.C. § 1983 ......................................................................................12

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................10

Fed. R. Civ. P. 65(d)(1)(b) ........................................................................24

10173833.7

## I.    INTRODUCTION

Jack Lipton filed an Amended Complaint against the Michigan State University Board of Trustees and the Board's eight individual Trustees, including the Moving Trustees—Dianne Byrum, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna Scott, and Kelly Tebay. Lipton's claims relate to fallout from a Board meeting on October 27, 2023, during which Lipton made a public statement in his role as Faculty Senate Chair. After that meeting, evidently believing that the Board meeting was chaotic, Lipton told a Detroit News reporter that the meeting had descended into "mob rule." Two Trustees, Rema Vassar and Dennis Denno, took exception to Lipton's comments and allegedly attacked him publicly for it. The Moving Trustees were not involved in the alleged attacks.

Lipton's Amended Complaint alleges two counts under 42 U.S.C. § 1983: (1) First Amendment retaliation against the individual Trustees, in both their official and personal capacities; and (2) *Monell* liability against the Board and the individual Trustees, again in both their official and personal capacities.

All claims against the Board should be dismissed because the Board is not a proper party. For more than 25 years, U.S. Supreme Court precedent has established that arms of the State, like the Board, are not "persons" subject to suit under § 1983. And courts in this District have regularly applied that precedent to bar § 1983 suits—

like this one—against the Board. The Board is also entitled to sovereign immunity under the Eleventh Amendment, further precluding any claims against it here.

The same reasoning bars Lipton's damages claims against the Moving Trustees in their official capacities, as courts treat official-capacity damages claims against state officials as suits against the state itself. The Moving Trustees are thus not subject to suit under § 1983 in their official capacities.

Lipton's *Monell* claim against the Moving Trustees separately fails because *Monell* does not apply to the Moving Trustees in their personal capacities. Rather, the *Monell* doctrine exists to impose liability on political bodies for unconstitutional policies or customs established by its individual officials. But when a claim is only against individual officials in their *personal* capacities—as Lipton's claims must be because his claims against the Moving Trustees in their *official* capacities are barred—*Monell* is inapplicable.

The Moving Trustees are *also* entitled to qualified immunity. Lipton's only factual support for his claims against the Moving Trustees is that they did not react strongly enough to Vassar and Denno's attacks on Lipton. He claims that this violated his First Amendment rights. But even on the pleadings, Lipton cannot establish that he engaged in protected speech during or after the October 27, 2023 Board meeting, as all of his statements were made in his capacity as Senate Faculty Chair. Moreover, the fact pattern presented here is unique, and even if Lipton's

constitutional rights were implicated, there was no *clearly established* measure for disciplining Vassar and Denno under the circumstances.

A third "count" seeks injunctive relief in the form of the "recall, resignation, or removal" of Vassar and Denno from the Board, and "an order enjoining any further disparagement or retaliation" against Lipton "by *any* employee, agent, representative, or Trustee of MSU." ECF No. 10, PageID.100-101 (emphasis added). But Lipton has not alleged any ongoing constitutional violations, a necessary prerequisite to injunctive relief. Regardless, his request for an order requiring removal of Vassar and Denno from office fails because only Michigan's Governor has that authority. And his separate request for a bar against any retaliation or disparagement fails because it is too overbroad and vague to satisfy the standards for an injunction.

In short, there are multiple grounds for the Court to dismiss Lipton's Complaint against the Board and the Moving Trustees.

## II.    FACTUAL ALLEGATIONS

Lipton "is the Founding Chair of the Department of Translational Neuroscience and Associate Dean for Research Analytics in the College of Human Medicine at MSU." ECF No. 10, PageID.66, ¶ 1. He has had success in that role, and "was elected to serve as the Chair of MSU's Faculty Senate from August 16, 2023 to August 15, 2024." *Id.* at PageID.68, ¶ 11. "The Faculty Senate Chair is a

10173833.7

liaison to the Board of Trustees ('BOT') for over 3800 faculty members and delivers a formal address to the Board at each public meeting on behalf of the faculty they represent." *Id.*, ¶ 12.

