UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

          Plaintiff,

v.

MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES, DIANNE
BYRUM, in her individual and official
capacities, DENNIS DENNO, in his
individual and official capacities, DAN
KELLY, in his individual and official
capacities, RENEE KNAKE JEFFERSON,
in her individual and official capacities,
SANDY PIERCE, in her individual and
official capacities, BRIANNA T. SCOTT,
in her individual and official capacities,
KELLY TEBAY, in her individual and official
capacities, and REMA VASSAR, in her
individual and official capacities,

          Defendants.

Case No. 24-1029

Hon. Hala Y. Jarbou

**ORAL ARGUMENT
REQUESTED**

---

### DEFENDANT DENNIS DENNO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)

Defendant Dennis Denno ("Mr. Denno"), by and through his respective attorneys, Starr, Butler, & Stoner, PLLC, moves this Court to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

On March 5, 2025, the undersigned counsel sought concurrence in the requested relief from Plaintiff's counsel via email. The undersigned counsel explained the basis for this motion during his phone call with Plaintiff's counsel. The undersigned counsel also proposed a phone call to further discuss the basis for this motion. Plaintiff's counsel denied concurrence, which necessitated this motion.

{00131993.DOCX}

For the reasons stated in the attached brief, Mr. Denno respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety with prejudice and award such other relief as this Court deems just and equitable.

Respectfully submitted,

STARR, BUTLER, & STONER, PLLC

By:    /s/ Daniel C. Waslawski
       Daniel C. Waslawski (P78037)
       Attorney for Defendant Denno only
       20700 Civic Center Dr., Ste. 290
       Southfield, MI  48076
       (248) 864-4931
       dwaslawski@starrbutler.com

Dated:  March 7, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

               Plaintiff,

v.

MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES, DIANNE
BYRUM, in her individual and official
capacities, DENNIS DENNO, in his
individual and official capacities, DAN
KELLY, in his individual and official
capacities, RENEE KNAKE JEFFERSON,
in her individual and official capacities,
SANDY PIERCE, in her individual and
official capacities, BRIANNA T. SCOTT,
in her individual and official capacities,
KELLY TEBAY, in her individual and official
capacities, and REMA VASSAR, in her
individual and official capacities,

               Defendants.

Case No. 24-1029

Hon. Hala Y. Jarbou

**ORAL ARGUMENT
REQUESTED**

---

## BRIEF IN SUPPORT OF DEFENDANT DENNIS DENNO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)

{00131993.DOCX}

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED..................................................................... iii

INDEX OF AUTHORITIES.....................................................................................v

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................2

        A.      Overview of Plaintiff's Allegations ........................................................2

                1.      Plaintiff's Allegations Regarding the October 27, 2023 Board Meeting...........3

                2.      Plaintiff's Allegations Regarding Retaliation During 2023.............................4

                        i.      Plaintiff's Allegations Regarding Actions Purportedly Taken
                                by Denno in 2023.....................................................................4

                        ii.     Plaintiff's Allegations Regarding a Retaliatory Conspiracy in
                                2023........................................................................................5

                3.      Plaintiff's Allegations Regarding Retaliation During 2024.............................8

                4.      Plaintiff's Allegations Regarding His Continued Employment and
                        Standing at MSU ......................................................................................9

        B.      Procedural History of Lawsuit and Overview of Claims Alleged in
                Plaintiff's FAC..........................................................................................9

III.    STANDARD OF REVIEW .............................................................................10

        A.      Standard of Review Under Fed. R. Civ. P. 12(b)(6).............................................10

        B.      Standard of Review Under Fed. R. Civ. P. 12(b)(1)............................................11

IV.     LAW AND ARGUMENT....................................................................................12

        A.      Dismissal of Count I is Warranted .....................................................................12

                1.      Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss the portion
                        of Count I seeking <u>damages</u> as to Mr. Denno in his <u>official</u> capacity
                        because Mr. Denno is not a "person" for purposes of 42 U.S.C. § 1983.........13

2.  Pursuant to Fed. R. Civ. P. 12(b)(1), this Court must dismiss Count I in its entirety as to Mr. Denno in his <u>official</u> capacity because the Eleventh Amendment provides Mr. Denno with immunity from suit ............................14

3.  Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss Count I as asserted against Mr. Denno in his <u>individual</u> capacity because it fails to state a claim upon which relief may be granted............................................17

    i.  Plaintiff was not engaged in a constitutionally protected activity .......18

    ii.  Plaintiff did not suffer an adverse action resulting from any action of Mr. Denno that was motivated by retaliatory animus ....................19

    iii.  Plaintiff did not suffer an adverse action resulting from any conspiracy involving Mr. Denno ..........................................................21

4.  Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss Count I as asserted against Mr. Denno in his <u>individual</u> capacity because of qualified immunity...................................................................................................24

B.  Dismissal of Count II is Warranted ........................................................................26

C.  Dismissal of Count III is Warranted .......................................................................27

V.  CONCLUSION.....................................................................................................................28

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.    Whether this Court should dismiss Plaintiff's 42 U.S.C. § 1983 claim asserting First Amendment Retaliation against Mr. Denno in Mr. Denno's <u>official</u> capacity (Count I) to the extent such a claim seeks damages because Mr. Denno does not constitute a "person" for purposes of a § 1983 claim seeking damages from him in his <u>official</u> capacity pursuant to *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Mr. Denno answers:                        **YES**.
Plaintiff answers:                            **NO.**

II.    Whether this Court should dismiss Plaintiff's 42 U.S.C. § 1983 claim asserting First Amendment Retaliation against Mr. Denno in Mr. Denno's <u>official</u> capacity (Count I) <u>in its entirety</u> because the Eleventh Amendment provides Mr. Denno with immunity from suit in his official capacity.

Mr. Denno answers:                        **YES**.
Plaintiff answers:                            **NO.**

III.    Whether this Court should dismiss Plaintiff's 42 U.S.C. § 1983 claim asserting First Amendment Retaliation against Mr. Denno in Mr. Denno's <u>individual</u> capacity because it fails to state a claim upon which relief may be granted and Mr. Denno is entitled to qualified immunity.

Mr. Denno answers:                        **YES**.
Plaintiff answers:                            **NO.**

IV.    Whether this Court should dismiss Plaintiff's 42 U.S.C. § 1983 claim asserting First Amendment Retaliation against Mr. Denno under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (Count II) because *Monell* liability only extends liability under 42 U.S.C. § 1983 to <u>local governments</u>, and states and state officials are not local governments, and therefore, cannot be sued under *Monell*.

Mr. Denno answers:                        **YES**.
Plaintiff answers:                            **NO.**

V.    Whether this Court should dismiss Plaintiff's claim for "Injunctive Relief" (Count III) because an injunction is merely a remedy—not a cause of action—and there is no surviving cause of action for which the remedy of an injunction could be granted.

