UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

     Plaintiff,

v.

MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES DIANNE BYRUM, DENNIS DENNO,
DAN KELLY, RENEE KNAKE JEFFERSON,
SANDY PIERCE, BRIANNA T. SCOTT,
KELLY TEBAY and REMA VASSAR,
in their individual and official capacities,

     Defendants.

Case No. 1:24-cv-01029-HYJ-SJB

Hon. Hala Y. Jarbou
Magistrate Judge Sally J. Berens

---

**MOTION BY DEFENDANT REMA VASSAR TO DISMISS ALL
CLAIMS AGAINST HER PURSUANT TO RULES 12(B)(1), (2) AND (6)**

**--- AND ---**

**BRIEF SUPPORTING MOTION BY TRUSTEE DR. REMA VASSAR
TO DISMISS CLAIMS PURSUANT TO RULES 12(B)(1), (2) AND (6)**

**ORAL ARGUMENT REQUESTED**

{00746037.DOCX}

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………………i

Index of Authorities……………………………………………………………………iii

Motion to Dismiss………………………………………………………………………1

Brief Supporting Motion to Dismiss…………………………………………………3

Introduction …………………………………………………………………………3

Statement of Facts and Procedural History ……………………………………………4

    A.    The Detroit News interviewed Plaintiff regarding the statement he made on behalf of the Michigan State Faculty Senate at the October 27, 2023 meeting of the Board of Trustees of Michigan State University…………………………………………………4

    B.    After Dr. Lipton claims that he was criticized for his statement to the Detroit News by students, faculty members, campus organizations and others, Dr. Lipton apologized for what he had said………………………………………………………………….. 6

    C.    Dr. Lipton makes only a few allegations about what Dr. Vassar allegedly personally did or said…………………………………………………………………………7

Argument………………………………………………………………………………9

    A.    This Court should dismiss all claims alleged against Dr. Vassar in her official capacity because she is protected from suit in that capacity by the Eleventh Amendment..9

    B.    In the alternative, this Court should dismiss Count I with prejudice because it does not state a claim on which relief can be granted………………………………………..12

        1.    Plaintiff must offer sufficient factual allegations, not mere labels and conclusions, to survive a Rule 12(b)(6) motion…………………………………………………………………………....12

        2.    The First Amendment Rights of public employees are more limited, and Dr. Lipton was speaking within the scope of his employment………………………13

        3.    Plaintiff has not alleged facts showing that he has suffered adverse employment action sufficient to sustain a retaliation claim under 42 U.S.C. § 1983………………………………………………………………………16

        4.    There is an extremely high burden for establishing a retaliation claim based upon public statements that allegedly cause emotional distress…………………18

        5.    Plaintiff has not alleged facts sufficient to state a retaliation claim against Dr. Vassar under 42 U.S.C. § 1983……………………………………………20

C.    Dr. Vassar is also protected from liability in her personal capacity under the doctrine of qualified immunity………………………………………………………..22

D.    This Court should dismiss Count II for failure to state a claim on which relief can be granted because Dr. Vassar is not an official with a municipality……………….…..23

E.    This Court should Count III because it fails to state a claim on which relief can be granted because remedies are not causes of action and Plaintiff is not entitled to the remedies that are requested…………………………………………………………………25

      1.    This Court does not have the legal authority to remove Dr. Vassar from the state office to which she has been elected by the People of the State of Michigan……………………………………………………………………....26

      2.    This Court should deny Plaintiff's request that it enjoin Dr. Vassar because the requested relief is too vague to be granted under federal law………………27

Conclusion and Relief Requested…………………………………………………………...28

Certificate of Word Count…………………………………………………………………...29

## INDEX OF AUTHORITIES

**Case Law**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ……………………………………………………….…12, 13, 15

*Barrett v. Harrington*,
130 F.3d 246 (6th Cir. 1997)………………………………………………..……19, 20, 23

*Benningfield v. Houston Police Department*,
157 F.3d 369 (5th Cir. 1998)………………………………………………...18, 20, 23

*Bloch v. Ribar*,
156 F.3d 673 (6th. Cir 1998)………………………………………………18, 20, 23

*Brent v. Wayne Cty. Dep't of Human Servs.*,
901 F.3d 656 (6th Cir. 2018)……………………………………………………..11

*Buback v. Governor*,
380 Mich. 209, 156 N.W.2d 549 (1968)………………………………………………26

*Colvin v. Caruso*,
605 F.3d 282 (6th Cir. 2010)………………………………………………………20, 22

*Commissioner v Wooster Brush Company*,
727 F.2d 566 (6th Cir. 1984)………………………………………………………..27

*Connick v. Myers*,
461 U.S.138 (1983)………………………………………………………………...14, 17

*Crump v. Blue*,
121 F.4th 1108 (6th Cir. 2024) ………………………………………………..……10

*Fox v. Traverse City Area Public Schools*,
605 F.3d 345 (6th Cir. 2010)………………………………………………………14

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)………………………………………………………………14, 17

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007)………………………………………………………10

*Hilton v. Mish*,
720 Fed. Appx. 260 (6th Cir. 2018)………………………………………………..20

*Kaplan v. Univ. of Louisville*,
10 F.4th 569 (6th Cir. 2021)……………………………………………………..…..25

*Kentucky v. Graham*,
473 U.S. 159 (1985)……………………………………………………………..…...22

*Mattox v. City of Forest Park*,
183 F.3d 515 (6th. Cir 1999)……………………………………………………...17-20

*Mayhew v. Town of Smyrna*,
856 F.3d 456 (6th Cir. 2017) ……………………………………………………….14

*Monell v. Department of Social Services of the City of New York*,
436 U.S. 658 (1978)………………………………………………………..…...24, 25

*Mullane v. Cent. Hanover Bank*,
339 U.S. 306 (1950)……………………………………………………………...…27

*Rogers v. Stratton Indus., Inc.*,
798 F.2d 913 (6th Cir. 1986)………………………………………………………10

*S &M Brands, Inc. v. Cooper*,
527 F.3d 500 (6th Cir. 2008)…………………………………………………...10, 11

*Skatemore, Inc. v. Whitmer*,
40 F.4th 727 (6th Cir. 2022)……………………………………………………….11

*Suarez Corporation v. McGraw*,
202 F.3d 676 (4th Cir. 2000)…………………………………………………18, 20, 23