In his role as Faculty Senate Chair, Lipton spoke at an October 27, 2023 Board meeting. *Id.*, ¶ 14. A principal focus of that meeting was a letter written by Trustee Brianna Scott to the other Board members asserting that then-Board Chair Vassar had committed various ethical violations. *Id.*, ¶ 13. "During his address, Dr. Lipton read a passed resolution from the Faculty Senate that requested further investigation into Vassar's actions and called for Vassar's resignation." *Id.*, ¶ 15. "Chair Vassar and MSU Trustee Dennis Denno had coordinated a large number of Vassar supporters to be in attendance, which ultimately resulted in an unusual level of disorder and chaos. The meeting and resulting chaos garnered widespread public attention." *Id.*, ¶ 16.

After the meeting at which he had participated in his capacity as Faculty Senate Chair, Lipton made the following statement to a Detroit News reporter:

> The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action . . . . The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room.

*Id.* at PageID.68-68, ¶ 17. Lipton now claims that he made this statement as a "private individual" and that after he made the statement, Trustees "Vassar and

Denno began a sustained effort of retaliation to discredit" him. *Id.*, ¶¶ 17, 18. He alleges that "[o]n or around October 27, 2023, Vassar requested a meeting with Dr. Lipton to discuss the Faculty Senate Resolution." *Id.*, PageID.78, ¶ 73. Lipton agreed to meet. *Id.* Vassar then emailed Lipton, stating that one of the purposes of the meeting would be to address her "concern regarding [Dr. Lipton's] depiction of Black students." *Id.*, ¶ 74. Vassar then "retracted her offer to meet through a message from the Board Secretary." *Id.*, ¶ 75.

Lipton also alleges that, "[i]n parallel, Vassar's supporters began to accuse Dr. Lipton of using racially charged language and exhibiting racial bias in his statement to The Detroit News, in particular citing to his use of the word 'mob.'" *Id.*, ¶ 76. These efforts included several alleged attacks against Lipton:

- "On or around November 1, 2023, Vassar and Denno met with MSU students and encouraged them to attack Dr. Lipton and file false complaints of race discrimination against him." *Id.*, ¶ 77.

- "On November 2, 2023, the National Association for the Advancement of Colored People ('NAACP') Michigan State Conference Youth & College Division released a statement accusing Dr. Lipton of 'racial terrorism.'" *Id.*, ¶ 78.

- "On November 4, 2023, the MSU Black Students Alliance ('BSA') issued a similar statement, accusing Dr. Lipton of 'targeting a specific racial

group,' of engaging in a 'direct attack on Black students' character,' and of '[e]luding [sic] that black students intend to cause violence." *Id.*, PageID.78-79, ¶ 79.

- "On November 14, 2023, the MSU Black Faculty, Staff and Administrators Association ('BFSAA') released a similar public statement." *Id.*, PageID.79, ¶ 80.

- "On November 20, 2023, the organization *Diverse: Issues in Higher Education*, on their nationally known website, published an op-ed authored by Vassar associate Clyde Barnett III, who accused Dr. Lipton of using the term 'mob' in an effort to traumatize and silence students who are Black and Palestinian." *Id.*, ¶ 81.

- "Upon information and belief, student Miselo Chola also filed a complaint with MSU's Office of Institutional Equity ('OIE') accusing Dr. Lipton of race discrimination" and did so "at Vassar's behest." *Id.*, ¶¶ 82-83. This "complaint was closed without investigation and without making any finding against Dr. Lipton." *Id.* at PageID.86, ¶ 114.

- "On December 14, 2023, the MSU Board of Trustees held a private virtual lunch meeting with faculty liaisons, including Dr. Lipton, board members, and top MSU administrators" during which Denno allegedly "read a

6

prepared statement in which he and Vassar accused Dr. Lipton of 'criminalizing students.'" *Id.* at PageID.79, ¶¶ 85-86.

- "Two hours later, the Instagram account of the MSU Hurriya Coalition, which defines itself as 'a collective of 20+ organizations fighting for freedom & justice in Palestine at MSU,' posted an image of a complaint it had filed with the Higher Learning Commission," which "accused Dr. Lipton of 'criminalizing' students—the very same language Denno had used at the lunch meeting two hours earlier." *Id.* at PageID. 80, ¶¶ 90-91. The HLC complaint was also closed, "finding no grounds to investigate Dr. Lipton." *Id.* at PageID.86, ¶ 115.

- Denno also allegedly "encouraged Arab-American student organizations to attack Dr. Lipton in the media and in complaints to the university." *Id.* at PageID.80, ¶ 92.