Mr. Denno answers:                                    **YES**.
Plaintiff answers:                                    **NO.**

# INDEX OF AUTHORITIES

**Cases:**

*Amini v. Oberlin*,
259 F.3d 493, 502 (6th Cir. 2001) ...........................................................................10

*Angel v. Kentucky*,
314 F.3d 262, 265 (6th Cir. 2002) ...........................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)...................................................................11, 21

*Bd. of Comm'rs of Bryan Cty., v. Brown*,
520 U.S. 397, 403 (1997)..........................................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007)........................................................................11

*Benison v. Ross*,
765 F.3d 649, 659 (6th Cir. 2014) ............................................................................20

*Boler v. Earley*,
865 F.3d 391, 409–10 (6th Cir. 2017) .......................................................................14

*Bond v. Floyd*,
385 U.S. 116, 135-37 (1966) .....................................................................................25

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*,
901 F.3d 656, 683 (6th Cir. 2018) ............................................................................15

*Brunson v. City of Dayton*,
163 F.Supp.2d 919, 927 (S.D. Ohio 2001) ...............................................................26

*Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*,
515 F. App'x 451, 458 (6th Cir. 2013).......................................................................27

*Connick v. Myers*,
461 U.S. 138, 103 S.Ct. 1684 (1983)........................................................................18

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*,
477 F.3d 807, 822 (6th Cir. 2007) ............................................................................20

*Dickerson v. McClellan*,
101 F.3d 1151, 1157 (6th Cir. 1996) .....................................................................24, 25

*DLX, Inc. v. Kentucky*,
381 F.3d 511, 516 (6th Cir. 2004) ................................................................12

*Durham v. Martin*,
388 F. Supp. 3d 919, 937 (M.D. Tenn. 2019) .............................................16

*Durham v. McWhorter*,
789 F. App'x 533 (6th Cir. 2020) .................................................................16

*Dye v. Office of Racing Comm'n*
702 F.3d at 303 (6th Cir. 2013) ....................................................................20

*Ernst v. Rising*,
427 F.3d 351, 358 (6th Cir. 2005) ...............................................................14

*Evans-Marshall v. Bd. of Educ.*,
624 F.3d 332, 337-38 (6th Cir. 2010) ..........................................................18

*Everson v. Leis*,
556 F.3d 484, 493-94 n3 (6th Cir. 2009) ...............................................24, 25

*Ex parte Young*,
209 U.S. 123 (1908)........................................................................15, 16, 17

*Fieger v. Cox*,
524 F.3d 770, 776 (6th Cir. 2008) ..........................................................22, 23

*Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*,
605 F.3d 345, 348 (6th Cir. 2010) ..........................................................17, 19

*Garcetti v. Ceballos*,
547 U.S. 410, 417, 126 S.Ct. 1951 (2006) ..................................................18

*Gardenhire v. Schubert*,
205 F.3d 303, 310 (6th Cir. 2000) ...............................................................12

*Gentek Bldg. Prods., Inc. v. Steel Peel Litigation*,
491 F.3d 320, 330 (6th Cir. 2007) ...............................................................12

*Haddad v. Gregg*,
910 F.3d 237, 244 (6th Cir. 2018) ...............................................................18

*Hafer v. Melo*,
502 U.S. 21, 25 (1991)..................................................................................13

*Halabo v. Michael,*
No. 21-12528, 2022 WL 982353, at *3 (E.D. Mich. Mar. 30, 2022) ............................................16

*Handy-Clay v. City of Memphis,*
695 F.3d 531, 545 (6th Cir. 2012) .................................................................................................20

*Harlow v. Fitzgerald,*
457 U.S. 800, 818, 102 S.Ct. 2727 (1982) ...................................................................................24

*Holbrook v. Dumas,*
658 Fed.Appx. 280, 284 n.3 (6th Cir. 2016) .........................................................................17, 19

*Hunter v. Bryant,*
502 U.S. 224, 227 (1991) ...............................................................................................................24

*Kentucky v. Graham,*
473 U.S. 159, 165, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985) ...................................................13, 26

*Klay v. United Healthgroup, Inc.,*
376 F.3d 1092, 1098 (11th Cir. 2004) ...........................................................................................27

*Magley v. Wright,*
No. 5:98-CV-012, 2001 WL 36126924, at *7 (W.D. Mich. Mar. 30, 2001) ...............................21

*McAllister v. Kent State Univ.,*
454 F. Supp. 3d 709, 717 (N.D. Ohio 2020) .................................................................................13

*Mitchell v. Forsyth,*
472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ......................................................24

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ......................................................2, 26, 27

*Moore v. City of Harriman,*
272 F.3d 769, 771 (6th Cir. 2001) .................................................................................................13

*Mt. Healthy City Sch. Dist. v. Doyle,*
429 U.S. 274, 280 (1977) ...............................................................................................................14

*Mumford v. Basinski,*
105 F.3d 264, 267 (6th Cir. 1997) .................................................................................................14

*Nickell v. Memphis Light, Gas & Water Div.,*
76 F. App'x 87, 93 (6th Cir. 2003) .................................................................................................20

*Oklahoma City v. Tuttle*,
471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)..................................................12

*Paige v. Coyner*,
614 F.3d 273, 277 (6th Cir. 2010) ........................................................................17, 20

*Papasan v. Allain*,
478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)..........................15, 17

*Quern v. Jordan*,
440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).........................................15

*Republican Nat'l Comm. v. Benson*,
_____ F.Supp.3d_____, No. 1:24-CV-262, 2024 WL 4539309, at *7
(W.D. Mich. Oct. 22, 2024) ........................................................................................11

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49, 57, 95 S. Ct. 2069, 2075, 45 L. Ed. 2d 12 (1975)..................................27

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44, 72; 116 S. Ct. 1114 (1996).....................................................................14

*Sensabaugh v. Halliburton*,
937 F.3d 621, 628 (6th Cir. 2019) ..............................................................................20

*Siefert v. Hamilton Cnty.*,
951 F.3d 753, 768 (6th Cir. 2020) ........................................................................22, 23

*S & M Brands, Inc. v. Cooper*,
527 F.3d 500, 507 (6th Cir. 2008) ........................................................................15, 16

*Suarez Corp. Indus. v. McGraw*,
202 F.3d 676, 686 (4th Cir. 2000) ..............................................................................21

*Susselman v. Washtenaw Cnty. Sheriff's Off.*,
109 F.4th 864, 870 (6th Cir. 2024) ..............................................................................12

*Tahfs v. Proctor*,
316 F.3d 584, 590 (6th Cir. 2003) ..............................................................................13

*Thaddeus-X v. Blatter*
175 F.3d at 396 (6th Cir. 1999)...................................................................................20

*Thomas v. City of Chattanooga*,
398 F.3d 426, 429 (6th Cir. 2005) ..............................................................................27

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)..........................................15

*Wurzelbacher v. Jones-Kelley*,
675 F.3d 580, 584 (6th Cir. 2012) ...............................................................................................20

*Will v. Michigan Dep't of State Police*,
491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989)........................................13, 27

**Statutes:**

42 U.S.C. § 1983 .................................................................................................... *passim*

**Federal Rules**

Fed. R. Civ. P 12(b)(1)..............................................................................10, 11, 14, 28

Fed. R. Civ. P 12(b)(6)..........................................................................10, 13, 17, 24, 28

# I.  __INTRODUCTION__

In a 219-paragraph First Amended Complaint ("FAC") spanning 40 pages, Dr. Jack Lipton ("Plaintiff") alleges claims of First Amendment retaliation under 42 U.S.C. § 1983 against the Michigan State University Board of Trustees (the "Board") and its individual trustees, including Defendant Dennis Denno ("Mr. Denno"). But in doing so, Plaintiff ignores that binding U.S. Supreme Court precedent—precedent that has been the law of the United States for over forty years—expressly precludes his claims as a matter of law. As a matter of law, binding U.S. Supreme Court precedent expressly precludes Plaintiff from asserting a claim for First Amendment retaliation under 42 U.S.C. § 1983 against Mr. Denno in Mr. Denno's official capacity because Mr. Denno does not constitute a "person" as necessary for a viable § 1983 claim. Moreover, Mr. Denno is entitled to sovereign immunity from any § 1983 claim brought against him in his official capacity under the Eleventh Amendment.