*Taylor v. City of Falmouth*,
187 Fed. Appx. 596 (6th Cir. 2006)……………………………………………19, 20, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)………………………………………………………………….5

*Thaddeus-X v. Blatter*,
175 F.3d 378 (6th Cir. 1999) ………………………………………………….*passim*

*Wayside Church v. Van Buren County*,
847 F.3d 812 (6th Cir. 2017)………………………………………………………10

*Wilson v. Civil Town of Clayton*,
839 F.2d 375 (7th Cir. 1988)……………………………………………………...24

**Michigan Constitution**

Mich. Const. art V, § 10.................................................................................................26

Mich. Const. art VII, § 5………………………………………………………………..24, 26

**Statutes**

42 U.S.C. § 1983………………………………………………………………..*passim*

**MOTION TO DISMISS**

Defendant Dr. Rema Vassar, through her counsel, Lipson Neilson P.C., pursuant to Rules 12(b)(1), (2) and (6), requests that this Honorable Court grant this Motion and dismiss the claims that Plaintiff Jack Lipton has made against her for the following reasons:

1.      Dr. Vassar has been sued in federal court in her official capacity even though the Eleventh Amendment to the United States Constitution prohibits federal courts from exercising subject matter jurisdiction over state officials sued in their official capacity. Therefore, she is entitled to dismissal to all claims against her in this capacity under Federal Rule of Civil Procedure ("Rule") 12(b)(1).

2.      Plaintiff has failed to state a claim in Count I on which relief can be granted because (1) the First Amendment does not protect speech made by a state employee while carrying out the employee's duties and (2) there has been no adverse action in retaliation against Dr. Lipton, who was actually promoted during after making issuing a statement to the press that was highly critical of how a Board meeting was conducted. Therefore, Court I should be dismissed pursuant to Rule 12(b)(6).

3.      Even if Count I states a claim on which relief can be granted, qualified immunity protects Dr. Vassar from liability on any claim against her in her personal capacity. Therefore, Count I should be dismissed pursuant to Rule 12(b)(2).

4.      Count II does not state a claim on which relief can be granted against Dr. Vassar because the liability alleged only applies to municipalities, other local governmental units and their employees, but Dr. Vassar is none of them. Therefore, this Court should dismiss Count II pursuant to Rule 12(b)(6).

5.      Count III does not state a claim on which relief can be granted because (1)

injunctive relief is a remedy, not an independent cause of action, (2) this Court does not have the legal authority to remove an elected state official from office and (3) the other injunctive relief requested is too vague and ambiguous to be issued. Therefore, this Court should dismiss Count III pursuant to Rule 12(b)(6).

6.      Pursuant to Local Rule 7.1(d)(1), undersigned counsel attempted to seek concurrence in the relief requested by emailing Plaintiff's counsel on March 12, 2025. Plaintiff's counsel responded to this email to expressly refuse to concur in the relief requested.

WHEREFORE Defendant Dr. Rema Vassar requests that this Honorable Court grant this Motion, dismiss all claims against her, award her the costs, including attorney fees incurred to obtain the relief requested and award her such other relief as this Court deems just and equitable.

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
C. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
Dated: March 12, 2025                     tludden@lipsonneilson.com

**SUPPORTING BRIEF**

**INTRODUCTION**

Plaintiff Jack Lipton claims that Defendants have unlawfully retaliated against him, in violation of his rights under the First Amendment to the United States Constitution. But, there are numerous, insurmountable, deficiencies in the claims that he attempts to allege in his Amended Complaint. The first is created by the eleventh Amendment to the United States Constitution, which prevents this Court from exercising subject matter jurisdiction over Dr. Vassar in her official capacity as a Trustee of Michigan State University. But, that is not the last problem that Plaintiff has.

Dr. Lipton is an employee of Michigan State University. Therefore, he can only pursue a claim for retaliation for exercising his First Amendment rights if he can prove that he was not speaking as such an employee. But, even under the facts alleged, Plaintiff cannot meet that burden. Even if he could clear that hurdle, Plaintiff has not alleged facts showing that any Defendant, including Dr. Vassar, subjected him to the type of significant adverse action required to prove a claim for retaliation under 42 U.S.C. § 1983. In fact, Michigan State promoted him rather than punished him.

There are other problems. Such as the qualified immunity that applies, and the fact that Plaintiff tries to allege a *Monell* claim in Count II, but such claims are limited to municipalities, local government entities and their employees; Michigan State and its Trustees are none of them. Finally, Plaintiff is not entitled to any of the injunctive relief that he requests, most especially his request that this Court remove Dr. Vassar from her position as a Trustee, to which she was elected by the people of the state of Michigan in November 2020.

Therefore, this Court should grant this Motion and dismiss all claims against Dr. Vassar.

{00746037.DOCX}                                3

## STATEMENT OF FACTS

On December 23, 2024, Plaintiff filed his Amended Complaint,[1] which named as Defendants the Michigan State University Board of Trustees, and eight Trustees, in both their individual and official capacity.[2] One of the Trustees named as a Defendant by that pleading is Dr. Rema Vassar. She now moves to dismiss the Amended Complaint as her initial response to this pleading.

Because Dr. Vassar is moving to dismiss as her initial response, she must rely upon the facts that are alleged by Dr. Lipton. Therefore, Dr. Vassar cannot contest them as a procedural matter despite disagreeing with many of the factual allegations and the innuendo raised by Plaintiff.

### A.    The Detroit News interviewed Plaintiff regarding the statement he made on behalf of the Michigan State Faculty Senate at the October 27, 2023 meeting of the Board of Trustees of Michigan State University.

Plaintiff, "Dr. Jack Lipton is the Founding Chair of the Department of Translational Neuroscience and Associate Dean for Research Analytics at the College of Human Medicine at Michigan State University ("MSU" or "Michigan State")."[3] Plaintiff was elected to serve as Chair of the MSU Faculty Senate in August 2023.[4] One of Plaintiff's duties in this capacity is to deliver a formal address at every meeting of the Board of Trustees of MSU.[5] Plaintiff spoke at the October 27, 2023 meeting of the Board of Trustees in this capacity and presented a Faculty Resolution that

---

[1] PageID.65 et seq.
[2] Amended Complaint, ¶¶ 32, 40-41, PageID.71-72. The terms in office of two of the Trustees named as Defendants ended on December 31, 2024.
[3] *Id.*, ¶ 1, PageID.66.
[4] *Id.*, ¶ 11, PageID.68.
[5] *Id.*, ¶ 12, PageID.68.