- During a December 15, 2023 Board meeting that was held virtually, Vassar and Denno allegedly appeared at the meeting in the same room as a group of students from the BSA, MSU NAACP, and MSU Hurriya Coalition, and many of the students "disparaged Dr. Lipton during the public comments portion of the meeting." *Id.* at PageID.15, ¶ 82.

After Vassar and Denno's alleged campaign against Lipton, "some MSU faculty members began to distance themselves from Dr. Lipton." *Id.* at PageID.83,

¶ 108. Further, Lipton alleges that Vassar and Denno's efforts in connection with the MSU Hurriya Coalition occurred "because Dr. Lipton is Jewish." *Id.*, ¶ 112.

As to the Board and the Moving Trustees, Lipton's claim is essentially that Vassar and Denno were not punished *enough*. Lipton alleges that the "Board voted to censure Vassar and Denno and to refer the matter to Governor Gretchen Whitmer's office, as she has the legal authority to remove them from office." *Id.*, at PageID.88, ¶ 132. And he alleges that the Moving Trustees "voted to limit Vassar and Denno's censure to less than nine months and did not render a decision on recommending removal." *Id.*, at PageID.89, ¶ 133. "The censure included removing Vassar and Denno from all assigned duties and suspended them from Board activities and benefits outside of their roles as elected officials for the remainder of 2024." *Id.*, ¶ 134. Lipton alleges the censure could have been longer. *Id.*, at PageID.93, ¶ 160.

Lipton also alleges that at a Board lunch meeting on September 5, 2024, in response to a statement he made about Vassar acting inappropriately at a prior Board meeting, Vassar "explained to Dr. Lipton that he did not have any grounds to speak about civil discourse, since he had used the term 'mob' to label students." *Id.*, at PageID.92, ¶ 154. "This exchange occurred in the presence of the entire Board of Trustees, MSU President Kevin Guskiewicz, MSU Interim Provost Thomas Jeitschko, MSU General Counsel Brian Quinn, and faculty colleagues." *Id.*, ¶ 156.

8

According to Lipton, "no one on the Board or in the administration interjected to provide support to Dr. Lipton during this exchange." *Id.*, ¶ 157. Lipton also complains that Vassar and Denno were allowed to attend an investiture ceremony for MSU's incoming President. *Id.*, ¶ 162-165.

Lipton alleges that "Vassar and Denno's false and retaliatory claims have harmed and continue to harm Dr. Lipton's reputation and professional opportunities within his field." *Id.* at PageID.89, ¶ 135. He claims that he "has already suffered damages, as he has been prevented from consideration for advanced positions in his field at a time in his career where he is eminently qualified to progress." *Id.*, ¶ 136. The Amended Complaint alleges that "[o]n or around April 15, 2024, Dr. Lipton was explicitly told by a superior that the public attack on his character was seen as a liability for a promotion to the position of Associate Dean for Research Analytics." *Id.*, ¶ 137.[1] The Amended Complaint also claims that "[i]n Dr. Lipton's search for higher level professional opportunities outside of MSU, an executive search firm associate shared that the public attacks on his character labeling him a 'racist' will negatively impact his employment chances, despite his superb qualifications." *Id.*, ¶ 138.

---

[1] Lipton currently holds the position of Associate Dean for Research Analytics. *Id.*, ¶ 1.

Lipton alleges that his statement to The Detroit News was private and that it was "protected by the First Amendment to the U.S. Constitution as it was not ordinarily within the course of his duties as an MSU employee." *Id.* at PageID.97, ¶ 186. Lipton claims further that after he "spoke to the Detroit News, [the Board] engaged in retaliation including but not limited to calling Dr. Lipton a 'racist' and a 'tool,' engaging in public and private disparagement of his character, encouraging MSU students to file false complaints and draft false statements against him, encouraging MSU students to make false statements to the media, and other acts which harmed and damaged his reputation . . . ." *Id.*, ¶ 187.

Lipton claims that these actions have had a "chilling effect" on his exercise of free speech rights and that he has suffered damages as a result, "including, but not limited to, economic loss, loss of earnings capacity; loss of professional opportunities; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to his reputation and good name; and loss of the ordinary pleasures of everyday life." *Id.* at PageID.98, ¶ 193, 196; PageID.100, ¶ 204. He does not allege any *ongoing* First Amendment violations.

## III.   MOTION STANDARDS

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff."

10173833.7

*Directv*, *Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But courts need not treat legal conclusions as "entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Further, while a court's analysis focuses primarily on the factual allegations in the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493 (6th Cir. 2001).