Further, Plaintiff's claim for First Amendment retaliation under 42 U.S.C. § 1983 against Mr. Denno in Mr. Denno's individual capacity fails to state a claim upon which relief may be granted. Notably, Plaintiff does not plausibly allege *any* adverse action that Mr. Denno actually took against Plaintiff. At best, Plaintiff relies on statements attributed to Mr. Denno that were critical of Plaintiff. However, none of these statements can form the basis for a claim because— at best—they were all statements made by Mr. Denno that are protected by the First Amendment. And even putting this aside, Plaintiff fails to allege that any of Mr. Denno's statements constitute an adverse employment action as necessary for a § 1983 claim. Given that Mr. Denno never took any action against him, Plaintiff attempts to allege a retaliatory conspiracy between Mr. Denno, co-defendant Dr. Rema Vassar ("Dr. Vassar"), and various students and student groups arising out of the students' protected free speech activities. In alleging this retaliatory conspiracy, however, Plaintiff: (a) fails to plead conspiracy with the specificity required by binding Sixth

{00131993.DOCX}

Circuit precedent; and (b) still fails to establish an adverse employment action. Further, Mr. Denno is entitled to qualified immunity regardless of this Court's decision on the foregoing pleading deficiencies.

This Court must also dismiss Count II of Plaintiff's FAC. Through Count II, Plaintiff attempts to establish liability as to the "All Defendants" for First Amendment retaliation under 42 U.S.C. § 1983 pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). As it pertains to Mr. Denno, however, Count II is completely duplicative of Count I. Given that Count I fails as a matter of law as summarized above and explained in greater detail below, Count II must also be dismissed. Regardless, the doctrine of *Monell* merely extends § 1983 liability to local governments – it does not apply to state governments or state officials. Thus, Mr. Denno cannot be sued under *Monell*.

Because there is no viable cause of action against Mr. Denno, this Court must also dismiss Count III because it merely alleges a "claim" for "injunctive relief." However, an injunction is an equitable remedy, not an independent cause of action. Given that no other viable claim exists, equitable relief in the form of an injunction is unavailable to Plaintiff.

For these reasons, which are briefed in greater detail below, this Court must dismiss the claims alleged against Mr. Denno in Plaintiff's FAC with prejudice.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview of Plaintiff's Allegations[1]

Plaintiff is a current employee of Michigan State University ("MSU") who began his employment in 2009. ECF No. 10, PageID.73, ¶49. At all times from 2012-present, Plaintiff has

---

[1] In accordance with Fed. R. Civ. Pro. 12(b)(6), Mr. Denno relies on the allegations set forth in the FAC to support this motion. While those allegations are extensively discussed below, Mr. Denno does not concede that they are true. Rather, Mr. Denno reserves the right to contest Plaintiff's allegations.

served as the Founding Chair of the Department of Translational Neuroscience. *Id.* "[Plaintiff] also served as the MSU Faculty Senate Chair, an elected position representing MSU's approximately 3800 faculty members, from August 16, 2023, through August 15, 2024." ECF No. 10, PageID.74, ¶53. "The Faculty Senate Chair is a liaison to the [Board] for over 3800 faculty members and delivers a formal address to the Board at each public meeting on behalf of the faculty they represent." ECF No. 10, PageID.68, ¶12. Since August 16, 2024, Plaintiff has served as the Faculty Senate Vice-Chair. ECF No. 10, PageID.74, ¶54.

### 1. Plaintiff's Allegations Regarding the October 27, 2023 Board Meeting

"On October 20, 2023, Trustee Brianna Scott sent the BOT an open letter alleging ethical violations by MSU BOT Chair Rema Vassar and calling for Vassar's resignation." ECF No. 10, PageID.68, ¶13. Acting in his capacity as Faculty Senate Chair, Plaintiff spoke at a Board meeting on October 27, 2023. ECF No. 10, PageID.68, ¶¶14-15. "During his address, [Plaintiff] read a passed resolution from the Faculty Senate that requested further investigation into Vassar's actions and called for Vassar's resignation." *Id.*

According to Plaintiff, "Chair Vassar and MSU Trustee Dennis Denno had coordinated a large number of Vassar supporters to be in attendance at the October 27, 2023 Board meeting, which ultimately resulted in an unusual level of disorder and chaos." ECF No. 10, PageID.68, ¶16. One day after the Board meeting, Plaintiff—purportedly "expressing his opinion as a private individual"—spoke with a journalist of *The Detroit News* regarding the meeting, stating:

> The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action," [Dr. Lipton] said. "The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room.

ECF No. 10, PageID.68-69, ¶17 (brackets in original text).

In a subsequent statement that Plaintiff made at a Board meeting on December 15, 2023, which Plaintiff quotes in his FAC, Plaintiff described the alleged purpose for his "mob" statement to The Detroit News as follows:

> In a statement to the media about that chaos [on October 27, 2023], I said that Chairperson Vassar allowed the mob to rule the room. My goal was to support Trustee Brianna Scott in her courageous attempt to hold the Chairperson accountable.

ECF No. 10, PageID.85.

## 2.    Plaintiff's Allegations Regarding Retaliation During 2023

Plaintiff alleges that "[a]fter [Plaintiff] made [his] comments to The Detroit News, Vassar and Denno began a sustained effort of retaliation to discredit his truthful personal statements about the harm Vassar was causing the MSU community." ECF No. 10, PageID.69, ¶18.

### i.    Plaintiff's Allegations Regarding Actions Purportedly Taken by Denno in 2023

Regarding actions allegedly taken by Denno directly and personally against Plaintiff, the allegations in the FAC are scant. At most, Plaintiff alleges, "Vassar and Denno falsely accused [Plaintiff] of racism because he used the word 'mob' in his statement." ECF No. 10, PageID.69, ¶19. Although paragraph 19 of the FAC provides minimal detail regarding this allegation, it appears Plaintiff refers to his subsequent allegation that Mr. Denno read from a prepared statement during a lunch meeting involving MSU administrators on December 14, 2023, where Mr. Denno (a) accused Plaintiff of "criminalizing students"; and (b) characterized Plaintiff's "use of the word 'mob' as "racism and violent language.'" ECF No. 10, PageID.79, ¶¶84-88. The FAC does not allege any other acts in 2023 that Mr. Denno directly engaged in a purported effort to retaliate against Plaintiff.

### ii.  Plaintiff's Allegations Regarding a Retaliatory Conspiracy in 2023

Rather than allege any further retaliatory actions taken by Denno in 2023, Plaintiff attempts to tie Denno's alleged retaliatory motive to the free speech activities of unnamed MSU students, faculty members, and other third parties. *See* ECF No. 10, PageID.78, ¶¶77-83, 90-104. Plaintiff alleges, "[o]n or around November 1, 2023, Vassar and Denno met with MSU students and encouraged them to attack [Plaintiff] and file false complaints of race discrimination against him." ECF No. 10, PageID.78, ¶77. From there, Plaintiff takes issue with the free speech activities of various MSU student and faculty groups through which said groups criticized Lipton. Essentially, Plaintiff seemingly attempts to tie the inevitable and predictable public backlash to his admitted characterization of an overwhelmingly minority-composed group of persons as a "mob" with unspecified actions of Mr. Denno. But rather than provide any further facts regarding this purported conspiracy, Plaintiff fails to identify *any* of these MSU students or any agreement (let alone unlawful objective) between the MSU students on the one hand and Denno on the other. *See id*.