{00746037.DOCX}                                4

*inter alia* called on Dr. Rema Vassar to resign from the Board of Trustees.[6] Plaintiff did not like how the October 27, 2023 meeting was conducted. In his pleadings, he alleges that this meeting was disorderly and chaotic.[7]

After the October 27, 2023 meeting, Dr. Lipton communicated with reporters.[8] He now alleges that he was speaking "in his opinion as a private individual."[9] But, the Detroit News article that he references in his pleadings and thereby incorporates into his Amended Complaint,[10] is entitled "MSU Faculty Senate chair slams board leader Rema Vassar for chaos, outbursts at meeting."[11] This article further state that:

> **The chair of Michigan State University's Faculty Senate is criticizing** the embattled board of trustees leader Rema Vassar for what he calls "intimidation and bullying" during Friday's raucous board meeting.
>
> . . .
>
> **MSU Faculty Senate Chair Jack Lipton issued a statement** Saturday in which he argued that Vassar didn't try to stop the chaos.
>
> > "The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action," he said. "The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room."
>
> . . .

---

[6] *Id.*, ¶¶ 14-15, PageID.68.

[7] *See, e.g., Id.*, ¶ 16, PageID.68.

[8] 8 *Id.*, ¶ 17, PageID.68.

[9] *Id.*

[10] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[11] Amended Complaint, p 5 n. 5, PageID.69; and Exhibit A.

> Lipton said during the meeting, some in the audience were "screaming at the top of their lungs, yelling at people, jeering at anyone who said a comment that they didn't like." He said Vassar failed to intervene and "control her supporters and try and keep the room civil."
>
> . . .
>
> Lipton noted that **the Faculty Senate chair is always scheduled to speak at the board meetings as the faculty liaison**.[12]

**B.    After Dr. Lipton claims that he was criticized for his statement to the Detroit News by students, faculty members, campus organizations and others, Dr. Lipton apologized for what he had said.**

Dr. Lipton makes a series of allegations regarding the response by students, faculty and campus organizations to the statement he issued to the Detroit News. He claims that student and faculty groups released statements that accused him of targeting a specific racial group because in his statement to the Detroit News.[13] Plaintiff also claims that a website "published an op-end authored by Vassar associate Clyde Barnett III that made similar accusations."[14] Dr. Lipton contends that Dr. Vassar and Trustee Denno coordinated these activities.

There was a Faculty Senate meeting on November 21, 2023.[15] During this meeting, another Faculty member was critical of Dr. Lipton's statement to the Detroit News.[16] While Dr. Lipton claims this hurt his reputation, he does not contend that Dr. Vassar was responsible for it.

He also complains that Dr. Vassar (and Trustee Denno) attended the December 15, 2023 meeting "together in the same room with multiple student members of BSA, MSU NAACP, and

---

[12] Exhibit A (incorporated by referenced into Amended Complaint) (emphasis added).
[13] Amended Complaint, ¶¶ 78-80, PageID.78-79.
[14] *Id.*, ¶ 81, PageID.79.
[15] *Id.*, ¶ 109, PageID.84.
[16] *Id.*

the MSU Hurriya Coalition"[17] Dr. Lipton does not like what these students said or how they behaved.[18] Plaintiff argues that Dr. Vassar and Trustee Denno supported and encouraged these students, but does not make any allegations about what the two of them said during the meeting. Instead, he is critical of the failure of any Trustee to support him.[19]

In any event, Dr. Lipton issued a lengthy apology at the December 15, 2023 Board Meeting for the statement that he had issued after the October 27, 2023 Board Meeting.[20]

### C.    Dr. Lipton makes only a few allegations about what Dr. Vassar allegedly personally did or said.

Plaintiff attributes some of the criticism that he has received to Dr. Vassar, sometimes relying solely on his information or belief. But, Dr. Lipton makes only a few allegations regarding what Dr. Vassar did or said after he issued his statement to the Detroit News.

For example, Plaintiff alleges that Dr. Vassar requested a meeting to discuss the Faculty Senate resolution after the October 27, 2023 Board meeting, but then canceled the meeting.[21] Dr. Lipton also makes allegations regarding a September 5, 2024 lunch meeting that he had with all of the Trustees except Trustee Jefferson.[22] MSU President Kevin Guskiewicz, MSU Interim Provost Thomas Jeitschko, MSU General Counsel Brian Quinn, and faculty colleagues were also at this lunch.[23] Plaintiff does not allege that this was not a formal meeting of the Board of Trustees. During this meeting, Plaintiff alleges that:

- Dr. Vassar asked Dr. Lipton to share an example of a lack of uncivil

---

[17] *Id.*, ¶ 98, PageID.98.
[18] *Id.*, ¶¶ 102-103, PageID.83.
[19] *Id.*, ¶ 106, PageID.83...
[20] *Id.*, ¶ 113, PageID.84-86.
[21] *Id.*, ¶¶ 73-75, PageID.78.
[22] *Id.*, ¶¶ 148 – 157, PageID.91-92.
[23] *Id.*, ¶ 155, PageID.92.

discourse by the Board;

- Dr. Lipton mentioned a March 3, 2024 Board Meeting where Dr. Vassar allegedly made a rude hand gesture toward another Trustee; and

- Dr. Vassar disagreed and also told Dr. Lipton that "that he did not have any grounds to speak about civil discourse, since he had used the term "mob" to label students, and since in her opinion, he had displayed an absence of self-reflection in his October 29 quote to The Detroit News."[24]

Plaintiff claims that this exchange amounted to targeting, disparaging and attempted to humiliate him.[25] He also complains that none of the Trustees intervened to support him.[26]

After alleging one Trustee told him the Board could have imposed a longer censure on Dr Vassar and Mr. Denno,[27] Plaintiff then complains about how the September 24, 2024 investiture of new MSU President Guskiewicz was conducted.[28] Dr. Lipton contends that the participation of Dr. Vassar and Mr. Denno in this ceremony and their attending a reception with donors afterwards violated and overruled the terms of the censure.[29] The Trustees and new President were even – *horrible visu* – smiling in a group photograph presumably taken at this event and incorporated into Amended Complaint.[30] This allegedly shocked, humiliated and somehow silenced Dr. Lipton.[31]