As to motions to dismiss under Fed. R. Civ. P. 12(b)(1), "[f]ederal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods.*, *Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* "When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* Here, it is unnecessary to look beyond the

pleadings for the 12(b)(1) portion of the Board's motion, as the lack of subject-matter jurisdiction stems from the Board's well-established sovereign immunity under the Eleventh Amendment.

## IV.    LEGAL ANALYSIS

### A.    Lipton has failed to state a claim against the Board because it is not a "person" under 42 U.S.C. § 1983.

Lipton brings a *Monell* claim against the Board under 42 U.S.C. § 1983, which applies to "person[s]" who act "under color of" state law.  *Id.*  The United States Supreme Court has held "that a State is not a person under the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). And courts in this District have expressly found that a state university's board of trustees—including the Board here—is an arm or alter ego of the State of Michigan. *Hutchins v. Bd. of Trustees of Mich. State Univ.*, 595 F. Supp. 862 (W.D. Mich. 1984). Thus, "as a state entity, MSU is a not a 'person' subject to suit for damages under § 1983." *Hill v. Bd. of Trustees of Mich. St. Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001); *see also McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456-57 (6th Cir. 2014).

Lipton has thus "fail[ed] to state a claim under the statute." *Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010). As a result, his *Monell* claim against the Board should be dismissed with prejudice. *See, e.g., Gardner v. Mich. St. Univ. Bd. of Trustees*, No. 1:12–cv–1018, 2014 WL 558818, at *5 (W.D. Mich. Feb. 11, 2014) (dismissing § 1983 claim against the Board with prejudice); *Catlett v. Washington*,

No. 2:20-cv-13283, 2021 WL 3363394, at *4 (E.D. Mich. Aug. 3, 2021) (dismissing § 1983 claim against state official with prejudice).[2]

Lipton may argue that the *Ex parte Young* doctrine excepts his requests for injunctive relief from the Board's § 1983 defense. Not so. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a *state official* to comply with federal law . . . ." *S&M Brands*, *Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (emphasis added). But the *Ex parte Young* exception applies only in suits against state officials, not against corporate state *bodies* like the Board, which are considered arms of the State. *See*, *e.g.*, *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021) ("the University of Louisville is not a state official . . . So *Ex parte Young* doesn't apply"); *McKenna*, 568 F. App'x at 457 ("*Ex parte Young* does not apply because Bowling Green and its Board of Trustees are not state officials"). Regardless of the type of relief Lipton seeks, *Ex parte Young* cannot save his claim against the Board.

Lipton alleges a separate "count" for injunctive relief, ECF No. 10, PageID.100-101, ¶¶ 206-217, but "injunctive relief is not a cause of action, it is a remedy." *Kaplan*, 10 F.4th at 587 (citation omitted). And because Lipton has "failed

---

[2] The Board raised this defense in response to Lipton's original Complaint, ECF No. 1, citing numerous precedential cases showing that it was entitled to immunity. ECF No. 6, PageID.53-55. Rather than acknowledging settled law on this issue, Lipton doubled down by *again* including the Board as a defendant in his Amended Complaint, thereby implicating Fed. R. Civ. P. 11(b)(2).

13

to state a claim" against the Board "for any constitutional deprivation under §
1983"—because the Board is not subject to suit under § 1983—"he is not entitled to
injunctive relief on such a claim." *Id.*

> **B.    The Board is protected from suit by the Eleventh Amendment and sovereign immunity.**

Under the Eleventh Amendment of the United States Constitution, "[t]he
Judicial power of the United States shall not be construed to extend to any suit in
law or equity, commenced or prosecuted against one of the United States by Citizens
of another State, or by Citizens or Subjects of any Foreign State." While suits by a
State's own citizens are not expressly mentioned, the Supreme Court "has
consistently held that an unconsenting State is immune from suits brought in federal
courts by her own citizens as well as by citizens of another State." *Edelman v.
Jordan*, 415 U.S. 651, 662-63 (1974).