First, Plaintiff alleges that, "[o]n November 2, 2023, the National Association for the Advancement of Colored People ('NAACP') Michigan State Conference Youth & College Division released a statement accusing Plaintiff of 'racial terrorism.'" ECF No. 10, PageID.78, ¶78. However, Plaintiff fails to allege any facts regarding the identities of the members of the NAACP Michigan State Conference Youth & College Division who issued the statement, whether they met with Denno, when they met with Denno, or whether they accused Plaintiff of "racial terrorism" because of any action taken by Mr. Denno.

Second, Plaintiff alleges that "[o]n November 4, 2023, the MSU Black Students Alliance ("BSA") issued a similar statement, accusing Plaintiff of 'targeting a specific racial group,' of

engaging in 'a direct attack on Black students' character,' and of "eluding [sic] that black students intend to cause violence.'" ECF No. 10, PageID.78, ¶79 (internal brackets from FAC omitted). Plaintiff, however, once again fails to provide any details regarding who these unidentified persons actually are (or even whether a single member of the BSA made the statement as opposed to multiple members) or whether they made their statements due to actions taken by Mr. Denno. Indeed, there is no allegations that *any* of these unidentified members of the BSA attended the alleged November 1, 2023 meeting between Dr. Vassar, Mr. Denno, and unnamed MSU students.

Third, Plaintiff alleges that, "[o]n November 14, 2023, the MSU Black Faculty, Staff and Administrators Association ('BFSAA') released a similar public statement." ECF No. 10, PageID.79, ¶80. Again, Plaintiff fails to allege any details regarding who these unidentified persons actually are or whether they made their statements due to actions taken by Mr. Denno. In fact, nowhere in the FAC does Plaintiff even allege that Mr. Denno ever met with any *faculty members* (as opposed to students) to discuss Plaintiff—let alone met with them in an effort to engage in a retaliatory conspiracy against Plaintiff.

Fourth, Plaintiff alleges that, "[o]n November 20, 2023, the organization *Diverse: Issues In Higher Education*, on their nationally known website, published an op-ed authored by Vassar associate Clyde Barnett III, who accused Plaintiff of using the term 'mob' in an effort to traumatize and silence students who are Black and Palestinian." ECF No. 10, PageID.79, ¶81. However, there are no allegations in the FAC that tie this publication decision to any allegedly unlawful act of Mr. Denno, nor are there any allegations that Mr. Denno ever spoke with Clyde Barnett III regarding Plaintiff.

Fifth, Plaintiff alleges, "[u]pon information and belief, student Miselo Chola also filed a complaint with MSU's Office of Institutional Equity ('OIE') accusing Plaintiff of race discrimination." ECF No. 10, PageID.79, ¶82. But Plaintiff does not allege any facts showing that Mr. Denno caused Miselo Chola (hereinafter "Chola") to file a complaint with MSU's OIE as part of a conspiracy to retaliate against Plaintiff for his alleged protected speech. Instead, Plaintiff alleges that it was *Dr. Vassar*–not Mr. Denno—who purportedly caused Chola to file a complaint with OIE. ECF No. 10, PageID.79, ¶83 ("Upon information and belief, Chola filed the complaint at Vassar's behest."). Moreover, Plaintiff admits that the OIE complaint was dismissed without *any* adverse consequences to him. ECF No. 10, PageID.86, ¶114 ("The October 30, 2023 student-filed OIE complaint was closed without investigation and without making any finding against [Plaintiff].").

Sixth, Plaintiff alleges that the MSU Hurriya Coalition filed a complaint against Plaintiff with the Higher Learning Commission ("HLC") and then posted about it on social media. ECF No. 10, PageID.80, ¶90. Once again, there are no facts in the FAC alleging that Mr. Denno caused unnamed members of the MSU Hurriya Coalition to file a complaint about Plaintiff with the HLC in retaliation for Plaintiff's alleged protected speech. Further, like the OIE complaint, Plaintiff admits that the HLC complaint was dismissed without any adverse consequences to him. ECF No. 10, PageID.86, ¶115 ("HLC closed the December 13, 2023 student-filed complaint, finding no grounds to investigate [Plaintiff].").

Seventh, Plaintiff alleges that Mr. Denno "encouraged Arab-American student organizations to attack Plaintiff in the media and complaints to the university" and that Mr. Denno essentially orchestrated unspecified attacks in a meeting and via text. ECF No. 10, PageID.80, ¶¶92-95. But Plaintiff fails to allege facts that: (a) identify the names of these "Arab-

American student organizations" or their members; (b) whether they ever actually "attack[ed]" Plaintiff in the media; or (c) whether they ever actually filed complaints with MSU against Plaintiff. At best, Plaintiff alleges that they expressed their First Amendment viewpoints on Plaintiff at the December 15, 2023 Board meeting. ECF No. 10, PageID.80, ¶¶98-102. And tellingly, Plaintiff does not sue any of these unnamed persons for defamation, false light, or any tort. Further, Plaintiff does not allege a First Amendment retaliatory motive for Mr. Denno's alleged actions; rather, he alleges that Mr. Denno encouraged these "Arab American students to disparage [Plaintiff] because [he] is Jewish." ECF No. 10, PageID.84, ¶112.

### 3.  Plaintiff's Allegations Regarding Retaliation During 2024

Plaintiff's FAC is completely silent as to *any* alleged retaliatory action taken by Mr. Denno following December 15, 2023. *See generally* ECF No. 10, PageID.86-96, ¶¶116-181. Instead, Plaintiff generally alleges that Mr. Denno engaged in unspecified retaliation during a September 5, 2024 lunch meeting involving members of MSU's Board and MSU administrators. *See* ECF No. 10, PageID.97, ¶190. However, *all* of the purported retaliatory acts alleged in the FAC consist of Dr. Vassar's action of allegedly disparaging Plaintiff at the lunch meeting. *See* ECF No. 10, PageID.91-92, ¶¶148-157. Conversely, there is not a single allegation regarding any retaliatory action taken by Denno at the luncheon. *Id.* In fact, even Plaintiff admits that the only purported harassment at the September 5, 2024 meeting was allegedly perpetrated by Dr. Vassar. ECF No. 10, PageID.92, ¶158 ("In the evening of Thursday, September 5, 2024, in light of Vassar's harassment of him at the lunch event, [Plaintiff] spoke with current Board of Trustees Chair Dan Kelly.").

At most, Plaintiff alleges that the unspecified members of the MSU BSA made a social media post on November 15, 2024 that accused Plaintiff of harassing Chola. ECF No. 10,

PageID.95, ¶¶171-72. However, there are no allegations connecting this free speech activity of the MSU BSA to any act—let alone any unlawful act—of Mr. Denno.