Plaintiff then contends that the MSU BSA made an Instagram post that made allegations about him.[32] He alleges that this post constitutes "continued failure to properly address and remedy

---

[24] *Id.*, ¶¶ 150, 151, 153, 154, PageID.91-92.
[25] *Id.*, ¶ 156, PageID.92.
[26] *Id.*, ¶ 157, PageID.92.
[27] *Id.*, ¶¶ 159-160, PageID.92-93.
[28] *Id.*, ¶¶ 162-170, PageID.93-95.
[29] *Id.*, ¶¶ 169, PageID.95.
[30] *Id.*, page 30, PageID.94.
[31] *Id.*, ¶¶ 170, PageID.95.
[32] *Id.*, ¶¶ 171-172, PageID.95.

the ongoing retaliation by Vassar and Denno toward Dr. Lipton."[33] Plaintiff then alleges that the Board should have censured Dr. Vassar and Mr. Denno for a longer period of time and should have recommended their removal as Trustees.[34] Plaintiff also mentions that the Board "sent a recommendation to the Governor that Vassar and Denno be considered for removal with no other finding."[35] From this Plaintiff concludes that the Trustees "are unwilling to protect Dr. Lipton and other potential victims of Vassar and Denno's abuse."[36] He concludes his factual allegations by complaining that Dr. Vassar and Mr. Denno now "have full, unfettered access to all of the powers, privileges, and duties of the MSU Board of Trustees."[37]

## ARGUMENT

As a matter of federal and Michigan law, the state of Michigan and its elected public officials, including Trustees of state universities, are generally immune from being sued. None of the narrow exceptions from this general rule applies. Therefore, this Court should dismiss all of the claims against Dr. Vassar for lack of jurisdiction. In the alternative, even if Dr. Vassar were not immune, Plaintiff has failed to state a claim on which relief can be granted, which justifies dismissing all claims against her with prejudice pursuant to Rule 12(b)(6).

### A.    This Court should dismiss all claims alleged against Dr. Vassar in her official capacity because she is protected from suit in that capacity by the Eleventh Amendment.

The Eleventh Amendment prevents this Court from exercising subject matter jurisdiction over Dr. Vassar in her official capacity as a Trustee of Michigan State University. Both Count I

---

[33] *Id.*, ¶ 174, PageID.95.
[34] *Id.*, ¶¶ 176-177, 179, PageID.95-96.
[35] *Id.*, ¶ 179, PageID.96.
[36] *Id.*, ¶ 180, PageID.96.
[37] *Id.*, ¶ 181, PageID.96.

and Count II of the Complaint seek monetary relief from Dr. Vassar in her official capacity.[38]
Therefore, this Court should dismiss those Counts pursuant to Rule 12(b)(1).

"Dismissals under Eleventh Amendment immunity . . . come under Rule 12(b)(1), which
covers dismissals for "lack of subject-matter jurisdiction."[39] The standard of review for a Rule
12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant
makes a facial or factual challenge to subject matter jurisdiction.[40] "A facial attack . . . questions .
. . the sufficiency of the pleading. [Therefore], a district court takes the allegations in the complaint
as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss."[41] Plaintiff has
the burden of proving that this Court has subject matter jurisdiction.[42]

"A suit against a state official in his or her official capacity is not a suit against the official
but rather is a suit against the official's office, i.e., against the State."[43] The Sixth Circuit has
recently explained that:

> The Eleventh Amendment bars suits against a state or its agencies
> in federal court. Since the ratification of the Eleventh Amendment,
> the Supreme Court has expanded the Amendment's plain language
> in two important ways. First, the Court held that Eleventh
> Amendment immunity applies to private suits commenced against a
> state by its own citizens. Second, the Court made the Eleventh
> Amendment applicable to state officials sued in their official

---

[38] Count I does not expressly states whether it seeks relief from Dr. Vassar and the other Trustees
in their official capacity. Count II is alleged against the Board and the individual Trustees in their
official capacity, but not in their individual capacities. Amended Complaint, ¶¶ 198-203,
PageID.98-100 (always referring to Trustees "in their official capacities", never in their personal
capacities).
[39] *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir. 2024) (citing Fed. R. Civ. P. 12(b)(1)).
[40] *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017).
[41] *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citations
omitted).
[42] *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).
[43] *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (cleaned up).

capacity.[44]

There are three generally recognized exceptions from Eleventh Amendment immunity: "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies."[45]

Because Dr. Vassar raises Eleventh Amendment immunity in her first filing, she has not waived the protection of this doctrine.[46]

Both Count I and II seek relief pursuant to 42 U.S.C. §1983. The Sixth Circuit has held that Congress did not abrogate Eleventh Amendment Immunity by enacting 42 U.S.C. § 1983.[47]

The *Ex parte Young* exception applies only to claims for prospective injunctive or declaratory relief to remedy ongoing violation of federal law, not to claims seeking retroactive relief.[48] The Amended Complaint does not allege any conduct by Dr. Vassar that occurred after a lunch meeting on September 5, 2024 or her attending a September 25, 2024 reception after the investiture of new MSU President Guskiewicz.[49] Both of those events were discrete events, not ongoing ones.

Therefore, none of the three exceptions applies, this Court should find that the Eleventh Amendment protects Dr. Vassar from suit in her official capacity as a Michigan State University Trustee. Accordingly, it should dismiss the claims against her in that capacity pursuant to Rule

---

[44] *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 732 (6th Cir. 2022) (cleaned up).
[45] *Id.* at 733 (6th Cir. 2022) (cleaned up).
[46] *See, e.g.,* Fed. R. Civ. P. 12(b) (identifying defenses that must be raised before or in first responsive pleading.
[47] *Brent v. Wayne Cty. Dep't of Human Servs*., 901 F.3d 656, 683 (6th Cir. 2018).
[48] *S&M Brands*, 527 F.3d at 507-508.
[49] Amended Complaint, ¶¶ 148-157, 162-170, PageID.91-95.