Applying this doctrine, "[c]ourts have repeatedly held that MSU and its Board
of Trustees are arms of the state, entitled to immunity under the Eleventh
Amendment." *Uraz v. Mich. St. Univ. Bd. of Trustees*, No. 1:19-cv-00223, 2019 WL
2442314, at *4 (W.D. Mich. June 12, 2019) (citing several cases, including *Hill*, 182
F. Supp. 2d at 625); *see also Kaplan*, 10 F.4th at 577 (holding that claims against
the University of Louisville were barred by sovereign immunity). The Eleventh

Amendment thus provides an alternative basis to dismiss Lipton's claim against the Board, as it is not subject to suit in federal court.[3]

### C. The Eleventh Amendment and § 1983 bar Lipton's claims for damages against the Moving Trustees in their official capacities.

Both § 1983 and the Eleventh Amendment bar damages claims against state officials sued in their official capacities. The Supreme Court held in *Will* that a state official sued for damages is not a person under § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71.

Likewise, the Eleventh Amendment "bar remains in effect when State officials are sued for damages in their official capacity." *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, Lipton cannot maintain either of his claims for damages—for First Amendment retaliation or *Monell* liability, both of which are premised on § 1983—against the Moving Trustees in their *official* capacities.

### D. Lipton has failed to state a *Monell* claim against the Moving Trustees because individual officials cannot be liable under *Monell*.

As explained above, the Moving Trustees are immune from *Monell* liability

---

[3] The Board also raised sovereign immunity in response to Lipton's original Complaint.  ECF No. 6, PageID.55. But even after Lipton was on notice that a claim against the Board was not "warranted by existing law," he still included the Board as a defendant in his Amended Complaint, again implicating Fed. R. Civ. P. 11(b)(2).

in their official capacities. As to Lipton's *Monell* claim against the Moving Trustees in their *personal* capacities, it too fails.

*Monell* applies to local governing *bodies* and non-immune local government officials in their official capacities. *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 690 n. 5 (1978). But it never applies to individual officials in their *personal* capacities: "Because personal capacity suits are really suits against the official as an *individual*, not against the government entity, *Monell* is always inapplicable" to personal-capacity claims. *Wilson v. Civil Town of Clayton*, *Ind.*, 839 F.2d 375, 382 (7th Cir. 1988) (emphasis added); *see also Phillips v. City of Cincinnati*, No. 1:18-cv-00541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) ("The Court agrees with the City that [the mayor and the city solicitor] are not proper defendants for this claim because the raison d'etre of *Monell* is to impose liability on a municipality under certain circumstances—not individuals."). Lipton's *Monell* claim against the Moving Trustees in their personal capacities thus fails as a matter of law.

### E.    The Moving Trustees are entitled to qualified immunity for Lipton's claims against them in their personal capacities.

The Moving Trustees are also entitled to qualified immunity for the claims against them in their personal capacities. "Qualified immunity shields government officials from civil liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Getz v. Swoop*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). To that end, qualified immunity applies "unless it is *obvious* that a reasonably competent official would have concluded that the actions taken were unlawful." *Id.* (emphasis added).

Analysis of a qualified immunity claim involves two questions: (1) whether a defendant violated a constitutional right held by the plaintiff; and (2) whether that constitutional right was clearly established. *Id.* Here, Lipton cannot satisfy the first prong of this inquiry because, according to the documents attached to his pleadings, he did not engage in protected speech. There are three elements to a claim for First Amendment retaliation under § 1983: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A public employee's speech is protected only when he speaks "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

10173833.7

Lipton did not make statements "as a citizen." The Supreme Court has held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Sixth Circuit examines several factors in making this determination: (1) the impetus for the speech, e.g., whether the public employee was fulfilling an official duty; (2) the setting for the speech; and (3) the speech's audience. *DeCrane v. Eckart*, 12 F.4th 586, 598 (6th Cir. 2021).

Here, Lipton made the "mob rule" statement underlying his claims in the performance of his official duties as Faculty Senate Chair. The Detroit News article containing the statement, which Lipton cites in his Amended Complaint, is entitled, "MSU Faculty Senate chair slams board leader Rema Vassar for chaos, outbursts at meeting." ECF No. 10, PageID.68-69, ¶ 17, n. 5. Introducing Lipton's statement regarding "mob rule," the Detroit News article states: "MSU Faculty Senate Chair Jack Lipton issued a statement Saturday in which he argued that Vassar didn't try to stop the chaos" at the October 27, 2023 Board meeting. *Id.* The article goes on to conclude: "Lipton noted that the Faculty Senate chair is always scheduled to speak at the board meetings as the faculty liaison." *Id.*

Thus, while Lipton characterizes his statement as having been made in his personal capacity, this is merely a legal conclusion that the Court need not accept

under the review standards for a 12(b)(6) motion. *Iqbal*, 556 U.S. at 664. The only facts Lipton alleges (including by reference to the news articles he cites)—even taken in a light most favorable to him—lead to the conclusion that Lipton was speaking in his official capacity at the October 27, 2023 Board meeting. Even the Detroit News reporter to whom Lipton made his "mob rule" statement reached this conclusion. Lipton would not have been at the October 27, 2023 Board meeting outside his role as Faculty Senate Chair, and the Detroit News would have had no interest in his opinion were it not for that role.