### 4. Plaintiff's Allegations Regarding His Continued Employment and Standing at MSU

Plaintiff's FAC is devoid of any allegation that he actually suffered adverse employment consequences at MSU because of the purported First Amendment retaliation. At best, Plaintiff alleges that he suffered some unspecified harm to his "professional reputation and access to opportunities both within and outside of MSU." ECF No. 10, PageID.83, ¶107. However, Plaintiff fails to provide any detail regarding how his reputation has been harmed or what unspecified "opportunities" he has lost. Moreover, the allegations in the FAC fully bely the aforementioned threadbare recitals of harm. Not only has Plaintiff continued to hold his position of Founding Chair of the Department of Translational Neuroscience (see ECF No. 10, PageID.73, ¶49), he was admittedly *promoted* into another prestigious position at MSU after the alleged retaliation. Specifically, he "took on the additional role as the Associate Dean of Research Analytics in the College of Human Medicine at MSU in May 2024." ECF No. 10, PageID.73, ¶50.[2] As noted above, Plaintiff admits that the two administrative complaints filed against him were closed without any investigation and did not affect his continued employment with MSU. ECF No. 10, PageID.86, ¶¶114-115.

### B.    Procedural History of Lawsuit and Overview of Claims Alleged in Plaintiff's FAC

On October 1, 2024, Plaintiff filed the instant lawsuit. ECF No. 1. In his initial Complaint, Plaintiff asserted claims for First Amendment retaliation under 42 U.S.C. § 1983 and

---

[2] Although Plaintiff alleges that on or around April, 15, 2024, he was told by an unnamed superior "that the public attack on his character was seen as a liability for a promotion to the position of Associate Dean for Research Analytics," ECF No. 10, PageID.89, ¶137, Plaintiff admittedly obtained the promotion in May 2024. ECF No. 10, PageID.73, ¶50.

injunctive relief against the Board as a corporate body. ECF No. 1, PageID.1. On December 6, 2024, the Board moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P 12(b)(6) and 12(b)(1). ECF No. 6.

On December 23, 2024, Plaintiff filed his FAC. ECF No. 10. In the FAC, Plaintiff added Dianne Byrum, Mr. Denno, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna T. Scott, Kelly Tebay, and Dr. Vassar (i.e., current and former trustees of the Board) as individual defendants. *See generally*, ECF No. 10. Plaintiff sues Mr. Denno in both his individual and official capacity. *See* ECF No. 10, Page ID.72, ¶41 ("The named Board Members are being sued both in their individual capacities and in their official capacities as members of the Board of Trustees."). Regarding Mr. Denno's alleged motive for his retaliatory actions, Plaintiff alleges that Mr. Denno's was motivated by a desire to "prevent [Plaintiff] from further speaking out against Vassar." ECF No. 1, PageID.97, ¶192.

Plaintiff seeks both damages and injunctive relief. Regarding requested injunctive relief, Plaintiff seeks a court order recalling or removing Dr. Vassar and Mr. Denno "from their positions on the [Board]." ECF No. 10, Page ID.100, ¶211. Plaintiff also seeks "an order enjoining any further disparagement or retaliation for his protected speech by any employee agent, representative, or Trustee of MSU." ECF No. 10, Page ID.101, ¶212.

### III.   STANDARD OF REVIEW

### A.   Standard of Review Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) asserts that the complaint fails to state a claim upon which relief can be granted. A court may consider the complaint, documents referenced in the pleadings and central to the plaintiff's claims, matters of which a court may properly take notice, and public documents. *Amini v. Oberlin*, 259 F.3d 493, 502 (6th Cir. 2001).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). While the pleading standard does not require factual obligations, "it demands more than an unadorned, the-defendant-actually-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "unwarranted factual inferences." *Id. See also Republican Nat'l Comm. v. Benson*, ____ F.Supp.3d____, No. 1:24-CV-262, 2024 WL 4539309, at *7 (W.D. Mich. Oct. 22, 2024) (recognizing same). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting *Ashcroft,* 556 U.S. at 679).

## B.    Standard of Review Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss based on a state official's immunity from suit is essentially a motion to dismiss for lack of subject-matter jurisdiction.  *See Angel v. Kentucky*, 314 F.3d 262, 265 (6th Cir. 2002). "State immunity is jurisdictional in the same sense as the complete diversity requirement or the well-pleaded complaint rule. A federal court *must* examine each claim in a case to see if the court's jurisdiction is barred by the Eleventh Amendment." *Id*.  (citation, ellipses, brackets, and quotations removed) (emphasis in original). "A Rule 12(b)(1) motion can

[] attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true . . . ." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litigation*, 491 F.3d 320, 330 (6th Cir. 2007).

## IV.    LAW AND ARGUMENT

### A.  Dismissal of Count I is Warranted

Although Count I purports to assert a single claim against Mr. Denno, Plaintiff sues Mr. Denno in both his official and individual capacity. *See* ECF No. 10, Page ID.72, ¶41. Thus, in actuality, Count I asserts two claims against Mr. Denno: (a) a claim under 42 U.S.C. § 1983 for alleged First Amendment retaliation against Mr. Denno in his <u>official</u> capacity; and (b) a claim under 42 U.S.C. § 1983 against Mr. Denno in his <u>individual</u> capacity. Regardless of this distinction, dismissal of both claims is warranted as a matter of law for the reasons stated below.

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

"By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). *See also Susselman v. Washtenaw Cnty. Sheriff's Off*., 109 F.4th 864, 870 (6th Cir. 2024) ("Section 1 of the Civil Rights Act of 1871, now codified at 42 U.S.C. § 1983, created a cause of action allowing individuals to vindicate violations of their constitutional rights.")

"To succeed on a § 1983 claim, a plaintiff must first identify a constitutional right, then show that a person acting under the color of state law deprived him of that right." *Id. See also Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law.")

In suits where a plaintiff sues a state official in his or her <u>official</u> capacity for alleged constitutional violations under § 1983, the suit is simply an alternative way of pleading an action against the entity of which the state official is an officer. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985). In contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Id.*

1. **Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss the portion of Count I seeking <u>damages</u> as to Mr. Denno in his <u>official</u> capacity because Mr. Denno is not a "person" for purposes of 42 U.S.C. § 1983**

Approximately 36 years ago, the U.S. Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). *See also Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) ("In 1989, the Supreme Court ruled that states and state employees sued in their official capacities were not 'persons' under § 1983, and therefore could not be held liable for money damages."); *McAllister v. Kent State Univ.*, 454 F. Supp. 3d 709, 717 (N.D. Ohio 2020) ("State officials acting in their official capacities are not considered to be 'persons' under Section 1983.") (citing *Will,* 491 U.S. at 71).

Thus, to the extent that Count I asserts a claim against Mr. Denno in his <u>official</u> capacity and seeks <u>damages</u> from him, any such official capacity claim seeking damages must be

dismissed because Denno is not a person under any such § 1983 claim.

**2. Pursuant to Fed. R. Civ. P. 12(b)(1), this Court must dismiss Count I in its <u>entirety</u> as to Mr. Denno in his <u>official</u> capacity because the Eleventh Amendment provides Mr. Denno with immunity from suit**

Regardless of the Court's decision on the argument set forth previously in section III.A.1, dismissal of Count I as it relates to Mr. Denno in his <u>official</u> capacity is warranted in its <u>entirety</u>.

The Eleventh Amendment of the United States Constitution provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Courts have long held that the Eleventh Amendment renders state official immune from private lawsuits in federal court. *See Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) ("[S]tate governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution.") (emphasis removed) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977). "Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72; 116 S. Ct. 1114 (1996). As the Sixth Court has explained, "[s]overeign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)).