12(b)(1).[50]

> **B.    In the alternative, this Court should dismiss Count I with prejudice because it does not state a claim on which relief can be granted.**

Count I attempts to allege a claim for unlawful retaliation for Dr. Lipton's engaging in activity allegedly protected by the First Amendment. But, the facts alleged by Plaintiff do not show that he engaged in any protected speech. Moreover, Plaintiff has not alleged facts showing that he has suffered the type of economic injury that could constitute the adverse action needed to prove his claim. Finally, Plaintiff's pleadings do not show that Dr. Vassar's alleged actions constitute adverse action. Therefore, this Court should dismiss Count I pursuant to Rule 12(b)(6) because it fails to state a claim for retaliation on which relief can be granted.

> 1.    Plaintiff must offer sufficient factual allegations, not mere labels and conclusions, to survive a Rule 12(b)(6) motion.

This Court should dismiss Count I if it "fail[s] to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."[51] The Supreme Court further explains that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.[52]

The Supreme Court has held that this Court should apply "two working principles" when

---

[50] Dr. Vassar explains why qualified immunity protects her from liability in her personal capacity below.

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

[52] *Id.* (cleaned up).

reviewing a 12(b)(6) motion. The first is that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[53] "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."[54] "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown --that the pleader is entitled to relief."[55]

2.    <u>The First Amendment Rights of public employees are more limited,<br>and Dr. Lipton was speaking within the scope of his employment.</u>

In Count I, the Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 because Dr. Vassar allegedly retaliated against him for exercising his First Amendment rights. "The essence of such a claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of  the protected conduct."[56]

The only conduct that Plaintiff claims was protected by the First Amendment was his speaking to the Detroit News regarding the October 27, 2023 Board meeting.[57] Plaintiff concedes that his being employed by MSU limits the circumstances in which he can pursue a claim for

---

[53] *Id.*
[54] *Id.* at 679 (cleaned up).
[55] *Id.* (cleaned up).
[56] *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999).
[57] Amended Complaint, ¶¶ 184, 186, PageID.96-97. Plaintiff does not allege that his speaking at the October 27, 2023 Board of Trustees Meeting, which he did as Chari of the Faculty Senate, was protected speech. Nor does he allege that any other comments that he has made constituted protected speech.

alleged retaliation pursuant to 42 U.S.C. § 1983.[58] Certainly, "a citizen who works for the government is nonetheless a citizen."[59] But, when acting as an employer, a state does have the right to regulate the conduct of its employees when acting as employees.[60] Moreover, every employment grievance should not become a constitutional dispute under 42 U.S.C. § 1983.[61] The first question is "whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee had no First Amendment cause of action based on his or her employer's reaction to the speech.[62]

The Sixth Circuit has consistently held that "the determination as to whether [a public employee] engaged in protected speech [is] one of law."[63] This Court "must consider both its content and context -- including to whom the statement was made -- to determine whether the plaintiff made the statement pursuant to [his] individual duties."[64] "Speech by a public employee made pursuant to *ad hoc* or *de facto* duties not appearing in any written job description is nevertheless not protected if it 'owes its existence to [the speaker's] professional responsibilities.'"[65]

To avoid the limits on his speech as a MSU employee, Plaintiff alleges that his comments to the Detroit News were "as a private individual" and that his speech was therefore protected because "it was not ordinarily within the course of his duties as a MSU employee."[66] These

---

[58] Amended Complaint, ¶ 185, PageID.97.
[59] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).
[60] *Connick v. Myers*, 461 U.S. 138, 140 (1983)
[61] *Connick*, 461 U.S. at 143.
[62] *Garcetti,* 547 U.S. at 418.
[63] *Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017) (after reviewing case law).
[64] *Fox v. Traverse City Area Public Schools*, 605 F.3d 345, 348 (6th Cir. 2010).
[65] *Id.*
[66] Amended Complaint, ¶¶184, 186, PageID.96-97.

allegations are legal conclusions, not well-pleaded facts. This Court should determine if Plaintiff's was speaking as a private citizen rather than pursuant to his employment from his factual allegations, not Plaintiff's legal conclusions.[67]

Plaintiff spoke at the October 27, 2023 Board Meeting in his capacity as Chair of the Faculty Senate.[68] In this capacity, Plaintiff speaks at all meetings of the Board of Trustees of MSU.[69] Dr. Lipton now claims he was offering his opinion as a private individual to the Detroit News reporter.[70] But, the Detroit News article in which he was quoted is entitled "**MSU Faculty Senate chair slams** board leader Rema Vassar for chaos, outbursts at meeting."[71] This article further provides that:

> **The chair of Michigan State University's Faculty Senate is criticizing** the embattled board of trustees leader Rema Vassar for what he calls "intimidation and bullying" during Friday's raucous board meeting.
>
> . . .
>
> **MSU Faculty Senate Chair Jack Lipton issued a statement** Saturday in which he argued that Vassar didn't try to stop the chaos.
>
>> "The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action," he said. "The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room."
>
> . . .
>
> Lipton said during the meeting, some in the audience were "screaming at the top of their lungs, yelling at people, jeering at

---

[67] *Ashcraft*, 556 U.S. at 678.
[68] Amended Complaint, ¶¶ 14-15, PageID.68.
[69] *Id.*, ¶ 12, PageID.68.
[70] *Id.*, ¶ 17, PageID.68.
[71] *Id.*, p 5 n. 5, PageID.69; and Exhibit A (emphasis added).

anyone who said a comment that they didn't like." He said Vassar failed to intervene and "control her supporters and try and keep the room civil."

. . .

**Lipton noted that the Faculty Senate chair is always scheduled to speak at the board meetings as the faculty liaison.**[72]

Therefore, Plaintiff spoke at the Board Meeting in his capacity as Faculty Senate Chair, not as a private citizen.[73] This was a regular part of his job duties.[74] Plaintiff was then interviewed because he had spoken at the Board meeting in this capacity. The article makes clear, both from its title and its content, that the reporter communicated with Dr. Lipton in his capacity as a MSU employee and that Plaintiff was speaking, and quoted, in this capacity. Under *Fox,* the publication of Dr. Lipton's statements "owes its existence to [Dr. Lipton's] professional responsibilities.'"[75]Accordingly, this Court should conclude, as a matter of law, that Dr. Lipton was speaking as an MSU employee, not a private citizen. As a result, it should find that Plaintiff's speech was not a protected activity for purposes of pursuing a claim for retaliation under 42 U.S.C §1983.

3.    Plaintiff has not alleged facts showing that he has suffered adverse employment action sufficient to sustain a retaliation claim under 42 U.S.C. § 1983.