But even if Lipton plausibly alleges that he engaged in protected speech, he has *not* adequately alleged that the Moving Trustees violated "clearly established" rights. This second prong of the qualified immunity analysis asks whether "existing precedent placed the conclusion that the defendant violated the constitution under the circumstances *beyond debate*." *Getz*, 833 F.3d at 652 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up) (emphasis added)). And because of the inherent complexity of such cases, the Sixth Circuit has held that, "in the First Amendment retaliation context, an official should be charged with knowledge of the law *only* if there is a *previously decided case* with '*clearly analogous facts*.'" *Higbee v. Eastern Mich. Univ.*, 399 F. Supp. 3d. 694, 704 (E.D. Mich. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 233 (6th Cir. 2005) (emphasis added)). Moreover, because the "purpose of a qualified immunity

19

defense is not only protection from civil damages but protection from the rigors of litigation itself, . . . if the defense is properly raised prior to discovery, the district court has a duty to address it." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004).

The unique facts presented here, even as alleged, favor the application of qualified immunity to the Moving Trustees. To avoid qualified immunity, Lipton would need to show that it is clearly established under First Amendment precedent that individual members of a university board of trustees violate the First Amendment rights of a faculty member when (1) *other* board members instigate a public campaign against that faculty member, and (2) the Trustees *not responsible* for the alleged attacks vote to (a) censure the attacking Trustees for nine months and not longer, and (b) refer the attacking Trustees to the Governor for removal from office (since the Board cannot remove its own Trustees from office).

Thus, even if discovery results in Lipton proving the truth of all his factual allegations, he *still* will not be able to show that the Moving Trustees violated *clearly established* rights under the unique facts and circumstances here. The Moving Trustees should not be subject to the inconvenience and expense of discovery so Lipton can prove facts that cannot avoid the Moving Trustees' qualified immunity defense. At most, Lipton's First Amendment retaliation claim against the Moving Trustees presents precisely the type of "close-call situation" that the doctrine of qualified immunity was designed for. *Gibson v. O'Donnell*, 254 F. Supp. 3d 913,

922 (E.D. Mich. 2017) ("The doctrine of qualified immunity insulates state actors from liability in close-call situations.").[4]

### F.    Lipton cannot obtain the injunctive relief he seeks.

With no viable claim against the Board, nor any viable damages claims against the Moving Trustees, Lipton is left with only a claim for First Amendment retaliation against the Moving Trustees in their official capacities. For that, he may only seek injunctive relief. But his request for injunctive relief suffers from fatal defects that favor dismissal. As a baseline to obtaining injunctive relief against the Moving Defendants, Lipton must plead an "ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002) (explaining that in applying the *Ex Parte Young* doctrine, courts should engage in a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.")  Yet Lipton has not alleged *any* ongoing violations of federal law. The Amended Complaint describes a series of

---

[4] This motion focuses its qualified immunity analysis solely on the First Amendment retaliation claim because *Monell* does not apply to claims against individuals in their personal capacity. If a qualified immunity analysis is needed for Lipton's *Monell* claim, it is nearly identical to the First Amendment retaliation analysis because Lipton's *Monell* claim is based entirely on his claim of First Amendment retaliation. ECF No. 10, PageID.98-100; *see also DeCrane,* 12 F.4th at 593. To the extent the analyses differ, Lipton's *Monell* claim would require an *additional* showing of a policy or custom that caused the alleged First Amendment retaliation in a manner that was clearly established. He cannot make that showing, even taking the facts alleged as true.

alleged retaliatory actions, ECF No. 10, PageID.97, ¶ 187, which were outlined in an investigation report issued *more than a year ago* in February 2024. *Id.*at PageID.86, ¶ 118. Without any ongoing violations—much less any within the last year—there is no basis for injunctive relief.

But even if Lipton had alleged ongoing constitutional violations, the Court *still* could not order the relief he seeks.