Given the foregoing binding precedent, there can be no genuine dispute that the Eleventh Amendment renders Mr. Denno, a member of the Board (i.e., a state official), immune from suit in his official capacity. Nonetheless, Mr. Denno anticipates that Plaintiff will assert various

arguments to avoid dismissal of Count I. At the outset, Mr. Denno notes that there are three exceptions to immunity under the Eleventh Amendment. These are: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

Unquestionably, by filing this motion, Mr. Denno has not consented to suit. Moreover, Congress has not abrogated Mr. Denno's immunity.[3] Thus, the only colorable argument that Plaintiff could possibly assert is that *Ex parte Young* precludes Mr. Denno's immunity from suit under the Eleventh Amendment. However, any such argument is without merit.

"Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . ." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). But, as the Supreme Court has explained, the *Ex parte Young* exception applies to "cases in which a violation of federal law by a state official is *ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (emphasis added)). *See also S & M Brands*, 527 F.3d at 508 ("*The Ex parte Young* exception does not, however, extend to any retroactive relief.") (citing *Quern v. Jordan*, 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In examining the applicability of the *Ex parte Young* exception, the Supreme Court directed courts to "conduct straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535

---

[3] Any argument that Congress abrogated Eleventh Amendment immunity when it enacted § 1983 is meritless. The Sixth Circuit has held "1983 does not abrogate Eleventh Amendment immunity." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 683 (6th Cir. 2018).

U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (internal quotations, citations, and brackets omitted).

Consistent with this binding precedent, courts within the Sixth Circuit have repeatedly held that remedying *past* violations of federal law through injunctive relief—as opposed to remedying *ongoing* violations of federal law—provides no basis for applying *Ex parte Young*. *See, e.g., S & M Brands, Inc,* 527 F.3d at 508. ("The alleged constitutional deficiency here is a one-time, past event; the Plaintiffs do not seek a prospective injunction that requires the Attorney General to conform his conduct in an ongoing, continuous fashion."); *Halabo v. Michael*, No. 21-12528, 2022 WL 982353, at *3 (E.D. Mich. Mar. 30, 2022) (recognizing "[w]here plaintiffs seek injunctive relief for a past wrong, the Eleventh Amendment bars the suit" and holding that *Ex parte Young* was inapplicable because "the  alleged wrong here [was] not ongoing; indeed, the search and seizure occurred on May 25th, 2021.")

Here, Plaintiff's FAC is devoid of any facts plausibly alleging an ongoing violation of his First Amendment rights. Indeed, there is no plausible allegation that any *ongoing* action by Mr. Denno is currently violating Plaintiff's First Amendment Rights. For instance, there is no allegation that Plaintiff's employment with MSU is suffering any ongoing adverse consequences (such as removal from his Associate Dean position) because of his alleged protected speech that could be remedied by a prospective injunction.[4] Instead, and in a completely conclusory manner,

---

[4] In fact, there is no allegation that Plaintiff's employment with MSU ever suffered any adverse consequences at *any* time. To the contrary, Plaintiff has held the same position before, during, and after the alleged retaliation. Moreover, he has since received a promotion to a second position. *See supra* section II.A.4. of this brief. If Plaintiff had lost his position (as opposed to being promoted) because of any actionable retaliation and was seeking injunctive relief, this Court could order reinstatement, which could potentially provide a basis for application of *Ex parte Young. See Durham v. Martin*, 388 F. Supp. 3d 919, 937 (M.D. Tenn. 2019), *aff'd sub nom. Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020) ("reinstatement generally is prospective

Plaintiff declares that he will "continue to suffer" some unspecified "irreparable injury" and that "he will continue to be damaged by presence of Vassar and Denno on the [Board] and by any further actions of Vassar and/or Denno to silence faculty members' speech." ECF No. 10, Page ID.101, ¶215. Although Plaintiff may subjectively feel that he is currently forced into silence, there are no allegations in the FAC plausibly alleging that he is currently unable to exercise his First Amendment rights because of any ongoing violation of federal law attributable to Mr. Denno. Moreover, "deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Papasan*, 478 U.S. at 278 (internal citation omitted).

As such, Plaintiff's requested injunctive relief merely seeks to address alleged retaliation "over a period of time in the past," *id* at 277–78, which does not provide a legal basis for applying *Ex parte Young. See id.* Accordingly, dismissal of Count I as it relates to Mr. Denno in his <u>official</u> capacity is warranted in its <u>entirety</u>.

### 3. Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss Count I as asserted against Mr. Denno in his <u>individual</u> capacity because it fails to state a claim upon which relief may be granted

To survive a motion to dismiss claim under 42 U.S.C. § 1983, the plaintiff must allege a *prima facie* First Amendment Retaliation claim: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010). Additionally, as with all § 1983 claims, a plaintiff must allege that he or she was

---

relief of the type that falls within the scope of *Ex parte Young*.") Of course, this hypothetical situation is not before the Court.

"deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Id.* (citations, quotations, and internal emphasis omitted).

### i.  Plaintiff was not engaged in a constitutionally protected activity

It has long been settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684 (1983). However, because "government offices could not function if every employment decision became a constitutional matter", *id.* at 143, a public employee's First Amendment rights are narrower than the citizenry at large. *Haddad v. Gregg*, 910 F.3d 237, 244 (6th Cir. 2018) (recognizing "an individual's First Amendment rights as a public employee are narrower than those of the citizenry at large.") (citation omitted).

The First Amendment protects a public employee's right "in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951 (2006). A public employee alleging First Amendment retaliation must satisfy three requirements—the employee must speak on a matter of public concern, the employee must speak as a private citizen and not as an employee pursuant to his official duties, and the speech interest must outweigh the interest of the state as an employer. *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337-38 (6th Cir. 2010). Here, Plaintiff's claim fails because his statement about the purported "mob" at the October 27, 2023 Board meeting (during which Plaintiff called for Dr. Vassar's resignation in his capacity as Faculty Senate Chair) fell under his official duties.

The determination of whether speech falls within an employee's ordinary or usual duties is a question of law. *Holbrook v. Dumas*, 658 Fed.Appx. 280, 284 n.3 (6th Cir. 2016) (internal citation omitted). To make this determination, courts "must consider both [the] content and context" of the protected speech. *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d

345, 348 (6th Cir. 2010). Courts review multiple factors including "the speech's impetus; its setting; its audience; and its general subject matter." *Holbrook*, 658 Fed.Appx. at 288. Speech that "owes its existence to the speaker's professional responsibilities" is "not protected." *Fox*, 605 F.3d at 348.

Although Plaintiff attempts to bring his "mob" statement under the auspices of the First Amendment by alleging his statement was merely his "opinion as a private individual," see ECF No. 10, PageID.68, ¶17, the existence of Plaintiff's "mob" statement would not exist but for Plaintiff's responsibilities and actions as Faculty Senate Chair. In other words, the "mob" statement's existence arose out of Plaintiff's professional responsibilities. Indeed, the statement was made about the alleged unruly nature of a Board meeting where Plaintiff, in his capacity as Faculty Senate Chair, read a passed resolution from the Faculty Senate that called for Vassar's resignation. *See supra* section II.A.1. Further, Plaintiff's own admitted goal for the statement "was to support Trustee Brianna Scott in her courageous attempt to hold the Chairperson accountable." *See supra id.* Thus, Plaintiff admits that the purpose of his statement to was to continue garnering "support" for removing Vassar from the Board as initially called for by Scott and thereafter called for by Plaintiff as Faculty Senate Chair on behalf of the Faculty Senate at a Board meeting. *See supra id.* None of these activities or the subsequent related activities have anything to do with Plaintiff's individualized opinions as a private actor.