The second element of a retaliation claim that Plaintiff must prove is that adverse action was taken against him.[76] "The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts,

---

[72] Exhibit A (incorporated by referenced into Amended Complaint) (emphasis added).
[73] Amended Complaint, ¶¶ 14-15, PageID.68.
[74] *Id.*, ¶ 12, PageID.68.
[75] 605 F.3d at 348.
[76] *Thaddeus-X*, 175 F.3d at 386.

and failure to promote."[77] In *Connick*, one of the lead cases defining when a public employee's speech is protected, the plaintiff's employment was terminated because she had circulated a questionnaire at the office.[78] In *Garcetti*, the plaintiff was demoted, transferred and then denied promotion.[79] An "adverse action is one that would 'deter a person of ordinary firmness' from exercise of the right at stake."[80]

The Amended Complaint does not allege any similar adverse impact on his employment. Dr. Lipton does not contend that that he was fired, demoted, transferred to a different location, or not hired because of his allegedly protected conduct. Plaintiff alleges that he "was explicitly told by a superior that the public attack on his character was seen as a liability for a promotion to the position of Associate Dean for Research Analytics."[81] But, in the very first paragraph of the Amended Complaint, Dr. Lipton alleges that he is "Associate Dean for Research Analytics."[82] Therefore, the alleged retaliation did not prevent Plaintiff from obtaining the promotion within MSU that he was seeking.

Plaintiff also claims that he has been searching for employment outside MSU, but that an unnamed "executive search firm associate shared that the public attacks on his character labeling him a "racist" will negatively impact his employment chances, despite his superb qualifications."[83] Plaintiff does not allege that he did not receive a new job because of the alleged retaliation. Even if he did allege this, it would show that some unknown potential employer has wronged him, not

---

[77] *Thaddeus-X*, 175 F.3d at (collecting cases).
[78] *Connick*, 461 U.S. at 140, 142.
[79] 547 U.S. at 414.
[80] *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th. Cir 1999).
[81] Amended Complaint, ¶ 137, PageID.89.
[82] *Id.*, ¶ 1, PageID.66.
[83] *Id.*, ¶ 138, PageID.89.

that Dr. Vassar or any other "defendant took an adverse action against the plaintiff."

Therefore, Plaintiff has not alleged facts showing that he suffered the type of injury typically required to prove adverse action in the employment context.

<div style="text-align:center">

4.    <u>There is an extremely high burden for establishing a retaliation claim based upon public statements that allegedly cause emotional distress.</u>

</div>

Without tangible adverse employment action, Plaintiff contends that the various statements, made by a number of individuals and organizations, have "harmed and damaged his reputation."[84] He seeks relief because of his alleged "mental and emotional distress in the form of anxiety, mental anguish, humiliation and embarrassment."[85] As a general matter, criticism and even false accusations do not constitute adverse action in the employment context.[86] The Fifth Circuit has found that false accusations of criminal conduct by police officers related to their employment was not sufficient adverse employment action to support a retaliation claim.[87]

It is ironic that Plaintiff is pursuing a First Amendment Retaliation claim based upon what others have said to or about him. More importantly, there are few cases finding that an "injury based on embarrassment, humiliation and emotional distress' is sufficient to be actionable under § 1983."[88] These cases are extraordinary. For example, in *Bloch v. Ribar*,[89] the Sixth Circuit reversed the dismissal of a retaliation claim based upon Sheriff Ribar's statements about the rape of the plaintiff at a press conference. More specifically, the Sheriff's statement "contained details

---

[84] *Id.*, ¶ 187, PageID.97.
[85] *Id.*, ¶ 196, PageID.98.
[86] *See, e.g., Suarez Corporation v. McGraw*, 202 F.3d 676, 678 (4th Cir. 2000).
[87] *Benningfield v. Houston Police Department*, 157 F.3d 369, 376 (5th Cir. 1998).
[88] *Mattox*, 183 F.3d at 521.
[89] 156 F.3d 673, 676 (6th. Cir 1998).

of the acts perpetrated against her that were so embarrassing she had not even told her husband."[90] While not quite as heinous, a judge's publicly (and falsely) accusing a litigant of the crime of stalking to the press was sufficient to pursue a retaliation claim.[91]

However, these cases are the exception rather than the rule. In *Thaddeus-X*, the Sixth Circuit recognized that there must be an injury to support a First Amendment retaliation claim and "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."[92]

Following this standard, *Mattox* held that the release of a report that was a deliberate effort to discredit an elected politician "was not equivalent to being fired by a governmental employee for expressing protected view" and would not "deter a public figure of ordinary firmness from exercising his or her right to speak."[93] While acting as a Faculty Senate Chair, Plaintiff should qualify as a public figure. *Mattox* also held that the reports disclosing private information about a fire department volunteer, including a traumatic childhood incident and her personal relationships with members of the fire department" was not sufficient adverse action to support her § 1983 claim.[94] Similarly, the Sixth Circuit has affirmed the dismissal of a § 1983 claim based upon a racial insult and asking the plaintiff to step outside because it was not sufficient adverse action to trigger liability.[95]

---

[90] 156 F.3d at 676.
[91] *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997).
[92] *Thaddeus-X*, 175 F.3d at 397.
[93] *Mattox*, 183 F.3d at 522.
[94] 183 F.3d at 522.
[95] *Taylor v. City of Falmouth*, 187 Fed. Appx. 596, 599-601 (6th Cir. 2006).

5.    <u>Plaintiff has not alleged facts sufficient to state a retaliation claim against Dr. Vassar under 42 U.S.C. § 1983.</u>

Although the Amended Complaint is lengthy, there are few factual allegations about allegedly improper conduct by Dr. Vassar. This is significant because state "officials are personally liable for damages under [42 U.S.C. § 1983] only for their own unconstitutional behavior."[96] They are not liable under the doctrine of respondent superior for the actions of other state officials, but are only liable if they "encouraged the specific incident of misconduct or in some other way directly participated in it."[97] Moreover, such liability only applies to unconstitutional conduct by other state officials or employees.[98]

Plaintiff contends that his allegedly protected activity was speaking to the Detroit News after the October 27, 2023 Board Meeting.[99] Therefore, Plaintiff's allegations regarding how Dr. Vassar conducted that meeting or what occurred before that meeting could not temporally show that Dr. Vassar retaliated against Dr. Lipton.