### 1.  The Court cannot order the removal of Vassar or Denno.

The Amended Complaint seeks "the recall, resignation, or removal of Vassar and Denno from their positions on the MSU Board of Trustees" by court order.  ECF No. 10, PageID.100, ¶ 211. But the Court lacks the power or authority to order the Moving Trustees to remove Vassar and Denno from their elected positions on the MSU Board. As Lipton acknowledges, the authority to remove members of the Board rests with Michigan's Governor. ECF No. 10, PageID.88, ¶ 132 ("[The Governor] has the legal authority to remove them from office"); *see also* Mich. Comp. Laws § 168.293. And "[w]here the removal power has been assigned to the Governor or to a State agency," courts should not "interfere with the exercise of that power." *Buback v. Romney*, 156 N.W.2d 549, 553 (Mich. 1968). Indeed, "[w]hen a particular removal power is assigned to one branch of government, that power *must be exercised within that branch* if the doctrine of separation of powers is to be meaningful." *Id.* at 558.

Adherence to the separation-of-powers doctrine creates a standing issue for Lipton here, as the Court's lack of power to effectuate Lipton's requested relief makes his alleged injury non-redressable through injunctive relief. *See*, *e.g.*, *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief").

### 2. Lipton's separate request for broad and non-specific injunctive against all MSU agents is untenable.

Lipton has separately requested "an order enjoining any further disparagement or retaliation for his protected speech by any employee, agent, representative, or Trustee of MSU." ECF No. 10, PageID.100-101,  ¶¶ 211-212. This request is overbroad and too vague to serve as a basis for injunctive relief. For one, the Board and the Moving Trustees do not have control over every "employee, agent, representative or Trustee of MSU," ECF No. 10, PageID.101, and lack the ability to effectuate an order that covers all these individuals.

Moreover, Lipton fails to identify the *specific* individuals whose behavior would be covered by the injunction, which violates the specificity requirements for injunctive relief. *See*, *e.g.*, *N.L.R.B. v. Teamsters*, *Chauffeurs*, *Helpers and Taxicab Drivers*, *Local Union 327*, 419 F.2d 1282, 1283 (6th Cir. 1970) ("the order is both too broad and too vague in relation to persons expected to obey it (presumably on pain of contempt proceedings)").

Likewise, Lipton's request for "an order enjoining any further disparagement or retaliation" fails the specificity requirements for an injunction. Fed. R. Civ. P. 65(d)(1)(b) (every injunction must "describe in reasonable detail . . . the act or acts restrained"). The non-retaliation portion of Lipton's requested relief would do nothing more than preclude employees, agents, representatives, or Trustees from violating Lipton's First Amendment rights.  But such "obey the law" injunctions, which do not describe the specific conduct enjoined, "cannot be sustained." *Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (citation omitted); *see also Smith v. Burk*, No. 1:19-CV-1018, 2022 WL 1459921 (W.D. Mich, May 9, 2022) ("the relief Plaintiff is seeking is essentially an 'obey the law' injunction, which is disfavored.").

It is also impossible to know what actions such an order would *actually* prohibit, thus failing to put individuals subject to the order on notice as to how they might violate the Court's contempt powers. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (noting that the specificity requirement for injunctions is "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.").

Stated simply, it would be inappropriate for the Court to issue a vague injunction that expressly purports to apply to individuals who are not parties to the

24

litigation or subject to the control of parties to the litigation. The injunctive relief sought by Lipton in his Amended Complaint thus fails as pled and should be dismissed.

## V.    CONCLUSION

Based on Lipton's failure to state a claim against the Board and the Moving Trustees, as well as the Court's lack of subject-matter jurisdiction over many of Lipton's claims, the Court should dismiss Lipton's claims against the Board and the Moving Trustees with prejudice.

Respectfully submitted,

ZAUSMER, P.C.

s/ Mark J. Zausmer
MARK J. ZAUSMER (P31721)
MICHAEL A. SCHWARTZ (P74361)
JASON M. SCHNEIDER (P79296)
Attorneys for Defendants MSU Board, Byrum, Kelly, Knake Jefferson, Pierce, Scott, and Tebay
32255 Northwestern Highway, Ste. 225
Farmington Hills, MI  48334
(248) 851-4111; Fax: (248) 851-0100
mzausmer@zausmer.com
mschwartz@zausmer.com
Dated: March 6, 2025                    jschneider@zausmer.com

10173833.7