Accordingly, Count I as asserted against Mr. Denno in his individual capacity should be dismissed.

### ii. Plaintiff did not suffer an adverse action resulting from any action of Mr. Denno that was motivated by retaliatory animus

Regarding the second element, a plaintiff must allege that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from

continuing to engage in that activity." *Paige*, 614 F.3d at 281. The Court of Appeals for the Sixth

Circuit previously summarized the requirements for pleading an adverse action in a First

Amendment retaliation claim arising out of the employment context as follows:

> To establish an adverse action for First Amendment retaliation purposes, "a plaintiff must show that the action 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (quoting Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 822 (6th Cir. 2007)). But "[i]t is not necessarily true ... that every action, no matter how small, is constitutionally cognizable" as an "adverse action." *Thaddeus-X*, 175 F.3d at 396. In the employment context, "[t]he term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Dye*, 702 F.3d at 303 (alteration omitted) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012)).

*Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019) (ellipses and brackets in original).

"[W]hen a plaintiff's alleged adverse action is inconsequential, resulting in nothing more

than a *de minimis* injury, the claim is properly dismissed as a matter of law. *Wurzelbacher v.*

*Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (internal quotations and citations omitted).

"Indeed, it "trivializes the First Amendment to allow plaintiffs to bring claims for *any* adverse

action, no matter how minor." *Id.* (internal quotations, citations, ellipses and brackets omitted)

(emphasis in original).

As detailed previously, Plaintiff's allegations relative to Mr. Denno are limited to Mr.

Denno's criticism of Plaintiff during a lunch meeting involving MSU administrators on

December 14, 2023. *See supra* section II.A.2.i. Putting aside Mr. Denno's qualified immunity

and First Amendment protection for any claim arising out of his criticism of Plaintiff, which is

briefed *infra* section III.A.4, mere criticism—without more—does not constitute an adverse

action in the employment context. *See, e.g., Nickell v. Memphis Light, Gas & Water Div.*, 76 F.

App'x 87, 93 (6th Cir. 2003) (in the context of an Title VII employment lawsuit, holding that

criticism is insufficient to establish an adverse action); *Magley v. Wright*, No. 5:98-CV-012, 2001 WL 36126924, at *7 (W.D. Mich. Mar. 30, 2001) (collecting cases and holding that "criticisms, accusations, threats, or 'bad mouthing' are not enough" to establish a First Amendment retaliation claim); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (collecting cases and recognizing "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

Here, there are no allegations that Mr. Denno's criticism caused Plaintiff to suffer injury. To the contrary, Plaintiff concedes that he continues to hold his position of Founding Chair of the Department of Translational Neuroscience and was also *promoted* to Associate Dean of Research Analytics in the College of Human Medicine at MSU in May 2024. *See supra* section II.A.4.. While Plaintiff alleges generalized reputational harm, ECF No. 10, PageID.83, ¶107, Plaintiff pleads no facts supporting this allegation. As such, it is a quintessential "unadorned, the-defendant-actually-harmed-me accusation" that fails to satisfy basic pleading requirements that are necessary to establish a legally cognizable injury. *See Iqbal*, 556 U.S. at 678.

Accordingly, dismissal of Count I as to Mr. Denno is his individual capacity is warranted.

### iii.  Plaintiff did not suffer an adverse action resulting from any conspiracy involving Mr. Denno

At best, Plaintiff alleges that Denno, by and through various MSU students, orchestrated a campaign of retaliation against him. *See supra* section II.A.2(ii). Although Plaintiff curiously refrains from using the word "conspiracy," this is precisely what Plaintiff alleges. *See supra id.* Thus, to show that Mr. Denno conspired with other persons to retaliate against Plaintiff, Plaintiff must allege: (1) a single plan existed, (2) the conspirators shared in the general conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed

in furtherance of the conspiracy that caused injury' to the plaintiff. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020). Additionally, "it is well-settled that conspiracy claims must be pled with some degree of specificity." *Id.* This is a "relatively strict" standard. *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here, the FAC contains no facts that any such agreement existed, nor does Plaintiff allege any facts that any of the unnamed MSU students who voiced public criticism of Plaintiff did so pursuant to a plan to deprive Plaintiff of his alleged First Amendment rights. Instead, Plaintiff asks this Court to make several inferential leaps to conclude that all of the free speech activities taken by unnamed persons who are members of various groups were the product of some sort of plan hatched at a meeting attended by Dr. Vassar, Mr. Denno, and the unnamed nonparties. *See* ECF No. 10, PageID.78-79., ¶¶77-81.[5] Moreover, there are no allegations identifying the harm that Plaintiff actually suffered because of the alleged conspiratorial criticism.

With respect to the two administrative complaints allegedly filed against Plaintiff, see ECF No. 10, PageID.79-80, ¶¶82-83, ¶¶90-91, Plaintiff fares no better. First, Plaintiff does not allege that Mr. Denno had any involvement—let alone an agreement and plan—with MSU student Chola that caused Chola to file a complaint with MSU's OIE against Plaintiff. To the contrary, Plaintiff alleges that Chola "filed the complaint at Vasser's behest." ECF No. 10, PageID.79, ¶83. On top of all of this, Plaintiff acknowledges that the OIE Complaint was filed on October 30, 2023—*i.e.,* <u>before</u> Mr. Denno allegedly met with MSU students and encouraged them to "file false complaints of race discrimination against [Plaintiff]." *Compare* ECF No. 10, PageID.86, ¶114 *with* ECF No. 10, PageID.78, ¶77. Plainly, there are no well-pleaded facts tying

---

[5] With respect to the alleged public statement of the MSU BFSAA (see ECF No. 10, PageID.79, ¶80) and an article published by nonparty publisher (ECF No. 10, PageID.79, ¶81), the allegations are devoid of any stated connection to Mr. Denno.

Mr. Denno to Chola's alleged filing of the OIE complaint. Regarding the second administrative complaint—which was purportedly filed by unspecified members of the MSU Hurriya Coalition with the HLC, see ECF No. 10, PageID.80, ¶90—Plaintiff pleads no facts showing an agreement and plan between unnamed members of the MSU Hurriya Coalition and Mr. Denno that caused the MSU Hurriya Coalition to file an administrative complaint with the HLC in an effort to deprive Plaintiff of his alleged First Amendment rights. Independent of Plaintiff's deficient pleadings, Plaintiff admits that the two administrative complaints were closed without any investigation or adverse rulings. ECF No. 10, PageID.86, ¶¶114-115. In other words, even if the complaints were the product of a retaliatory conspiracy, they did not cause Plaintiff injury; thus, they cannot form the basis for a cause of action. *See Siefert*, 951 F.3d at 768 (overt act committed in furtherance of the conspiracy must cause injury to the plaintiff).