None of the alleged events that occurred after Dr. Lipton's statement to the Detroit News rise to the level of unlawful adverse action. For example, Plaintiff alleges that Dr. Vassar requested a meeting to discuss the Faculty Senate resolution, but then canceled the meeting.[100] Canceling a meeting is not adverse action that would deter a reasonable person from exercising First Amendment rights.

Plaintiff then alleges that alleged supporters of Dr. Vassar, student groups and a faculty

---

[96] *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (cleaned up).
[97] *Id.*
[98] *Id.*
[99] Amended Complaint, ¶¶ 184, 186, PageID.96-97.
[100] *Id.*, ¶¶ 73-75, PageID.78.

organization criticized him, allegedly at the request of Dr. Vassar and Trustee Denno.[101] None of the words that were allegedly spoken or written by these individuals or groups rises to level that would constitute adverse action under *Thaddeus-X*, *Bloch*, *Barrett, Mattox*, *Taylor Suarez*, and *Benningfield*. But, even if it did, the actors were not state employees or officials. As a result, they could not violate the Constitutional rights of the Plaintiff. Finally, Dr. Lipton does not allege a legal or factual basis for Dr. Vassar to be held liable under 42 U.S.C. § 1983 for the speech of private individuals, students, faculty or campus organizations.

Similarly, the decision by Dr. Vassar to attend the December 15, 2023 Board meeting, which was held virtually, in a room with another trustee and students, does not amount to adverse action.[102] The alleged comments made by the students toward Dr. Lipton were not as egregious as a Sheriff's disclosing private details about a rape or a judge accusing a litigant of committing a crime. Even if these comments were as horrific as those statements, they were not made by state officials and cannot constitute adverse action. Once again, Plaintiff does not allege a legal basis for holding Dr. Vassar liable under 42 U.S.C. § 1983 for the alleged statements by MSU students.

Plaintiff does allege that Dr. Vassar spoke at a September 5, 2024 lunch meeting where she allegedly asked Dr. Lipton a question, disagreed with his answer and then explained why Dr. Lipton's conduct was worse.[103] Such a discussion would not deter reasonable persons from exercising their First Amended Rights. Nor would Dr. Vassar's attending the investiture of MSU President Guskiewicz or attending the private reception afterwards.[104]

---

[101] *Id.*, ¶¶ 76-83, PageID.78-79.
[102] *Id.*, ¶¶ 97-104, PageID.82-83.
[103] Amended Complaint, ¶¶ 150, 151, 153, 154, PageID.91-92.
[104] *Id.*, ¶¶ 162-170, PageID.93-95.

Therefore, this Court should find that Count I fails to state a claim on which relief may be granted and dismiss this claim pursuant to Rule 12(b)(6).

### C.    Dr. Vassar is also protected from liability in her personal capacity under the doctrine of qualified immunity.

Dr. Vassar and the other Trustees have been named as Defendants in both their individual and official capacities.[105] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."[106] One defense to liability in a personal-capacity action is the objectively reasonable reliance on existing law.[107] Stated slightly differently, "a state employee . . . is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[108]

"Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established that every reasonable official would have understood that what she was doing violated that right."[109] The Sixth Circuit applies a two part test for determining if qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."[110] Plaintiff cannot meet this burden.

First, Plaintiff has not alleged facts showing that he possessed First Amendment protection when he spoke with the Detroit News after the October 27, 2023 Board Meeting. Dr. Lipton had

---

[105] *Id.*, ¶ 41, PageID.72.
[106] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).
[107] *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985).
[108] *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)
[109] *Hilton v. Mish*, 720 Fed. Appx. 260, 264 (6th Cir. 2018) (cleaned up).
[110] *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)

spoken at the Board Meeting in his capacity as Chair of the MSU Faculty Senate. The Detroit News clearly believed he was communicating with Plaintiff in that capacity after the meeting because of how it titled the article and how it quoted him.[111] There is no plausible basis for concluding that the publication of Dr. Lipton's interview and the publication of his statements did not "owe[] its existence to [Dr. Lipton's] professional responsibilities.'"[112] Accordingly, Plaintiff cannot establish that he had a constitutional right that was violated.

Second, even if he could establish that his statement to the Detroit News was protected by the First Amendment, Plaintiff cannot show that a reasonable government official would have concluded that anything that Dr. Vassar did violated that right. *Thaddeus-X*, *Bloch*, *Barrett*, *Mattox*, *Taylor*, *Suarez* and *Benningfield* establish a very high standard for proving adverse action sufficient to prove a § 1983 claim. Dr. Lipton was promoted, not disciplined after he spoke to the Detroit news. The Circuit Courts of Appeals have found that far more egregious statements, such as making false accusations of criminal conduct against policy officers, do not constitute adverse action.

Therefore, this Court should conclude that Plaintiff cannot meet his burden of rebutting the qualified immunity defense and dismiss the claims against Dr. Vassar.

### D.    This Court should dismiss Count II for failure to state a claim on which relief can be granted because Dr. Vassar is not an official with a municipality.

Count II is entitled "*Monell* Liability, 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution (All Defendants)."[113] This claim is alleged against the Board and the individual

---

[111] *See supra* at 15-16.
[112] 605 F.3d at 348.
[113] Amended Complaint, page 34, PageID.98.

Trustees in their official capacity, but not in their individual capacities.[114] Plaintiff specifically alleges that they are "liable for the constitutional violations alleged herein under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)."[115]

The primary issue before the Supreme Court in *Monell* was "Whether local governmental officials and/or local independent school boards are 'persons' within the meaning of 42 U. S. C. § 1983 when equitable relief in the nature of back pay is sought against them in their official capacities?"[116] After lengthy consideration of precedents and legislative history, the Supreme Court held that "Congress *did* intend **municipalities and other local governmental units** to be included among those persons to whom § 1983 applies."[117] In reaching this conclusion, the Supreme Court expressly found that "Our holding today is, of course, limited to local governmental units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 662 n. 54.

Michigan State University is not a municipality or local governmental unit; it is a "body corporate" of the state of Michigan.[118] Accordingly, *Monell* does not apply to Michigan State University or its Board of Trustees. This alone justifies dismissal for failure to state a claim, under Rule 12(b)(6).