Finally, Plaintiff's allegations that Mr. Denno orchestrated unspecified attacks conducted by unnamed "Arab American student organizations" and a "Palestinian student activist" also fall short of the "relatively strict" pleading standards for a conspiracy claim. *Fieger*, 524 F.3d at 776. Notably absent are any allegations regarding what these unnamed students did to cause Plaintiff injury. At best, Plaintiff alleges that these students "disparaged [Plaintiff] during the public comments portion of the [December 15, 2023 Board] meeting." ECF No. 10, PageID.82, ¶98. But absent is *how* this injured Plaintiff, particularly considering he remains employed and in good standing at MSU. Further, Plaintiff does not allege a First Amendment retaliatory motive with respect to these actions. To the contrary, Plaintiff alleges that Mr. Denno encouraged "Arab American students to disparage [Plaintiff] because [he] is Jewish." ECF No. 10, PageID.84, ¶112.

In sum, the FAC fails to state a § 1983 conspiracy claim against Mr. Denno.

**4.   Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss Count I as asserted against Mr. Denno in his <u>individual</u> capacity because of qualified immunity.**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Whereas the Eleventh Amendment bars claims for damages against State officials in their <u>official</u> capacities, qualified immunity bars claims for damages against government officials in their <u>individual</u> capacities. *Everson v. Leis*, 556 F.3d 484, 493-94 n3 (6th Cir. 2009). Qualified immunity is intended to avoid "the general costs of subjecting officials to the risks of trial . . . inhibition of discretionary action, and deterrence of able people from public service." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) "Indeed . . . even such pre-trial matters as discovery are to be avoided if possible . . . ." *Id.* Qualified immunity is an "entitlement" that constitutes "an *immunity from suit* rather than a mere defense to liability." *Id.* (emphasis in original). "Because the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[T]he issue [of] whether qualified immunity is applicable to an official's actions is a question of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

When a "defendant raises qualified immunity as a defense, the *plaintiff* bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson*, 556 F.3d at 494 (emphasis added). The Court must apply a two-part test to determine whether Plaintiff can defeat qualified immunity. First, the Court must determine whether "a constitutional right has been violated." *Id.* Second, if the Court determines that a right has been violated, the Court must then consider "whether it involved clearly established constitutional rights of which a reasonable

{00131993.DOCX}                                  24

person would have known." *Dickerson*, 101 F.3d at 1158. "The doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Everson*, 556 F.3d at 494 (internal citation and quotations omitted).

Thus, to defeat Mr. Denno's qualified immunity, Plaintiff must show *both* that Mr. Denno violated his constitutional rights and that a reasonable university official would have known that Plaintiff's rights were being violated.

The right to freedom of speech is undisputed. But, for the reasons set forth *supra* section III.A.3.i, Plaintiff was not exercising his First Amendment rights when he spoke about matters involving a MSU Board meeting arising from the performance of his duties as Faculty Senate Chair. Thus, Plaintiff cannot show that he had a constitutional right that Mr. Denno could have violated. And even assuming, *arguendo*, that Plaintiff was engaged in a constitutionally protected activity, the FAC essentially asserts that Mr. Denno is not permitted to criticize a statement with racial overtones that disparaged a group of minority students. This is directly contrary to the First Amendment, which protects the speech of both members of the public and public officials. *See Bond v. Floyd*, 385 U.S. 116, 135-37 (1966).

No reasonable member of the Board would have known that his own First Amendment protected speech at a public meeting would have violated Plaintiff's First Amendment Rights. And even if one considered the "conspiracy" allegations despite the fact that Plaintiff fails to plead such allegations with specificity or allege a legally cognizable injury, no reasonable member of the Board would have known that engaging in such activities violated the First Amendment.

Accordingly, Mr. Denno is entitled to qualified immunity for these reasons.

**B.    Dismissal of Count II is Warranted**

Count II of Plaintiff's FAC asserts a claim against all Defendants for liability claim under 42 U.S.C. § 1983 for alleged First Amendment retaliation. ECF No. 10, Page ID.98-100. Although the section of the FAC specifically pertaining to this claim makes no distinction between Mr. Denno's official capacity and individual capacity, Plaintiff—as previously noted— sues Mr. Denno in both his official and individual capacity. *See* ECF No. 10, Page ID.72, ¶41.

To the extent that Plaintiff asserts Count II against Mr. Denno in his official capacity, it is redundant and should be dismissed. An official-capacity suit is to be treated as a suit against the entity—here, the Board itself. *Kentucky v. Graham*, 473 U.S. 159, 166, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985). Because the Board is already named in Count II, the claim raised against Mr. Denno in his official capacity is redundant and should be dismissed. *Brunson v. City of Dayton*, 163 F.Supp.2d 919, 927 (S.D. Ohio 2001) (sustaining a motion to dismiss official capacity claims against individual defendants where municipality was also defendant).[6]

Further, and notwithstanding the previous basis for dismissal, Count II must be dismissed as to Mr. Denno in its entirety because *Monell* does not provide a basis for finding liability against Mr. Denno, regardless of Plaintiff's allegations. Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny, a *municipality* or other *local* governing body (unlike a state or state official) constitutes a "person" and may be sued for monetary, declaratory, or injunctive relief under § 1983. A viable § 1983 *Monell* claim

---

[6] Considering that Count II asserts a 42 U.S.C. § 1983 claim for alleged First Amendment retaliation and Count I asserts the same type of claim, it is unclear how Count II substantively differs from Count I. However, given that Count II includes a claim against the Board and the named board members, whereas Count I includes a claim against the named board members only, it appears that Plaintiff essentially seeks to hold the Board liable under the doctrine of *Monell*. However, as set forth *infra*, *Monell* is inapplicable to Denno or any of the other defendants.

consists of two components: (1) the *municipality* had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g., Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) ("To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom."). *Monell* expressly applies only to local governments. *See Monell*, 436 U.S. at 691 n. 54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). *See also Will,* 491 U.S. at 70 ("We consequently limited our holding in Monell to local government units which are not considered part of the State for Eleventh Amendment purposes.") (internal citation and quotations omitted).

Undisputedly, Mr. Denno is a state-elected official. Conversely, he is not an officer of a municipality. As such, *Monell* does not provide a legally cognizable basis to sue Mr. Denno and this claim must be dismissed as to Mr. Denno in its entirety.

## C.    Dismissal of Count III is Warranted

Count III of Plaintiff's complaint asserts a "claim" for "injunctive relief." But an injunction is not a cause of action; rather, it is "a *remedy* whose basis in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S. Ct. 2069, 2075, 45 L. Ed. 2d 12 (1975) (emphasis added). Where there is no viable cause of action, there is no legal basis for the issuance of injunctive relief. *See Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc*., 515 F. App'x 451, 458 (6th Cir. 2013) ("because the [plaintiffs] have no cause of action, they cannot pursue damages or injunctive relief."). *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir.

2004) ("a traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.")

Given that Plaintiff does not have any viable claim for which injunctive relief may be granted as a remedy, equitable relief in the form of an injunction is unavailable. Thus, dismissal of Count III is warranted.

## V.  <u>CONCLUSION</u>

WHEREFORE, Defendant Dennis Denno respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Respectfully submitted,

STARR, BUTLER, & STONER, PLLC

By:    /s/ Daniel C. Waslawski
       Daniel C. Waslawski (P78037)
       Attorney for Defendant Denno only
       20700 Civic Center Dr., Ste. 290
       Southfield, MI  48076
       (248) 864-4931
       dwaslawski@starrbutler.com

Dated:  March 7, 2025

<u>CERTIFICATE OF SERVICE</u>

The undersigned says that on March 7, 2025, she has caused to be served a copy of **Defendant Dennis Denno's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (6), and this Certificate of Service** via the Court's electronic filing system upon all attorneys of record.

/s/ Kiersten Plane