But, even if it does not, the second issue before the Supreme Court in *Monell* was the type

---

[114] Amended Complaint, ¶¶ 198-203, PageID.98-100 (always referring to Trustees "in their official capacities", never in their personal capacities). "Because personal-capacity suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable." *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir. 1988).

[115] Amended Complaint, § 198, PageID.98.

[116] *Monell*, 436 U.S. at 662 (italics in original) (other emphasis added).

[117] 436 U.S. at 690.

[118] Mich. Const. art. VIII, § 5.

of conduct that might make a municipality or local governmental unit liable. *Monell* limited potential liability for local governing bodies to "action that . . . implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[119] At no time does the Amended Complaint allege that any of the alleged misconduct "implemented or executed a policy statement, ordinance, regulation or decision officially adopted or promulgated by" the Board of Trustees.

Therefore, even if Michigan State University were a municipality or local governmental entity, *Monell* would not apply, and dismissal should be granted under Rule 12(b)(6).

**E.    This Court should Count III because it fails to state a claim on which relief can be granted because remedies are not causes of action and Plaintiff is not entitled to the remedies that are requested.**

Count III is entitled injunctive relief. But, injunctive relief is a remedy, not an independent cause of action.[120] Therefore, Count III also does not state an independent claim on which relief may be granted and should be dismissed under Rule 12(b)(6).

Furthermore, this Court does not have the legal authority to grant the first type of injunctive relief requested: the removal of Dr. Vassar from the Board of Trustees of Michigan State University. Nor should it grant the second type of injunctive relief requested, enjoining any further disparagement or retaliation, because there is no alleged ongoing conduct to enjoin and the requested relief is too vague to issue.

Finally, even if none of this were the case, Plaintiff is not entitled to the injunctive relief

---

[119] 436 U.S. at 690 (footnote omitted).
[120] *See, e.g., Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (affirming district court dismissal of plaintiff's claim for injunctive relief because plaintiff "failed to state a claim for any constitutional deprivation under § 1983.").

he requests because this Court should dismiss Counts I and II for the reasons stated above, thereby eliminating the legal authority that sometimes authorizes injunctive relief.

      1.      <u>This Court does not have the legal authority to remove Dr. Vassar from the state office to which she has been elected by the People of the State of Michigan.</u>

Plaintiff first requests that this Court enter an injunction that results in "the recall, resignation, or removal of Vassar and Denno from their positions on the MSU Board of Trustees."[121]

The Trustees of MSU are elected public officials, who hold office for terms of eight years.[122]  The Michigan Governor is authorized to suspend public officials and remove them from office.[123] Michigan state courts can review the decision by Michigan governor to remove a public official from office to determine if it was "an arbitrary exercise of the removal power."[124] But, Michigan courts "will not interfere with the exercise of that power."[125] No Michigan legal authority authorizes a court to supervise the Governor's review of whether a Michigan state official should be removed from office. No legal authority authorizes a Michigan court to remove a Michigan public official from office if the Governor has not decided whether or not to do so.

While injunctive relief is a remedy authorized by 42 U.S.C. § 1983, that statute does not expressly authorize the federal judiciary to remove an elected state public official from office.[126]

---

[121] Amended Complaint, ¶ 211, PageID.100; *see also* Prayer for Relief, PageID.103 (seeking "injunction removing Vassar and Denno from their positions on the MSU Board of Trustees").
[122] Mich. Const. art. VIII, § 5.
[123] Mich. Const. art. V, § 10 (specifically excepting legislative and judicial officials from this power).
[124] *Buback v. Governor*, 380 Mich. 209, 217, 156 N.W.2d 549 (1968).
[125] *Id.*
[126] Amended Complaint, ¶ 212, PageID.101; *see also* Prayer for Relief, PageID.103 (seeking "order enjoining any further disparagement or retaliation for the protected speech of Dr. Lipton by

There are significant separation of powers and federalism issues that would be implicated were Congress to enact a statute authorizing a federal court to grant the requested relief. Furthermore, there would also be a major standing issue facing the Plaintiff. Accordingly, this Court should find that it does not have the legal authority to remove Dr. Vassar from the office that the people of the state of Michigan elected her to hold.

<div style="text-align:center">

2.    <u>This Court should deny Plaintiff's request that it enjoin Dr. Vassar because the requested relief is too vague to be granted under federal law.</u>

</div>

"Plaintiff is also seeking an order enjoining any further disparagement or retaliation for his protected speech by any employee, agent, representative, or Trustee of MSU."[127] This Brief will only address whether Plaintiff has alleged a claim that would allow this Court to so enjoin Dr. Vassar. It should find that he has not.

As a matter of federal procedure, all injunctive relief "must describe in reasonable detail the act or acts restrained or required."[128] Plaintiff does not request relief that meets this specificity requirement. This is not a technical requirement. Notice is an essential aspect of due process.[129] The relief that Plaintiff requests would not allow any enjoined person to determine what they are prohibited from doing. Accordingly, the relief requested is not authorized.[130]

Therefore, this Court should find that Plaintiff is not entitled to this relief even if he has stated a claim on which relief can be granted. Accordingly, it should dismiss Count III of the

---

any . . . trustee of MSU.").

[127] *Id.*, ¶ 211, PageID.100 and Prayer for Relief (seeking "injunction removing Vassar and Denno from their positions on the MSU Board of Trustees"), PageID.103.

[128] Fed. R. Civ. P. 65(d)(1)(C).

[129] *See, e.g., Mullane v. Cent. Hanover Bank*, 339 U.S. 306, 314 (1950).

[130] *See Commissioner v. Wooster Brush Company*, 727 F.2d 566, 576 (6th Cir. 1984).

Amended Complaint.

## CONCLUSION AND RELIEF REQUESTED

This Court should grant this Motion and dismiss the claims against Defendant Dr. Rema Vassar.

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
C. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
Dated: March 12, 2025            tludden@lipsonneilson.com

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(b)(1)**

This brief complies with Local Rule 7.2(b)(1) because it contains  7885  words, excluding the caption, table of content, index of authories, signature block, this certification and the certificate of service. This brief was prepared in Microsoft Office 2016, whose word count feature was used to determine compliance with rule.

<div style="margin-left:50%">

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
C. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
tludden@lipsonneilson.com

</div>

Dated: March 12, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

/s/ C. Thomas Ludden