UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

        Plaintiff,

v.

DENNIS DENNO, in his individual
capacity, and REMA VASSAR, in
her individual and official capacities,

        Defendants.

Case No. 24-1029

Hon. Hala Y. Jarbou

---

## DEFENDANT DENNIS DENNO'S ANSWER TO FIRST AMENDED COMPLAINT, LIMITED RELIANCE UPON AND OBJECTION TO JURY DEMAND, AND AFFIRMATIVE DEFENSES

Defendant, Dennis Denno ("Defendant"), by and through his attorneys, Starr, Butler &
Stoner, PLLC, states as follows for his Answer to Plaintiff's First Amended Complaint ("FAC"):

### INTRODUCTION

1.     Dr. Jack Lipton is the Founding Chair of the Department of Translational
Neuroscience and Associate Dean for Research Analytics in the College of Human Medicine at
Michigan State University ("MSU").

**ANSWER:  In response to Paragraph 1 of Plaintiff's FAC, Defendant admits the allegations
therein.**

2.     Prior to MSU, Dr. Lipton was the Founding Director of the Division of
Neuropharmacology in the Department of Psychiatry at the University of Cincinnati.

**ANSWER:  In response to Paragraph 2 of Plaintiff's FAC, Defendant neither admits nor
denies the allegations contained therein for the reason that Defendant is without knowledge
or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff
to his proofs.**

{00130582.DOCX}

3.      While at the University of Cincinnati, he and his colleagues were awarded a Morris K. Udall Center of Excellence in Parkinson's Disease Research, one of only ten in the country, from the National Institutes of Health ("NIH").

**ANSWER:  In response to Paragraph 3 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

4.      In 2009, Dr. Lipton and three of his University of Cincinnati colleagues were recruited to MSU to establish a neuroscience-focused department, with the Udall Center serving as a marquee program for this high-profile recruitment.

**ANSWER:  In response to Paragraph 4 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

5.      Dr. Lipton founded the Department of Translational Neuroscience in 2012, which is now housed in MSU's Grand Rapids Research Center.

**ANSWER:  In response to Paragraph 5 of Plaintiff's FAC, Defendant—upon information and belief—admits the allegations therein.**

6.      Under Dr. Lipton's leadership, the Department of Translational Neuroscience has been awarded over $100 million in research grants.

**ANSWER:  In response to Paragraph 6 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant does not dispute that Plaintiff has had**

{00130582.DOCX}                                    2

**accomplishments during his tenure at MSU of which Defendant is generally aware.**

7.     A notable grant included within this $100 million is the Michigan Alzheimer's Disease Research Center, a multi-university grant promoting care for individuals and families affected by memory loss and working to resolve racial and ethnic disparities for Alzheimer's Disease and related dementias.

**ANSWER:  In response to Paragraph 7 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant does not dispute that Plaintiff has had accomplishments during his tenure at MSU of which Defendant is generally aware.**

8.     Also of note, Dr. Lipton was awarded a Michigan Sequencing Academic Partnership for Public Health Innovation and Response ("MI-SAPPHIRE") grant at MSU totaling more than $5 million, to enable MSU and health care partners to increase the State of Michigan's ability to manage current and future pathogens and increase pandemic preparedness, with a specific focus on marginalized and medically underserved populations.

**ANSWER:  In response to Paragraph 8 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant does not dispute that Plaintiff has had accomplishments during his tenure at MSU of which Defendant is generally aware.**

9.     This award was a direct result of Dr. Lipton's advocacy for the health and welfare of the MSU community, for which he proposed, spearheaded, developed, and directed MSU's Early Detection COVID-19 program in 2020, pioneering a saliva-based testing protocol that enabled MSU students, staff, and faculty to return to work, learning, and research during the

{00130582.DOCX}                    3

pandemic.

**ANSWER:  In response to Paragraph 9 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant does not dispute that Plaintiff has had accomplishments during his tenure at MSU of which Defendant is generally aware.**

10.     Dr. Lipton is an internationally respected researcher in neurodegenerative disorders and diseases whose work has been cited over 6400 times in scientific literature.

**ANSWER:  In response to Paragraph 10 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

11.     Dr. Lipton was elected to serve as the Chair of MSU's Faculty Senate from August 16, 2023 to August 15, 2024.

**ANSWER: In response to Paragraph 11 of Plaintiff's FAC, Defendant—upon information and belief—admits the allegations therein.**

12.     The Faculty Senate Chair is a liaison to the Board of Trustees ("BOT") for over 3800 faculty members and delivers a formal address to the Board at each public meeting on behalf of the faculty they represent.

**ANSWER: In response to Paragraph 12 of Plaintiff's FAC, Defendant admits the allegations therein.**

13.    On October 20, 2023, MSU Trustee Brianna Scott sent the BOT an open letter alleging ethical violations by MSU BOT Chair Rema Vassar and calling for Vassar's resignation.[1]

**ANSWER: In response to Paragraph 13 of Plaintiff's FAC, Defendant admits the allegations therein.**

14.    On October 27, 2023, a Board of Trustees meeting was held, during which multiple individuals spoke on the question of whether Vassar should resign, including Dr. Lipton in his role as Faculty Senate Chair.[2]

**ANSWER: In response to Paragraph 14 of Plaintiff's FAC, Defendant admits the allegations therein.**

15.    During his address, Dr. Lipton read a passed resolution from the Faculty Senate that requested further investigation into Vassar's actions and called for Vassar's resignation.[3]

**ANSWER: In response to Paragraph 15 of Plaintiff's FAC, Defendant admits the allegations therein.**

16.    Chair Vassar and MSU Trustee Dennis Denno had coordinated a large number of Vassar supporters to be in attendance, which ultimately resulted in an unusual level of disorder and chaos. The meeting and resulting chaos garnered widespread public attention.[4]

**ANSWER: In response to Paragraph 16 of Plaintiff's FAC, Defendant admits only that the meeting garnered widespread public attention. Defendant denies the remaining allegations therein.**

---

[1]  Letter from MSU Trustee Brianna Scott to the MSU Board of Trustees (Oct. 20, 2023), https://www.scribd.com/document/679383676/Letter-from-MSU-trustee-Brianna-Scott.
[2]  Minutes of the Meeting of the Michigan State University Board of Trustees at 14-16 (Oct. 27, 2023), https://trustees.msu.edu/meetings/documents/2023/October%2027%202023%20-%20Accessible.pdf.
[3]  *Id.*
[4]  . Kim Kozlowski, *Failed Vassar ouster leads to emotional MSU board meeting filled with outbursts*, THE DETROIT NEWS, Oct. 27, 2023, https://www.detroitnews.com/story/news/local/michigan/2023/10/27/michigan-state-university-board-meeting-chair-rema-vassar/71341656007/.

17.    After the meeting, Dr. Lipton was approached by reporters for his perspective on the

chaos.  He stated that, in his opinion as a private individual,

> The board meeting yesterday, filled with Chair Vassar supporters, demonstrated
> Trustee Scott's charges of intimidation and bullying in action," [Dr. Lipton] said.
> "The chaos brought and disrespect shown  by her  supporters  could  have  been
> stopped  by a  single statement from Chair Vassar, yet she elected to let the mob
> rule the room.[5]

**ANSWER: In response to Paragraph 17 of Plaintiff's FAC, Defendant denies that Plaintiff**

**made the alleged quoted statement "in his opinion as a private individual." Defendant neither**

**admits nor denies the remaining allegations of Paragraph 17 of Plaintiff's FAC for the**

**reasons that Defendant is without knowledge or information sufficient to form a belief as to**

**the truth thereof and that the cited Detroit News article speaks for itself.**

18.    After Dr. Lipton made these comments to The Detroit News, Vassar and Denno

began a sustained effort of retaliation to discredit his truthful personal statements about the harm

Vassar was causing the MSU community.

**ANSWER: In response to Paragraph 18 of Plaintiff's FAC, Defendant denies the allegations**

**therein.**

19.    Further in retaliation, in an effort to pit campus groups against Dr. Lipton for their

own political agenda, Vassar and Denno falsely accused Dr. Lipton of racism because he used the

word "mob" in his statement.

**ANSWER: In response to Paragraph 19 of Plaintiff's FAC, Defendant denies the allegations**

**therein.**

---

[5] Anne Snabes, *MSU Faculty Senate chair slams board leader Rema Vassar for chaos, outbursts at meeting*, The
Detroit News, Oct. 29, 2023, https://www.detroitnews.com/story/news/local/michigan/2023/10/29/msu-faculty-
senate-chair-slams-trustee-vassar-for-chaos-at-meeting/71375834007/.

20.     Vassar and Denno began encouraging MSU student groups to label Dr. Lipton a racist, publicly attack him in the media, post defamatory letters about him on social media and other public platforms, and file complaints with MSU's internal civil rights office as well as its external accrediting body accusing Dr. Lipton of race discrimination.

**ANSWER: In response to Paragraph 20 of Plaintiff's FAC, Defendant denies the allegations therein.**

21.     Vassar and Denno met with MSU student leaders and group members, advising them on the content of their letters and complaints against Dr. Lipton, and promising to support these students in planned statements they would make during public comments at upcoming meetings of the Board of Trustees.

**ANSWER: In response to Paragraph 21 of Plaintiff's FAC, Defendant admits only that he met with students and offered them general support regarding the students' concerns with Plaintiff. Defendant denies the remaining allegations therein, denies any implication that said actions were in retaliation for constitutionally protected activity, and denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

22.     This support from Vassar and Denno also resulted in student groups requesting that leaders and members of the Black Faculty Staff and Administrators Association make public statements against Dr. Lipton.

**ANSWER: In response to Paragraph 22 of Plaintiff's FAC, Defendant denies the allegations therein.**

23.     Despite witnessing Vassar and Denno's unlawful retaliation during Board meetings, the Board of Trustees and named Board Members did not adequately respond either to support Dr. Lipton or to oppose or restrict Vassar and Denno's targeted attacks.

{00130582.DOCX}                                     7

**ANSWER: In response to Paragraph 23 of Plaintiff's FAC, Defendant denies the allegations therein, including the implicitly assumed allegation that Vassar and Denno engaged "in unlawful retaliation during Board meetings."**

24.    On December 15, 2023, Dr. Lipton apologized for his use of the word "mob" and acknowledged any unintentional racial interpretations of the word, but Vassar and Denno's harassment and incitement of accusations of racism against him continued.[6]

**ANSWER: In response to Paragraph 24 of Plaintiff's FAC, Defendant admits only that Plaintiff purported to extend an apology but neither admits nor denies whether Dr. Lipton's statement on December 15, 2023 in fact constituted a genuine apology. Defendant denies the remaining allegations therein.**

25.    Vassar and Denno had a personal interest in attacking Dr. Lipton, as he continued to call for accountability in Vassar's violations of BOT ethical guidelines.

**ANSWER: In response to Paragraph 25 of Plaintiff's FAC, Defendant denies the allegations therein.**

26.    As a result of Vassar and Denno's campaign of retaliation against Dr. Lipton for his truthful speech, as well as the Board of Trustees and its individual Board Members' implicit approval of the unlawful retaliation, Dr. Lipton has suffered irreparable damage to his reputation and career and has been deterred from engaging in subsequent protected speech in violation of his rights under the First Amendment to the United States Constitution.

**ANSWER: In response to Paragraph 26 of Plaintiff's FAC, Defendant denies the allegations therein.**

---

[6] Owen McCarthy and Theo Scheer, *Black student groups petition to retain MSU trustees following misconduct finding, say report is inaccurate*, THE STATE NEWS, Mar. 3, 2024, https://statenews.com/article/2024/03/black-student-groups-petition-to-retain-msu-board-chair-vassar-and-trustee-denno-following-report-s-misconduct-    findings-say-report-has-inaccuracies.

## JURISDICTION AND VENUE

27.    This Court has original jurisdiction over Plaintiff's federal and Constitutional claims under 28 U.S.C. §§ 1331 and 1361.

**ANSWER: In response to Paragraph 27 of Plaintiff's FAC, Defendant denies the allegations therein for the reasons set forth in his affirmative defenses and his previously filed motion to dismiss. *See* ECF No. 35.**

28.    This Court has the authority to grant declaratory and injunctive relief and to compel or set aside agency action to address duties arising under the Constitution, laws, or treaties of the United States. 42 U.S.C. § 1983, 28 U.S.C. § 2201 and 5 U.S.C. §§ 702, 704, and 706.

**ANSWER: In response to Paragraph 28 of Plaintiff's FAC, Defendant admits that this Court generally has authority to grant declaratory and injunctive relief and to compel or set aside agency action to address duties arising under the Constitution, laws, or treaties of the United States; however, Defendant denies that this Court has the authority to grant the declaratory and injunctive relief requested by Plaintiff for the reasons set forth in Defendant's previously filed motion to dismiss. *See* ECF No. 35. Further, all claims seeking declaratory and injunctive relief against Defendant have been dismissed. *See* ECF No. 70.**

29.    Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in and around East Lansing, Michigan.

**ANSWER: In response to Paragraph 29 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that said allegations constitute conclusions of law and therefore fail to conform to the requirements of Fed. R. Civ. P. 8. Answering further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever. In further response, Defendant does not contest**

{00130582.DOCX}                                    9

venue based on the manner in which Plaintiff's lawsuit is currently pled.

## PARTIES

30.     Plaintiff Jack Lipton ("Dr. Lipton") is a resident of Kent County, State of Michigan, and at all relevant times was an employee of Defendant Michigan State University.

**ANSWER:  In response to Paragraph 30 of Plaintiff's FAC, Defendant neither admits nor denies these allegations for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

31.     Michigan State University ("MSU") was at all relevant times and continues to be a public educational institution in East Lansing, Ingham County, Michigan, organized and existing under the laws of the State of Michigan.

**ANSWER: In response to Paragraph 31 of Plaintiff's FAC, Defendant admits the allegations therein.**

32.     Defendant Michigan State University Board of Trustees ("Board of Trustees" or "BOT") is the governing body of MSU.

**ANSWER: In response to Paragraph 32 of Plaintiff's FAC, Defendant admits the allegations therein.**

33.     The Board of Trustees is a creation of the Michigan Constitution, and its members are appointed by the governor or elected into office. Mich. Const. art. 8, § 5.

**ANSWER: In response to Paragraph 33 of Plaintiff's FAC, Defendant admits the allegations therein.**

34.     The Board of Trustees has the power of general supervision over the institution.[7]

---

[7] Michigan State University Board of Trustees Bylaws, Article 1, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.

**ANSWER:  In response to Paragraph 34 of Plaintiff's FAC, Defendant admits the allegations therein.**

35.      The Board of Trustees exercises final authority in the government of MSU.[8]

**ANSWER:  In response to Paragraph 35 of Plaintiff's FAC, Defendant admits the allegations therein.**

36.      As provided in the Board of Trustees Bylaws, "[t]he board, the administration, and the faculty carry out their respective responsibilities not as isolated entities, but as major and primary constituents of a total University organization and structure which remain mutually interdependent and must be supportive of each other's purposes, functions, and obligations."[9]

**ANSWER:  In response to Paragraph 36 of Plaintiff's FAC, Defendant admits the allegations therein.**

37.      The Bylaws require the Board of Trustees to protect faculty in the exercise of the rights of academic freedom, which includes "the unfettered pursuit and transmission of truth by the faculty who serve as the guardians, interpreters, and transmitters of a great intellectual heritage."[10]

**ANSWER:  In response to Paragraph 37 of Plaintiff's FAC, Defendant admits the allegations therein.**

38.      The Bylaws further provide that "any restraints on the freedom of expression at the University must be limited to measures to protect such free inquiry and to ensure that they are consistent with the preservation of an organized society in which peaceful, democratic means for changes in the social structure are readily available."[11]

---

[8] Michigan State University Board of Trustees Bylaws, Preamble, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.

[9] Michigan State University Board of Trustees Bylaws, Article 8, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.
[10] *Id.*
[11] Michigan State University Board of Trustees Bylaws, Preamble, https://trustees.msu.edu/bylaws-ordinances-

**ANSWER: In response to Paragraph 38 of Plaintiff's FAC, Defendant admits the allegations therein.**

39.    The chair and/or vice chair may be removed by vote of at least six members of the board.[12]

**ANSWER: In response to Paragraph 39 of Plaintiff's FAC, Defendant admits the allegations therein.**

40.    At all relevant times, Defendants Dianne Byrum, Dennis Denno, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna T. Scott, Kelly Tebay, and Rema Vassar ("the named Board Members") were and continue to be the individual members of the Board of Trustees.

**ANSWER: In response to Paragraph 40 of Plaintiff's FAC, Defendant neither admits nor denies the unduly vague allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof due to the FAC's ambiguous use of the phrase "[a]t all relevant times" and therefore leaves Plaintiff to his proofs. Answering further, Defendant admits that the persons identified in Paragraph 40 of Plaintiff's FAC currently serve or previously served as members of the BOT.**

41.    The named Board Members are being sued both in their individual capacities and in their official capacities as members of the Board of Trustees.

**ANSWER: In response to Paragraph 41 of Plaintiff's FAC, Defendant denies the allegations therein. Responding further, and with respect to claims asserted against Defendant only, only Plaintiff's claim against Mr. Denno in his individual capacity remains pending. *See* ECF No. 70, PageID.469.**

---

policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.

[12] Michigan State University Board of Trustees Bylaws, Article 4, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.

42.    Pursuant to the Bylaws, "[t]he authority of the Trustees is conferred upon them as a board, and they can bind the corporation and the University only by acting together as a board.  No individual member shall commit the board to any policy, declaration, or action without prior approval of the board."[13]

**ANSWER: In response to Paragraph 42 of Plaintiff's FAC, Defendant admits the allegations therein.**

## APPLICABLE LAW AND POLICY

43.    The First Amendment to the United States Constitution provides that Congress shall make no law "abridging the freedom of speech." U.S. Const. amend. I.

**ANSWER:  In response to Paragraph 43 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the First Amendment to the United States Constitution speaks for itself.**

44.    In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the United States Supreme Court held that students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

**ANSWER:  In response to Paragraph 44 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself.**

45.    In *Healy v. James*, 408 U.S. 169 (1972), the Supreme Court held that the First Amendment applies with the same force at public universities as at other educational institutions.

**ANSWER:  In response to Paragraph 45 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself.**

---

[13] Michigan State University Board of Trustees Bylaws, Article 13, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf.

46.    First Amendment retaliation claims apply to public officials speaking as private citizens on matters of public concern. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017); *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

**ANSWER:  In response to Paragraph 46 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself and includes a legal conclusion that Defendant is not required to answer.**

47.    In *Kentucky v. Graham*, the Supreme Court held that personal-capacity suits seek to impose personal liability upon a government official for actions they take under color of state law. Official- capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which [a government official] is an agent." 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978).

**ANSWER:  In response to Paragraph 47 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself.**

48.    To establish municipal liability under section 1983, a plaintiff must establish that (1) they have suffered a deprivation of a constitutionally protected interest and (2) that the deprivation was caused by an official policy, custom, or usage of the municipality. *Monell*, 436 U.S. at 694.

**ANSWER:  In response to Paragraph 48 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself and includes a legal conclusion that Defendant is not required to answer. To the extent that Plaintiff contends that he can "establish municipal liability under section 1983" against Defendant, any such allegation is denied as untrue because said claim was dismissed by the trial court. *See* ECF No. 70, PageID.483 at n3.**

## FACTUAL ALLEGATIONS

*Dr. Lipton's Academic Background and Credentials*

49.    Dr. Lipton served as the Division Director for the Division of Translational Science and Molecular Medicine from 2009-2012 and was then appointed as the Founding Chair of the Department of Translational Neuroscience when it was established at MSU in 2012 and maintains that position presently.

**ANSWER: In response to Paragraph 49 of Plaintiff's FAC, Defendant—upon information and belief—admits the allegations therein.**

50.    Dr. Lipton recently took on the additional role as the Associate Dean of Research Analytics in the College of Human Medicine at MSU in May 2024.

**ANSWER: In response to Paragraph 50 of Plaintiff's FAC, Defendant admits the allegations therein.**

51.    During Dr. Lipton's tenure at MSU, he founded the Department of Translational Neuroscience, oversaw a massive growth in nationally competitive research awards in neuroscience-related biomedical research at MSU, developed and directed the COVID-19 testing program at MSU running over 700,000 tests, and was at the forefront in advocating for national university preparedness for future biomedical disasters by utilizing the resources and intellectual assets of biomedical research units.

**ANSWER: In response to Paragraph 51 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant does not dispute that Plaintiff has had accomplishments during his tenure at MSU of which Defendant is generally aware.**

{00130582.DOCX}                    15

52.    Dr. Lipton is a nationally recognized neuroscientist whose research has been cited by other scientists over 6400 times, and who serves as the president of a national society of neuroscience leaders, the American Society of Medical School Neuroscience Department Chairs.

**ANSWER: In response to Paragraph 52 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

53.    Dr. Lipton also served as the MSU Faculty Senate Chair, an elected position representing MSU's approximately 3800 faculty members, from August 16, 2023, through August 15, 2024.

**ANSWER: In response to Paragraph 53 of Plaintiff's FAC, Defendant admits the allegations therein.**

54.    On August 16, 2024, Dr. Lipton began serving as the Faculty Senate Vice-Chair.

**ANSWER: In response to Paragraph 54 of Plaintiff's FAC, Defendant admits the allegations therein.**

***Ethical and Conduct Allegations against MSU Board of Trustees Chair Rema Vassar***

55.    On October 20, 2023, Trustee Brianna Scott issued an open letter to the Board of Trustees detailing numerous alleged ethical violations by Vassar, ultimately calling for the resignation or removal of Vassar from the Board.[14]

**ANSWER: In response to Paragraph 55 of Plaintiff's FAC, Defendant admits the allegations therein.**

56.    Scott's allegations against Vassar included the following:[15]

---

[14] *Supra* note 1.
[15] *Id.*

a.    Acting outside the scope of her authority as a Board Member and Board Chair;

b.    Inappropriately accepting benefits from members of the MSU community in violation of the BOT Code of Ethics and Conduct;

c.    Bullying and threatening former Interim President Theresa Woodruff; and, most tellingly,

d.    Threatening to falsely label BOT members as "racist" if they did not side with Vassar on a Bylaws amendment question.[16]

**ANSWER: In response to Paragraph 56 of Plaintiff's FAC, including all subparts, Defendant neither admits nor denies the allegations contained therein for the reason that the cited October 20, 2023 letter speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the plain language of the cited October 20, 2023 letter, Defendant denies said allegations.**

57.    On or around October 26, 2023, due to the concerning nature of Scott's allegations and the potential impact of Vassar's alleged actions on MSU students and the university community, the Faculty Senate voted in favor of calling for the resignation of Vassar from the BOT, in favor of filing a complaint with the Higher Learning Commission ("HLC") to investigate violations of accreditation, and in favor of making a separate request to the HLC for professional development training for the members of the MSU Board of Trustees.[17]

---

[16] MSU Trustee Renee Knake Jefferson confirmed and corroborated Scott's allegations on this when she addressed the board in her October 27, 2023 comments. Recording of the Meeting of the Michigan State University Board of Trustees (Oct. 27, 2023), https://trustees.msu.edu/meetings/documents/2023/msu-bot-audio-2023-10-27.mp3 at 03:27:05.

[17] Resolution to Call for Removal of Board of Trustees Chairperson, MSU Faculty Senate (Oct. 26, 2023), https://acadgov.msu.edu/facultysenate/resolutions.

{00130582.DOCX}    17

**ANSWER: In response to Paragraph 57 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited October 26, 2023 MSU Faculty Senate Resolution speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the plain language of the cited October 26, 2023 MSU Faculty Senate Resolution, Defendant denies said allegations.**

58.     Following that Faculty Senate resolution, the Faculty Senate filed a complaint against Vassar with the HLC, signed by Dr. Lipton on behalf of the Faculty Senate, and based specifically on several allegations detailed in Scott's letter.[18]

**ANSWER: In response to Paragraph 58 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

59.     The Faculty Senate's HLC Complaint cited the following incidents as violations of board conduct as laid out in the rules for university accreditation: 1) Vassar, as the chair of the MSU Board of Trustees, appearing in a magazine advertisement endorsing Spartan Wealth Management—a private business led by a former MSU Trustee; 2) that Vassar accepted items of value by traveling to a February 4, 2023, MSU basketball game at Madison Square Garden in New York on a private jet owned by an MSU donor and by sitting in court-side seats next to the donor; and 3) that Vassar, "without the knowledge or participation of the interim president," met "with Lansing officials to pitch moving university colleges and students to a Lansing site" rather than the East Lansing campus, usurping presidential authority and overstepping the Board's oversight

---

[18] Sarah Atwood, *Accreditor agrees to review MSU after complaint about codes of conduct*, LANSING STATE JOURNAL (Nov. 21, 2023), https://www.lansingstatejournal.com/story/news/local/campus/2023/11/21/michigan-state-accreditation-higher-learning-commission-rema-vassar/71671067007/.

role.[19]

**ANSWER: In response to Paragraph 59 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

60.    These incidents violated either the Board's Code of Ethics and/or HLC criteria for accreditation.

**ANSWER: In response to Paragraph 60 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

61.    Following the Faculty Senate's call for Vassar's resignation, a meeting of the MSU Board of Trustees was held on October 27, 2023.

**ANSWER: In response to Paragraph 61 of Plaintiff's FAC, Defendant admits the allegations therein.**

62.    At that meeting, a large contingent of Vassar's supporters was present—made up primarily of Michigan residents not affiliated with MSU, including Vassar's spouse and a number of her former sorority sisters, along with some students—and their actions caused the board meeting to devolve into chaos.

**ANSWER: In response to Paragraph 62 of Plaintiff's FAC, Defendant denies that the board meeting devolved into chaos. Defendant neither admits nor denies the remaining allegations contained therein for the reason that Defendant is without knowledge or information**

---

[19] *Id.*

sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Responding further, Defendant does not dispute that the attendees at the meeting included persons who spoke in favor of Vassar, persons who had affiliation with Vassar, and Vassar's spouse.

63.     When any meeting attendee spoke in support of holding Vassar accountable for her actions as outlined in Scott's letter, Vassar supporters interrupted and jeered them and attempted to prevent them from completing their statements.

**ANSWER: In response to Paragraph 63 of Plaintiff's FAC, Defendant denies the allegations therein.**

64.     According to the Bylaws, "Those wishing to address the board must submit a Public Speaker Request Form to the secretary in advance of the posted deadline for doing so."[20]

**ANSWER:  In response to Paragraph 64 of Plaintiff's FAC, Defendant admits that a portion of the Bylaws include the quoted text but denies that Plaintiff's selective, piecemeal quotation of the Bylaws accurately quotes the full text of the cited provision, which instead states, "[m]eetings of the board shall be open to the public as provided by law. A portion of the board's regular meeting is reserved for persons who wish to address the board. Those wishing to address the board must submit a Public Speaker Request Form to the secretary in advance of the posted deadline for doing so."**

65.     During the meeting's public participation phase, Vassar's spouse, Lucius Vassar, attempted to formally address the BOT without registering as a public speaker 48 hours in advance of the meeting, as required by the rules.[21]

---

[20]  Michigan State University Board of Trustees Bylaws, Article 2, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3 24.pdf
[21] *Supra* note 9 at 2:22:55.

**ANSWER: In response to Paragraph 65 of Plaintiff's FAC, Defendant—upon information and belief—admits the allegations therein.**

66.      After the Board Secretary noted this breach of protocol, Vassar supporters in the crowd made their own motion and voted amongst themselves to allow Lucius Vassar to speak.

**ANSWER: In response to Paragraph 66 of Plaintiff's FAC, Defendant admits only that attendees at the meeting made their own motion and voted amongst themselves to allow Lucius Vassar to speak. Defendant neither admits nor denies the allegations regarding whether these persons were "Vassar supporters" for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Defendant denies that the "Board Secretary noted [a] breach of protocol" but avers the Board Secretary attempted to end public discussion before acquiescing. Defendant denies any allegations inconsistent with the foregoing answer.**

67.      The Board Secretary, who reports directly to Vassar, allowed Lucius Vassar to speak based on this vote of Vassar supporters, in clear violation of BOT meeting rules and the Bylaws.

**ANSWER: In response to Paragraph 67 of Plaintiff's FAC, Defendant admits only that the Board Secretary allowed Lucius Vassar to speak at the meeting in violation of BOT meeting rules and the Bylaws. Defendant neither admits nor denies the unduly vague allegations that the Board Secretary reports directly to Vassar. Defendant denies any implicit allegation that the Board Secretary runs Board of Trustee meetings.**

68.      As the Chair of the Board of Trustees, Vassar neither intervened to call her supporters to order—not even when at least one attendee was escorted out of the meeting by police officers— nor did she uphold the rules of order governing Board of Trustees meetings.

**ANSWER: In response to Paragraph 68 of Plaintiff's FAC, Defendant denies that Vassar, as then Chair of the Board of Trustees, presided over Board meetings, and thus, denies that Vassar failed to uphold the rules of order governing Board of Trustees meetings. Defendant neither admits nor denies the remaining unduly vague allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

69.    During the BOT meeting, Trustee Renee Knake Jefferson corroborated Scott's allegation that Chair Vassar threatened to label her opponents as racist:

> And then on the amendment to the Chair selection process. So, the recently adopted amendment that changes the Chair selection process is a reform that the Board has been considering since at least 2019. And Chair Vassar stated during the work session that, when we discussed it, that she would publicly call those of us supporting that change as racist, and she followed through on that.[22]

**ANSWER: In response to Paragraph 69 of Plaintiff's FAC, Defendant admits only that Trustee Renee Knake Jefferson made the quoted statement. Defendant denies the remaining allegations therein.**

70.    Following the board meeting, a reporter asked Dr. Lipton for his perspective on how Scott's allegations of bullying and misconduct, along with the Faculty Senate's votes to mitigate any damage to the university community as a result of Vassar's actions, had been addressed.

**ANSWER: In response to Paragraph 70 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

---

[22] *Supra* note 9.

71.    In response to the reporter's request, Dr. Lipton noted that he would speak as a private individual and not on behalf of the Faculty Senate, then made the following statement to The Detroit News, which was published in an article on October 29, 2023: "The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action. The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room."[23]

**ANSWER: In response to Paragraph 71 of Plaintiff's FAC, to the extent Plaintiff alleges that, "[i]n response to the reporter's request, Dr. Lipton noted that he would speak as a private individual and not on behalf of the Faculty Senate," Defendant neither admits nor denies said allegations for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, Defendant neither admits nor denies the remaining allegations contained in Paragraph 71 of Plaintiff's FAC for the reason that the cited Detroit News article speaks for itself.**

72.    Dr. Lipton's use of "mob rule" concerned the public attendees who had usurped the authority of the BOT by proposing and passing a motion—in violation of meeting rules—and whose motion had then been allowed to stand as legitimate by and to the benefit of Vassar.

**ANSWER: In response to Paragraph 72 of Plaintiff's FAC, Defendant—upon information and belief—denies the allegations therein.**

73.    On or around October 27, 2023, Vassar requested a meeting with Dr. Lipton to discuss the Faculty Senate resolution. Dr. Lipton responded on October 30, 2023, agreeing to meet.

---

[23] *Supra* note 4.

**ANSWER:  In response to Paragraph 73 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

*MSU Board of Trustee Chair Vassar and Member Dennis Denno Begin a Sustained Campaign of Retaliation against Dr. Lipton*

74.     On or around October 31, 2023, Vassar amended her meeting request via email to include the following: "I would also like to address my concern regarding your depiction of our Black students."

**ANSWER:  In response to Paragraph 74 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

75.     When Dr. Lipton re-confirmed his agreement to meet and requested a time and date for the meeting, Vassar retracted her offer to meet through a message from the Board Secretary.

**ANSWER:  In response to Paragraph 75 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

76.     In parallel, Vassar's supporters began to accuse Dr. Lipton of using racially charged language and exhibiting racial bias in his statement to The Detroit News, in particular citing to his use of the word "mob."

**ANSWER:  In response to Paragraph 76 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge**

or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.

77.    On or around November 1, 2023, Vassar and Denno met with MSU students and encouraged them to attack Dr. Lipton and file false complaints of race discrimination against him.

**ANSWER: In response to Paragraph 77 of Plaintiff's FAC, Defendant denies the allegations therein.**

78.    On November 2, 2023, the National Association for the Advancement of Colored People ("NAACP") Michigan State Conference Youth & College Division released a statement accusing Dr. Lipton of "racial terrorism."

**ANSWER:  In response to Paragraph 78 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that the alleged statement quoted in Paragraph 78 and/or actions of the NAACP Michigan State Conference Youth & College Division are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

79.    On November 4, 2023, the MSU Black Students Alliance ("BSA") issued a similar statement, accusing Dr. Lipton of "targeting a specific racial group," of engaging in "a direct attack on Black students' character," and of "[e]luding [sic] that black students intend to cause violence."

**ANSWER: In response to Paragraph 79 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff**

**to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that the alleged statements quoted in Paragraph 79 and/or actions of the BSA are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

80.    On November 14, 2023, the MSU Black Faculty, Staff and Administrators Association ("BFSAA") released a similar public statement.

**ANSWER:  In response to Paragraph 80 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that the unquoted "public statement" referenced in Paragraph 80 and/or actions of the BFSAA are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

81.    On November 20, 2023, the organization Diverse: Issues In Higher Education, on their nationally known website, published an op-ed authored by Vassar associate Clyde Barnett III, who accused Dr. Lipton of using the term "mob" in an effort to traumatize and silence students who are Black and Palestinian.

**ANSWER: In response to Paragraph 81 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff**

to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that "op-ed" referenced in Paragraph 81 and/or actions of *Diverse: Issues In Higher Education* and/or Mr. Barnett are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.

82.     Upon information and belief, student Miselo Chola also filed a complaint with MSU's Office of Institutional Equity ("OIE") accusing Dr. Lipton of race discrimination.

ANSWER:  In response to Paragraph 82 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent that Plaintiff implicitly alleges Chola filed a complaint with OIE due to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.

83.     Upon information and belief, Chola filed the complaint at Vassar's behest.

ANSWER:  In response to Paragraph 83 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.

84.    On December 14, 2023, the MSU Board of Trustees held a private virtual lunch meeting with faculty liaisons, including Dr. Lipton, board members, and top MSU administrators.

**ANSWER: In response to Paragraph 84 of Plaintiff's FAC, Defendant admits the allegations therein.**

85.    All of the named Board Members were in attendance at the December 14, 2023 meeting.

**ANSWER:  In response to Paragraph 85 of Plaintiff's FAC, Defendant admits the allegations therein.**

86.    During that meeting, Trustee Dennis Denno read a prepared statement in which he and Vassar accused Dr. Lipton of "criminalizing students."

**ANSWER: In response to Paragraph 86 of Plaintiff's FAC, Defendant admits that he asserted that Dr. Lipton was "criminalizing students" but does not recall whether the statement was a prepared statement; thus, Defendant neither admits nor denies the allegations regarding the existence of a prepared statement for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Defendant denies that his statement was made in conjunction with Dr. Vassar. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff, and therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

87.    Denno characterized Dr. Lipton's use of the word "mob" as "racism and violent language."

**ANSWER: In response to Paragraph 87 of Plaintiff's FAC, Defendant does not recall using the alleged words quoted; thus, Defendant neither admits nor denies the allegations for the reason that Defendant is without knowledge or information sufficient to form a belief as to**

the truth thereof and therefore leaves Plaintiff to his proofs.

88.      Denno—who, as a member of the Board of Trustees, approves promotion and

tenure for faculty at MSU—also suggested that other members of the Faculty Senate were not

performing their duties as both senators and academics at the university:

> [Dr. Lipton] criminalized our African American, Arab American,
> and Muslim American students. And I'm really disappointed in the
> so-called leaders of the Faculty Senate for not speaking out against
> him. And that's your job. And if you're going to not speak out
> against racism and violent language, you're not very good
> academics.

**ANSWER: In response to Paragraph 88 of Plaintiff's FAC, Defendant admits the allegations**

**therein. Answering yet further, Defendant denies any action or inaction on his part that**

**could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any**

**relief, including but not limited to damages, whatsoever.**

89.      None of the named Board Members or MSU administrators interjected to provide

support to Dr. Lipton during this meeting.

**ANSWER: In response to Paragraph 89 of Plaintiff's FAC, Defendant admits the allegations**

**therein.**

90.      Two hours later, the Instagram account of the MSU Hurriya Coalition, which

defines itself as "a collective of 20+ organizations fighting for freedom & justice in Palestine at

MSU," posted an image of a complaint filed with the HLC against Dr. Lipton.[24]

**ANSWER: In response to Paragraph 90 of Plaintiff's FAC, Defendant neither admits nor**

**denies the allegations contained therein for the reason that Defendant is without knowledge**

**or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff**

**to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that the alleged**

---

[24] @hurriyamsu, INSTAGRAM (Dec. 14, 2023)
https://www.instagram.com/p/C02CG2VgPjO/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA==

actions in Paragraph 90 are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.

91.    The complaint accused Dr. Lipton of "criminalizing" students—the very same language Denno had used at the lunch meeting two hours earlier.

**ANSWER: In response to Paragraph 91 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent that Plaintiff implicitly alleges that the alleged actions in Paragraphs 90-91 are attributable to any action or inaction of Defendant, Defendant denies any such implicit allegations. Answering yet further, Defendant denies any action or inaction on his part that could give rise to liability to Plaintiff and, therefore, denies that Plaintiff is entitled to any relief, including but not limited to damages, whatsoever.**

92.    Further, Denno encouraged Arab-American student organizations to attack Dr. Lipton in the media and in complaints to the university.

**ANSWER: In response to Paragraph 92 of Plaintiff's FAC, Defendant denies the allegations therein.**

93.    Denno told students, "The other thing you can do to help us [referring to himself and Chair Vassar], at least for me, is attack Jack Lipton, the Chair of the Faculty Senate. I mean this guy called you a mob . . . call him out, call him a racist."[25]

---

[25] MILLER & CHEVALIER, MICHIGAN STATE UNIVERSITY INDEPENDENT INVESTIGATION REPORT ["MILLER & CHEVALIER REPORT"] at 45 (Feb. 28, 2024), https://msu.edu/-/media/assets/msu/docs/issues-statements/msu-independent-investigation-report--feb-28-2024--redactedupdated-links.pdf?rev=6e36cfca79374c28b9d81e4baacc0706&hash=483929D1FD6EC34599D00C3B77E870A2.
[26] [Embedded image not inserted into answer to FAC.]

**ANSWER: In response to Paragraph 93 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant does not recall making such statements and thus is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

94.    Denno instructed one Palestinian student activist via text, seeking advice on how to frame their statement to the press: "As an Arab American, Palestinian American, u [sic] feel threatened by Jack Lipton's racist comment calling u [sic] a part of a mob. He obviously has an anger management issue and the Faculty Senate should censure him."[26]

**ANSWER: In response to Paragraph 94 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant does not recall sending such a text message and thus is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

95.    According to the university's third-party investigation into the content of Scott's allegations and the ensuing events, the Miller & Chevalier Report found:

    a.    "[Student] Interviewee 10 shared text messages reflecting that on November 14, 2023, Trustee Denno provided them with the email address of The Detroit News reporter that published Dr. Lipton' statement. Interviewee 10 asked Trustee Denno about what they should say to the

reporter, to which Trustee Denno replied 'Lipton=racist;'"[27] and

b.    Interviewee 10 told Miller & Chevalier that Chair Vassar and Trustee Denno pushed students to file the HLC report against Dr. Lipton.[28]

**ANSWER: In response to Paragraph 95 of Plaintiff's FAC, including all subparts, Defendant neither admits nor denies the allegations contained therein for the reason that the cited Miller & Chevalier Report speaks for itself and Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

96.    Rather than working to ensure that the upcoming December 15, 2023, Board of Trustees meeting did not escalate as it did on October 27, upon information and belief, Vassar and Denno instead organized students to accuse Dr. Lipton of a range of allegations during the public comment portion of the meeting—from "criminalizing students" to secretly interfering with the presidential search.

**ANSWER: In response to Paragraph 96 of Plaintiff's FAC, Defendant denies the allegations therein.**

97.    The December 15 Board of Trustees meeting was held virtually because of the security concerns that arose due to the Board's failure to properly manage the October 27 meeting.

**ANSWER: In response to Paragraph 97 of Plaintiff's FAC, Defendant admits only that the December 15, 2023 Board of Trustees meeting was held virtually. Defendant denies the remaining allegations therein.**

---

[27] MILLER & CHEVALIER REPORT, supra note 17 at 46.
[28] *Id.*

98.     During the virtual December 15 meeting, press images clearly show Vassar and Denno attending the meeting together in the same room with multiple student members of BSA, MSU NAACP, and the MSU Hurriya Coalition, many of whom disparaged Dr. Lipton during the public comments portion of the meeting.[29]

**ANSWER: In response to Paragraph 98 of Plaintiff's FAC, Defendant neither admits nor denies the allegations regarding the specific groups that attended the meeting for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Defendant denies that the individuals with whom he was with "disparaged" Plaintiff. Responding further, Defendant avers that he sat with various students and persons, including Arab Americans, members of POSSE, and the Sister Survivors.**

99.     Vassar and Denno's meeting with the students took place on-campus.

**ANSWER: In response to Paragraph 99 of Plaintiff's FAC, Defendant admits the allegations therein.**

100.    Upon information and belief, the students were planning to attend the meeting in person, but at the last minute, Vassar and Denno invited them to participate virtually in the same room with them.

**ANSWER: In response to Paragraph 100 of Plaintiff's FAC, Defendant denies the allegations therein.**

---

[29] Owen McCarthy, *Embattled MSU board members 'exploited racial identities,' manipulated students to smear colleagues, Palestinian student activist says,* THE STATE NEWS (Mar. 3, 2024), https://statenews.com/article/2024/03/embattled-msu-board-members-exploited-racial-identities-manipulated-students-to-smear-colleagues-palestinian-student-activist-says; Owen McCarthy, *Recordings, texts show how student lost trust in embattled MSU trustees*, THE STATE NEWS Apr. 16, 2024), https://statenews.com/article/2024/04/recordings-texts-show-how-student-lost-trust-in-embattled-msu-trustees.

101.    Vassar and Denno publicly identified themselves as Trustees before, during, and after the meeting.

**ANSWER: In response to Paragraph 101 of Plaintiff's FAC, Defendant neither admits nor denies the unduly vague and ambiguous allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Responding further, Defendant avers that he was announced as a Trustee member during the meeting and was acting as a Trustee at all times during the meeting.**

102.    The students and individuals who spoke out against Dr. Lipton in the meeting all used the same or similar language to refer to Dr. Lipton as a "racist," as causing the "criminalization" of students, and as creating a hostile and unsafe environment for learning at MSU.

**ANSWER: In response to Paragraph 102 of Plaintiff's FAC, Defendant denies the allegations therein. Responding further, Defendant avers that some of the student and individuals who spoke out against Plaintiff used language similar—but not identical—to the language alleged in Paragraph 102.**

103.    The audio recording of the December 15, 2023 meeting includes audible background noises and shouts from students in the background when Vassar and Denno each spoke.[30]

**ANSWER: In response to Paragraph 103 of Plaintiff's FAC, Defendant—upon information and belief—denies the allegations therein.**

---

[30]    Audio recording: MSU Board of Trustees December 15, 2023 meeting, https://trustees.msu.edu/meetings/documents/2023/MSU-BOT-audio-2023-12-15.mp3

104.    Vassar and Denno's decision to participate in the virtual meeting in person with students who had organized to disparage Dr. Lipton provides clear evidence of their continued support and encouragement of the students' harassment of Dr. Lipton in their official capacity as Trustees of the MSU Board.

**ANSWER: In response to Paragraph 104 of Plaintiff's FAC, Defendant denies the allegations therein.**

105.    All of the named Board Members virtually attended the December 15, 2023 meeting.

**ANSWER:  In  response  to  Paragraph  105  of  Plaintiff's  FAC,  Defendant  admits  the allegations therein.**

106.    None of the named Board Members or MSU administrators interjected to provide support to Dr. Lipton during this meeting.

**ANSWER: In response to Paragraph 106 of Plaintiff's FAC, Defendant denies the allegations therein.**

107.    This coordinated retaliation further harmed Dr. Lipton's professional reputation and access to opportunities both within and outside of MSU.

**ANSWER: In response to Paragraph 107 of Plaintiff's FAC, Defendant denies the allegations therein.**

108.    Following Vassar and Denno's instructions that students should file complaints and send letters against Dr. Lipton, and Denno's implication that the Faculty Senate members were not quality academics, some MSU faculty members began to distance themselves from Dr. Lipton.

**ANSWER: In response to Paragraph 108 of Plaintiff's FAC, Defendant—upon information and belief—denies the allegations therein.**

109.    At a Faculty Senate meeting on November 21, 2023, at-large Faculty Senate member d'Ann de Simone, said, in reference to Dr. Lipton's October 29 statement to The Detroit News,

> This statement is in response to students, senators, and colleagues who have voiced concern over language used to describe the October 27th meeting of the Board of Trustees and the remarks that were mentioned earlier today. I would like to say on behalf of my colleagues that comments at academic governance meetings and in the press represent an individual and do not necessarily represent the views of the MSU Faculty Senate.

**ANSWER: In response to Paragraph 109 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

110.    The Faculty Senate meetings in which members spoke out against Dr. Lipton were recorded and open to all MSU faculty members, further harming Dr. Lipton's name and reputation among his colleagues, peers, and the university community at large.

**ANSWER: In response to Paragraph 110 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

111.    As Vassar and Denno well knew, Dr. Lipton did not and has never made any racially biased statements and is not racist.

**ANSWER: In response to Paragraph 111 of Plaintiff's FAC, Defendant denies the allegations therein.**

112.    Upon information and belief, Denno chose to encourage pro-Palestine Arab American students to disparage Dr. Lipton because Dr. Lipton is Jewish.

**ANSWER: In response to Paragraph 112 of Plaintiff's FAC, Defendant denies the allegations therein.**

113.    On December 15, 2023, at the very next Board of Trustees meeting after the October 27 meeting, Dr. Lipton apologized for using the word "mob" in his comments to The Detroit News and clarified that he did not use that word with any racial or discriminatory intent but only to characterize the lack of order of the October 27 meeting. He said:

> With respect to Board meetings and discourse, unlike most meetings at this body, today's session is virtual. Let's be clear, we are on Zoom today because eight officials who are elected state-wide to oversee this institution were unable or unwilling to maintain basic order in the room on October 27. Everyone who signs up to address the Board is, of course, free to share their views. No one is entitled to interrupt others, let alone shout at or belittle them. No one. Regardless of what position they are taking on what issue. This includes specific members of the board, when working in meetings with faculty. Those at the board table oversee a $4 billion budget but were unprepared to manage a meeting for just a few hours. Time limits were ignored, members of the audience conducted a vote on whether to let the Chairperson's husband speak despite not signing up to do so, and the Board Secretary permitted it. Trustee Denno put forth a resolution to release the Nassar documents when he knew it was out of order. That complete dysfunction and the virtual meeting it resulted in are testaments to the entitlement, lack of leadership, and theatrics that permeate the board. Such behaviors exemplify an uncurious and close-minded approach that is anathema to a healthy university culture. In a statement to the media about that chaos, I said that Chairperson Vassar allowed the mob to rule the room. My goal was to support Trustee Brianna Scott in her courageous attempt to hold the Chairperson accountable. A complaint to the Office of Institutional Equity was filed against me as a result of the use of the word mob. And I have heard from some members of our community who felt that the word mob was racially loaded. While I was not referring to members of any specific racial or ethnic groups, I recognize the impact of my statement on some Spartans was real and I apologize. I will certainly be more careful with my words in the future. Let me state unequivocally, that Black and Arab students as well as students of all races and ethnicities belong at Michigan State University and deserve to feel welcome here. Last night I joined leadership from the Black Faculty, Staff, and Administrators Association for a valuable dialogue on my comments and how they were received. I left with a better understanding about how my statements made others feel and I hope that they left with a better understanding of the concern that I was trying to express. Nobody has the right to interrupt others during these meetings. I appreciate the BFSAA's time and willingness to engage with me on this topic. I really enjoyed the exchange. But let's be clear, this is a university. Universities exist to allow us to experience and participate in discourse. Let's demonstrate that we can all be in the same room, take turns talking, and speak our

truths respectively. We can disagree, without ascribing motives to others. While Trustee Denno feels it appropriate to call me an Anti-Arab or Anti-Black racist, I don't think that our disagreements make him antisemitic. We simply disagree. I hope that we can focus on ideas instead of personalities in the future. To the public attending or participating in Board meetings, show the respect you expect of others when you speak. No one is trying to silence anyone. Let's just take turns talking. To the wider community, sometimes you might hear an opinion or an assertion that you don't agree with. I heard plenty today, including untrue suggestions that I tried to stop the presidential search, that I am a racist, that I criminalize students, that the complaint filed with the Higher Learning Commission was mine and not the Faculty Senate's, and that I am trying to hurt the Chairperson, rather than keep the Board accountable. But universities allow inquiry, discourse, and free speech. We should all respect it. To certain members of the board, please manage your meetings. Stay in your lane, and please end your coordinated, pervasive, and damaging retaliatory behavior against your Trustee colleagues, against members of the administration, and against faculty members now before our new president is seated. Thank you.[31]

**ANSWER: In response to Paragraph 113 of Plaintiff's FAC, Defendant admits only that Plaintiff made a statement consistent with the language quoted in Paragraph 113 of the FAC. Defendant neither admits nor denies the remaining allegations, including whether Dr. Lipton's statement on December 15, 2023 in fact constituted a genuine apology.**

114.    The October 30, 2023 student-filed OIE complaint was closed without investigation and without making any finding against Dr. Lipton.

**ANSWER: In response to Paragraph 114 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

115.    HLC closed the December 13, 2023 student-filed complaint, finding no grounds to investigate Dr. Lipton.

---

[31] Minutes of the Meeting of the Michigan State University Board of Trustees at 21-22 (Dec. 15, 2023), https://trustees.msu.edu/meetings/documents/2024/December%2015%202023%20-%20Accessible%20Minutes.pdf

**ANSWER: In response to Paragraph 115 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

***The Miller & Chevalier Investigation[32]***

116.    MSU hired independent law firm Miller & Chevalier to investigate the allegations against Vassar detailed in Scott's October 20 letter.[33]

**ANSWER: In response to Paragraph 116 of Plaintiff's FAC, Defendant admits the allegations.**

117.    Miller & Chevalier also investigated several other concerns raised during its investigatory interviews, including allegations made against Denno, and Dr. Lipton's comments to the Detroit News.

**ANSWER: In response to Paragraph 117 of Plaintiff's FAC, Defendant—upon and information and belief—admits the allegations therein.**

118.    Miller & Chevalier issued a report on February 28, 2024, finding that the students who had filed complaints and issued statements against Dr. Lipton were largely encouraged to do so by Vassar and Denno.[34]

**ANSWER: In response to Paragraph 118 of Plaintiff's FAC, Defendant admits only—upon information and belief—that Miller & Chevalier issued a report on February 28, 2024. Defendant neither admits nor denies the remaining allegations contained therein for the**

---

[32] The Miller & Chevalier investigation has cost MSU over $2 million. *See* Sarah Atwood, *MSU's legal costs for investigation into trustees approached $2.4 million*, LANSING STATE JOURNAL (Sep. 16, 2024), https://www.lansingstatejournal.com/story/news/local/campus/2024/09/16/michigan-state-trustee-misconduct-bullying-investigation-cost/75056917007/.

[33] MILLER & CHEVALIER REPORT, *supra* note 17

[34] *Id.*

**reason that the Miller & Chevalier Report speaks for itself; however, Defendant denies that there is any validity to any conclusion that "students who had filed complaints and issued statements against Dr. Lipton were largely encouraged to do so by Vassar and Denno." Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

119.    One of the students identified in the Miller & Chevalier Report as "Interviewee 10" provided Miller & Chevalier with text messages and recordings of conversations, both written and verbal, in which Denno provided advice regarding the language to use in written complaints and letters against Dr. Lipton and advised the student to contact news outlets to disparage Dr. Lipton and label him a racist.[35]

**ANSWER: In response to Paragraph 119 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

120.    According to the report, Denno also encouraged leaders of MSU student groups, namely Arab American and African American affinity groups, to further Denno's own agenda to disparage Dr. Lipton.

**ANSWER: In response to Paragraph 120 of Plaintiff's FAC,  Defendant neither admits nor denies the allegations that "[a]ccording to the report, Denno also encouraged leaders of MSU student groups, namely Arab American and African American affinity groups" for the reason that the Miller & Chevalier Report speaks for itself; however, Defendant denies that there is any validity to any conclusion that "Denno also encouraged leaders of MSU student**

---

[35] *Id.* at 45-46.

**groups, namely Arab American and African American affinity groups, to further Denno's**

**own agenda to disparage Dr. Lipton." Answering further, to the extent Plaintiff alleges that**

**Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

121.    The report found that, on multiple occasions, Vassar and Denno coached and

assisted students in drafting complaints and letters accusing Dr. Lipton of racism to local news

outlets hoping that MSU leadership might take action against him.

**ANSWER: In response to Paragraph 121 of Plaintiff's FAC, Defendant neither admits nor**

**denies the allegations contained therein for the reason that the Miller & Chevalier Report**

**speaks for itself; however, Defendant denies that there is any validity to any conclusion that**

**"Vassar and Denno coached and assisted students in drafting complaints and letters accusing**

**Dr. Lipton of racism to local news outlets hoping that MSU leadership might take action**

**against him." Answering further, to the extent Plaintiff alleges that Defendant acted**

**unlawfully, said allegations are denied for the reason that they are untrue.**

122.    Upon information and belief, some of these communications took place via Vassar

and Denno's MSU email addresses.

**ANSWER: In response to Paragraph 122 of Plaintiff's FAC, Defendant neither admits nor**

**denies the unduly vague allegations regarding undescribed "communications" for the reason**

**that Defendant is without knowledge or information sufficient to form a belief as to the truth**

**thereof and therefore leaves Plaintiff to his proofs. To the extent that the unspecified**

**communications refer to the alleged actions described in Paragraph 121, Defendant denies**

**the allegations that, "Vassar and Denno coached and assisted students in drafting complaints**

**and letters accusing Dr. Lipton of racism to local news outlets hoping that MSU leadership**

**might take action against him." Answering further, to the extent Plaintiff alleges that**

**Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

123.    The report found that Vassar and Denno provided students with media outlet contact information to disparage Dr. Lipton.

**ANSWER: In response to Paragraph 123 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the Miller & Chevalier Report speaks for itself. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

124.    The report found that Vassar and Denno organized the in-person gathering of representatives of African American and Arab American student affinity groups for the virtual December 15, 2023 Board of Trustees meeting.

**ANSWER: In response to Paragraph 124 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the Miller & Chevalier Report speaks for itself; however, Defendant denies that there is any validity to the conclusion alleged in Paragraph 124 of the FAC. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

125.    In the report, Denno admitted to encouraging students to attack Dr. Lipton: "The other thing you can do to help [Vassar and me], at least for me, is attack Jack Lipton, the Chair of the Faculty Senate. I mean this guy called you a mob... call him out, call him a racist."[36]

**ANSWER: In response to Paragraph 125 of Plaintiff's FAC, Defendant admits only that he told Miller & Chevalier that he "probably said that" but denies that he unequivocally made the admission alleged in Paragraph 125 of the FAC.**

126.    Denno's response to the allegation that he made the above statement was that he "probably said that" and that he doesn't "give a shit about Jack Lipton."[37]

---

[36] *Id.* at 45.
[37] *Id.*

**ANSWER: In response to Paragraph 126 of Plaintiff's FAC, Defendant admits the allegations therein.**

127.    When investigators asked Denno about a recording of his voice in a meeting with students in which he stated, "This guy is supposed to be independent or non-partisan and he's a tool of the Administration and he's a tool to begin with." Denno told investigators, "I don't give two shits about Jack Lipton ... But he is a tool, so I probably did [make the statement]."[38]

**ANSWER: In response to Paragraph 127 of Plaintiff's FAC, Defendant admits the allegations therein.**

128.    The Miller & Chevalier Report included text messages from student Miselo Chola stating that Vassar was "quite pissed" that HLC was not going to initiate an investigation into Dr. Lipton.[39]

**ANSWER: In response to Paragraph 128 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the Miller & Chevalier Report speaks for itself. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

129.    With respect to the October 27 meeting, the Miller & Chevalier Report found, "Without exception, the Interviewees described the meeting as chaotic, with participants shouting over each other and interrupting speakers. One Trustee reported feeling 'blindsided.' An Interviewee, who watched the hearing remotely, described being 'embarrassed' by the meeting dynamics and by the interactions between Chair Vassar and Trustee Scott."[40]

**ANSWER: In response to Paragraph 129 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the Miller & Chevalier Report**

---

[38] *Id.*
[39] *Id.*
[40] *Id.* at 44.

{00130582.DOCX}                                              43

**speaks for itself; however, Defendant denies that there is any validity to the conclusion alleged in Paragraph 129 of the FAC. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

130.    Vassar and Denno's knowingly false and defamatory claims against Dr. Lipton constitute clear retaliation from some of the most powerful people at MSU because he voiced an opinion, as a private individual, against Vassar's decision to not uphold meeting protocols during the October 27 board meeting.

**ANSWER: In response to Paragraph 130 of Plaintiff's FAC, Defendant denies the allegations therein.**

131.    After the Miller & Chevalier Report was issued, the Board of Trustees voted on whether and how to discipline Vassar and Denno.

**ANSWER: In response to Paragraph 131 of Plaintiff's FAC, Defendant admits the allegations therein.**

132.    The Board voted to censure Vassar and Denno and to refer the matter to Governor Gretchen Whitmer's office, as she has the legal authority to remove them from office.[41]

**ANSWER: In response to Paragraph 132 of Plaintiff's FAC, Defendant admits the allegations therein.**

133.    Specifically, each named Board Member, other than Vassar and Denno, voted to limit Vassar and Denno's censure to less than nine months and did not render a decision on recommending removal.

**ANSWER: In response to Paragraph 133 of Plaintiff's FAC, Defendant denies the allegations therein.**

---

[41] Arjun Thakkar and Eli Newman, *MSU trustees face removal after censure vote over misconduct allegations,* WKAR NEWS (Mar. 4, 2024), https://www.wkar.org/wkar-news/2024-03-04/msu-trustees-face-removal-after-censure-vote-over-misconduct-allegations

134.    The censure included removing Vassar and Denno from all assigned duties and suspended them from Board activities and benefits outside of their roles as elected officials for the remainder of 2024.[42]

**ANSWER: In response to Paragraph 134 of Plaintiff's FAC, Defendant admits the allegations therein.**

### Damages to Dr. Lipton Due to Vassar and Denno's Retaliation

135.    Vassar and Denno's false and retaliatory claims have harmed and continue to harm Dr. Lipton's reputation and professional opportunities within his field.

**ANSWER: In response to Paragraph 135 of Plaintiff's FAC, Defendant denies the allegations therein.**

136.    Dr. Lipton has already suffered damages, as he has been prevented from consideration for advanced positions in his field at a time in his career where he is eminently qualified to progress.

**ANSWER: In response to Paragraph 136 of Plaintiff's FAC, Defendant denies the allegations therein.**

137.    On or around April 15, 2024, Dr. Lipton was explicitly told by a superior that the public attack on his character was seen as a liability for a promotion to the position of Associate Dean for Research Analytics.

**ANSWER:  In response to Paragraph 137 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted**

---

[42] *Id.*

**unlawfully, said allegations are denied for the reason that they are untrue.**

138.    In Dr. Lipton's search for higher level professional opportunities outside of MSU, an executive search firm associate shared that the public attacks on his character labeling him a "racist" will negatively impact his employment chances, despite his superb qualifications.

**ANSWER:  In response to Paragraph 138 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

139.    As an at-large member of the Faculty Senate, MSU Bylaws on Academic Governance required Dr. Lipton to include his name on the ballot as a candidate for re-election as the Faculty Senate Chair for the 2024-2025 school year.

**ANSWER: In response to Paragraph 139 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

140.    However, because of the ongoing damage to Dr. Lipton's career and reputation due to Defendants' actions and inactions detailed in this Complaint and to reduce his exposure to ongoing harassment, he actively campaigned against his own re-election as Faculty Senate Chair. His candidate statement read: "DO NOT VOTE FOR ME."

**ANSWER: In response to Paragraph 140 of Plaintiff's FAC, Defendant neither admits nor denies the allegations regarding whether Plaintiff "actively campaigned against his own re-election as Faculty Senate Chair" and issued a candidate statement as allegedly quoted for the reason that Defendant is without knowledge or information sufficient to form a belief as**

to the truth thereof and therefore leaves Plaintiff to his proofs. **Defendant denies that he caused any "ongoing damage to Dr. Lipton's career and reputation" or caused any "ongoing harassment" and thus, Defendant denies the purported reasons for Plaintiff's alleged actions. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

***Dr. Lipton's Attempts to Resolve this Matter without Litigation***

141.    On or around January 16, 2024, in an attempt to resolve this matter amicably with the Board of Trustees, Dr. Lipton's counsel communicated an offer of settlement to the Board of Trustees' attorney, MSU General Counsel Brian Quinn.

**ANSWER: In response to Paragraph 141 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

142.    On or around March 26, 2024, Dr. Lipton's counsel sent a second offer of settlement, this time with a monetary demand, to Quinn.

**ANSWER: In response to Paragraph 142 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

143.    Pursuant to the MSU Board of Trustees bylaws, "The authority of the Trustees is conferred upon them as a board, and they can bind the corporation and the University only by acting together as a board. No individual member shall commit the board to any policy, declaration,

or action without prior approval of the board."[43]

**ANSWER:   In response to Paragraph 143 of Plaintiff's FAC, Defendant admits the allegations therein.**

144.    Upon information and belief, in violation of his ethical obligations as an attorney, Quinn did not consult with the full board prior to responding to Dr. Lipton's second offer of settlement.[44]

**ANSWER: In response to Paragraph 144 of Plaintiff's FAC, Defendant objects to answering this allegation on the basis of the attorney-client privilege. Specifically, it seeks information regarding the subject matter of communications between General Counsel for Michigan State University and Michigan State University's Board of Trustees.**

145.    On April 11, 2024, Tebay, Scott, and Kelly spoke with Dr. Lipton about the matters outlined in this Complaint.

**ANSWER:  In response to Paragraph 145 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

146.    Tebay told Lipton, "We ruined your career."

**ANSWER:  In response to Paragraph 146 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

---

[43] Michigan State University Board of Trustees Bylaws, Article 13, https://trustees.msu.edu/bylaws-ordinances-policies/bylaws/Final_%20Bylaws_BOT_7_3_24.pdf
[44] "A lawyer shall notify the client promptly of all settlement offers…." Mich. R. Prof. Cond. 1.4(a); "A lawyer shall abide by a client's decision whether to accept an offer of settlement…of a matter." Mich. R. Prof. Cond. 1.2(a).

147.    Scott told Lipton, "You should sue us."

**ANSWER:  In response to Paragraph 147 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

***The Board's Continued Retaliation Against Dr. Lipton to the Present Day***

148.    On Thursday, September 5, 2024, MSU's Board of Trustees and top administrators held a lunch meeting at which the faculty liaisons to the Board requested the Trustees develop a statement regarding their own commitment to civil discourse that echoed an MSU Presidential statement on the matter.

**ANSWER:  In response to Paragraph 148 of Plaintiff's FAC, Defendant admits the allegations therein.**

149.    All of the named Board Members were in attendance at the September 5, 2024 meeting except Knake Jefferson.

**ANSWER: In response to Paragraph 149 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

150.    At that meeting, Vassar asked Dr. Lipton to share an example of a lack of civil discourse in the last year by the Board.

**ANSWER: In response to Paragraph 150 of Plaintiff's FAC, Defendant admits the allegations therein.**

151.    Dr. Lipton cited an incident during a March 3, 2024, virtual Board of Trustees meeting, in which Vassar displayed an explicit hand gesture on multiple occasions during

comments made by Trustee Scott and Trustee Dianne Byrum.[45]

**ANSWER: In response to Paragraph 151 of Plaintiff's FAC, Defendant admits that Dr. Lipton cited the alleged incident but neither admits nor denies whether Vassar actually "displayed an explicit hand gesture on multiple occasions during comments made by Trustee Scott and Trustee Dianne Byrum."**

152.    MSU's Office of Audit, Risk and Compliance ("OARC") investigated the matter and issued a subsequent report, finding: "OARC staff review of the video clearly identifies the explicit gesture (displaying middle finger) for a prolonged period of time when Trustee Byrum was speaking and when Trustee Scott was speaking."[46]

**ANSWER: In response to Paragraph 152 of Plaintiff's FAC, Defendant admits the allegations therein.**

153.    Despite the clear video and photographic depictions of the explicit gesture and the OARC report finding, Vassar told Dr. Lipton that the incident was both "false" and, inexplicably, "a result of eczema."

**ANSWER: In response to Paragraph 153 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

154.    Vassar then explained to Dr. Lipton that he did not have any grounds to speak about civil discourse, since he had used the term "mob" to label students, and since in her opinion, he had displayed an absence of self-reflection in his October 29 quote to The Detroit News.

---

[45] Sarah Atwood, *MSU trustee made explicit hand gesture during meeting, report finds*, LANSING STATE JOURNAL (Jun. 12, 2024), https://www.lansingstatejournal.com/story/news/local/campus/2024/06/12/msu-trustee-rema-vassar- investigation-explicit-hand-gesture-middle-finger/74068509007/.

[46] *Id.*

**ANSWER: In response to Paragraph 154 of Plaintiff's FAC, Defendant admits the allegations therein.**

155.    This exchange occurred in the presence of the entire Board of Trustees, MSU President Kevin Guskiewicz, MSU Interim Provost Thomas Jeitschko, MSU General Counsel Brian Quinn, and faculty colleagues.

**ANSWER: In response to Paragraph 155 of Plaintiff's FAC, Defendant admits the allegations therein.**

156.    In other words, even after the imposed censure, Vassar chose to target Dr. Lipton, affirmatively seek his commentary, and disparage him for his honest response, while at the same time inaccurately re-characterizing his quote as "labeling students," in an attempt to embarrass and humiliate him in front of his superiors.

**ANSWER: In response to Paragraph 156 of Plaintiff's FAC, Defendant–upon information and belief—denies the allegations therein.**

157.    Despite knowledge of the Miller & Chevalier Report detailing Vassar and Denno's coordinated and sustained effort to retaliate against Dr. Lipton for his exercise of free speech and the Board of Trustees' subsequent censure of Vassar and Denno, no one on the Board or in the administration interjected to provide support to Dr. Lipton during this exchange.

**ANSWER: In response to Paragraph 157 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

***The Board's Failure to Hold Vassar and Denno Accountable and Protect Dr. Lipton from Further Abuse***

158.    In the evening of Thursday, September 5, 2024, in light of Vassar's harassment of

him at the lunch event, Dr. Lipton spoke with current Board of Trustees Chair Dan Kelly.

**ANSWER:  In response to Paragraph 158 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

159.    Dr. Lipton asked Chair Kelly if the Board of Trustees could have censured Vassar and Denno and limited their ability as Trustees for their entire terms, or if there had been a reason the censure was set to end on December 31, 2024.[47]

**ANSWER: In response to Paragraph 159 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

160.    Kelly told Dr. Lipton that the Board could have censured Vassar and Denno for a longer period, up to and including the full duration of their board terms but chose not to.

**ANSWER:  In response to Paragraph 160 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

161.    Within the past week, Kelly has publicly admitted in the media that the Board's responsibilities include oversight:

> Whenever possible, the university should be united and moving in the same direction…But when you go through a matter like Nassar, or even some of the other issues we've been through in the last seven-and-a-half years, there is a role to step out and act independently and exercise their oversight…[W]hen there's suspicions

---

[47] Vassar's term ends on January 1, 2029, and Denno's term ends on January 1, 2031. *See About the Trustees*, Michigan State University, https://trustees.msu.edu/about/index.html (last visited Sep. 6, 2024).

that we're headed in the wrong direction…then it is our job to be that oversight.[48]

**ANSWER: In response to Paragraph 161 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

162.    On September 29, 2024, MSU held an investiture ceremony for President Kevin Guskiewicz.[49]

**ANSWER: In response to Paragraph 162 of Plaintiff's FAC, Defendant admits the allegations therein.**

163.    At that ceremony, Defendants allowed Vassar and Denno to sit on the stage with university leaders and visiting dignitaries and share the spotlight with the rest of the Board in full academic regalia, despite being suspended from all board related activities.[50]

---

[48] Owen McCarthy, *MSU board members wanted separation from administration during Nassar scandal*, THE STATE NEWS (Sep. 26, 2024), https://statenews.com/article/2024/09/msu-board-members-wanted-separation-from-administration-during-nassar-scandal.

[49] Theo Scheer, *MSU president outlines new student success, research initiatives at investiture ceremony*, THE STATE NEWS (Sep. 29, 2024), https://statenews.com/article/2024/09/msu-president-emphasizes-student-success-research-at-investiture-ceremony.

[50]


**ANSWER: In response to Paragraph 163 of Plaintiff's FAC, Defendant admits the allegations therein.**

164.    This act constituted a deliberate public display of support for Vassar and Denno, actively overruling their censure.

**ANSWER: In response to Paragraph 164 of Plaintiff's FAC, Defendant denies the allegations therein.**

165.    Dr. Lipton was invited by President Guskiewicz and attended the event, sitting ten rows from the front of the stage.

**ANSWER:  In response to Paragraph 165 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

166.    After the ceremony, an MSU donor hosted a reception for a select number of MSU leaders, donors, and trustees.

**ANSWER: In response to Paragraph 166 of Plaintiff's FAC, Defendant admits the allegations therein.**

167.    Dr. Lipton was invited by the President to attend the reception.

**ANSWER:  In response to Paragraph 167 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

---

*Id.* Denno and Vassar and pictured on the far left.

168.    Defendants allowed Vassar and Denno to attend this event as well, in violation of the censure resolution.

**ANSWER: In response to Paragraph 168 of Plaintiff's FAC, Defendant admits that they attended the event but denies it was in violation of the censure resolution.**

169.    Seeing Vassar and Denno mingling with MSU leaders and donors shocked and humiliated Dr. Lipton.

**ANSWER: In response to Paragraph 169 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

170.    Defendants humiliated and silenced Dr. Lipton by allowing Vassar and Denno to attend these events in violation of their own resolution that barred Vassar and Denno from Board-related activities that were not required by law.

**ANSWER: In response to Paragraph 170 of Plaintiff's FAC, Defendant denies the allegations therein.**

171.    On November 15, 2024, the MSU BSA posted an accusation on Instagram falsely charging Dr. Lipton with "continuously harass[ing]" student and BSA member Miselo Chola.[51]

**ANSWER: In response to Paragraph 171 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff**

---

[51] Dr. Lipton has only communicated with Chola at Chola's initiation. On December 15, 2023, Chola contacted Dr. Lipton via email asking to meet with him regarding students who felt attacked by his October 27 comment to The Detroit News. Dr. Lipton responded to Chola's request, stating that he believed his public apology spoke for itself and declining to meet. On January 4, 2024, Chola again asked to meet with Dr. Lipton, and he agreed. On January 8, 2024, Dr. Lipton met with Chola and, after the meeting, sent her the written apology she had requested from him. Dr. Lipton has had no other communication with Chola.

to his proofs. **Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

172.    The post goes on: "BSA was mentioned in a lawsuit, not as defendants but accused of being 'manipulated' into activism, undermining our voices."

**ANSWER: In response to Paragraph 172 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

173.    Upon information and belief, this refers to the instant lawsuit in which Chola is mentioned in the Miller & Chevalier Report.

**ANSWER:  In response to Paragraph 173 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

174.    This demonstrates the Board of Trustees' and named Board Members' continued failure to properly address and remedy the ongoing retaliation by Vassar and Denno toward Dr. Lipton.

**ANSWER: In response to Paragraph 174 of Plaintiff's FAC, Defendant denies the allegations therein.**

175.    Given that the Board itself referred Vassar and Denno to the Governor for consideration of their removal, and that Defendants failed to enforce their own sanction against Vassar and Denno, it is clear that the Board of Trustees and the named Board Members cannot be

trusted to uphold even basic operating standards as they concern the trustees in question.

**ANSWER: In response to Paragraph 175 of Plaintiff's FAC, Defendant denies the allegations therein.**

176.    The Board of Trustees and the named Board Members affirmatively voted to only censure Vassar and Denno for less than nine months.

**ANSWER: In response to Paragraph 176 of Plaintiff's FAC, Defendant denies the allegations therein.**

177.    Kelly confirmed to Dr. Lipton that the Board of Trustees could have censured Vassar and Denno for longer but chose not to.

**ANSWER:  In response to Paragraph 177 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs.**

178.    Through their censure resolution, Defendants consciously decided not to recommend Vassar and Denno for removal, despite spending over $2 million on an investigation that demonstrated, by a preponderance of the evidence, that Vassar and Denno had repeatedly violated their duties and obligations as Trustees and had taken specific action to retaliate against Dr. Lipton.

**ANSWER: In response to Paragraph 178 of Plaintiff's FAC, Defendant neither admits nor denies the allegations regarding any conscious decision of the other Board members (most of whom have been dismissed from this lawsuit, *see* ECF No. 70) for the reason that Defendant is without knowledge or information sufficient to form a belief as to the truth thereof and therefore leaves Plaintiff to his proofs. To the extent that this allegation alleges that the Miller & Chevalier Report validly concluded that "Vassar and Denno had repeatedly violated their**

**duties and obligations as Trustees and had taken specific action to retaliate against Dr. Lipton," Defendant denies the allegations as untrue. Defendant denies any allegations that are inconsistent with the foregoing answer. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

179.    Further, Defendants sent a recommendation to the Governor that Vassar and Denno be considered for removal with no other finding.

**ANSWER: In response to Paragraph 179 of Plaintiff's FAC, Defendant admits the allegations therein.**

180.    Such actions demonstrate that the Board of Trustees and named Board Members are unwilling to protect Dr. Lipton and other potential victims of Vassar and Denno's abuse.

**ANSWER: In response to Paragraph 180 of Plaintiff's FAC, Defendant denies the allegations therein.**

181.    Vassar and Denno's official censure ends on January 1, 2025, at which time they will again have full, unfettered access to all of the powers, privileges, and duties of the MSU Board of Trustees.

**ANSWER: In response to Paragraph 181 of Plaintiff's FAC, Defendant admits the allegations therein.**

<u>COUNT I</u>
**Retaliation**
**42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution**
**(The Named Board Members)**

182.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

**ANSWER:  In response to Paragraph 182 of Plaintiffs' Complaint, Defendant incorporates and realleges each and every answer stated in response to Paragraphs 1 through 181 as if fully stated and set forth herein.**

183.    Defendants were at all times acting under color of law when they unlawfully retaliated against Plaintiff in violation of his First Amendment rights.

**ANSWER: In response to Paragraph 183 of Plaintiff's FAC, to the extent Plaintiff alleges that, "Defendants were at all times acting under color of law," Defendant neither admits nor denies these allegations for the reason that said allegations constitute conclusions of law and therefore fail to conform to the requirements of Fed. R. Civ. P. 8. Answering further, to the extent Plaintiff alleges that Defendants unlawfully retaliated against Plaintiff in violation of his First Amendment rights, said allegations are denied for the reason that they are untrue.**

184.    Plaintiff made comments to The Detroit News as a private individual on a matter of public interest, the chaos and disruption caused by Vassar at the October 27, 2023 MSU Board of Trustees meeting.

**ANSWER: In response to Paragraph 184 of Plaintiff's FAC, Defendant denies the allegations therein.**

185.    Whether speech by a public employee is protected depends on whether the speech was ordinarily within the course of his duties as a public employee, not whether it merely concerns those duties. *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345 (6th Cir. 2010).

**ANSWER: In response to Paragraph 185 of Plaintiff's FAC, Defendant neither admits nor denies the allegations contained therein for the reason that the cited case law speaks for itself. Answering further, to the extent Plaintiff alleges that Defendant acted unlawfully, said allegations are denied for the reason that they are untrue.**

186.     Plaintiff's speech was protected by the First Amendment to the U.S. Constitution as it was not ordinarily within the course of his duties as an MSU employee.

**ANSWER: In response to Paragraph 186 of Plaintiff's FAC, Defendant denies the allegations therein.**

187.     After Plaintiff spoke to The Detroit News, Vassar and Denno abused their authority as Trustees and engaged in retaliation including but not limited to calling Dr. Lipton a "racist" and a "tool," engaging in public and private disparagement of his character, encouraging MSU students to file false complaints and draft false statements against him, encouraging MSU students to make false statements to the media, and other acts which harmed and damaged his reputation as outlined in this Complaint.

**ANSWER: In response to Paragraph 187 of Plaintiff's FAC, Defendant denies the allegations therein.**

188.     The named Board Members witnessed Vassar and Denno's unconstitutional retaliation on several occasions, including at the December 14, 2023 private meeting and the December 15, 2023 virtual Board of Trustees meeting.

**ANSWER: In response to Paragraph 188 of Plaintiff's FAC, Defendant denies the allegations therein.**

189.     The named Board Members also gained further knowledge of Vassar and Denno's unconstitutional retaliatory conduct upon issuance of the Miller & Chevalier Report.

**ANSWER: In response to Paragraph 189 of Plaintiff's FAC, Defendant denies the allegations therein.**

190.     Despite this knowledge, Defendants allowed Vassar and Denno's retaliatory campaign to continue, including at the subsequent September 5, 2024 meeting.

**ANSWER: In response to Paragraph 190 of Plaintiff's FAC, Defendant denies the allegations therein.**

191.    By failing to appropriately respond to Vassar and Denno's retaliation, Defendants implicitly authorized and acquiesced in the unconstitutional conduct.

**ANSWER: In response to Paragraph 191 of Plaintiff's FAC, Defendant denies the allegations therein.**

192.    Defendants' retaliation was designed to silence Plaintiff and prevent him from further speaking out against Vassar which would likely prevent an ordinary person from continuing to engage in the exercise of free speech, and did prevent Plaintiff from continuing to engage in the exercise of free speech.

**ANSWER: In response to Paragraph 192 of Plaintiff's FAC, Defendant denies the allegations therein.**

193.    Defendants' retaliation has had a chilling effect that acts as a deterrent to free speech.

**ANSWER: In response to Paragraph 193 of Plaintiff's FAC, Defendant denies the allegations therein.**

194.    Plaintiff's protected speech was a motivating factor in Defendants' retaliatory actions.

**ANSWER: In response to Paragraph 194 of Plaintiff's FAC, Defendant denies the allegations therein.**

195.    Plaintiff's right to free speech and expression under the law is one of which reasonable officials in the named Board Members' positions would have known.

**ANSWER: In response to Paragraph 195 of Plaintiff's FAC, Defendant admits only that Plaintiff has a right to free speech and expression under the law; however, Defendant denies**

that Plaintiff engaged in a constitutionally protected activity of engaging in free speech and
expression.

196.    As a direct and proximate result of Defendants' wrongful acts and omissions,
Plaintiff has sustained and continues to sustain injuries and damages, including, but not limited to,
economic loss, loss of earnings and earnings capacity; loss of professional opportunities; mental
and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment;
damage to his reputation and good name; and loss of the ordinary pleasures of everyday life.

**ANSWER: In response to Paragraph 196 of Plaintiff's FAC, Defendant denies the allegations**
**therein.**

**COUNT II**
**Monell Liability**
**42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution (All Defendants)**

197.    Plaintiff incorporates by reference the allegations contained in the previous
paragraphs as if fully restated herein.

**ANSWER:  In response to Paragraph 197 of Plaintiff's Complaint, Defendant incorporates**
**and realleges each and every answer stated in response to Paragraphs 1 through 196 as if**
**fully stated and set forth herein.**

198.    At all times relevant, the Board and the named Board Members in their official
capacities failed to properly train, discipline and supervise Vassar and Denno, promulgating and
maintaining de facto unconstitutional customs, policies, or practices rendering them liable for the
constitutional violations alleged herein under *Monell v. Dept. of Social Services of the City of New*
*York*, 436 U.S. 658 (1978).

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that**
**Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against**
**Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is**

**required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 198 of Plaintiff's FAC for the reason that they are untrue.**

199.    At all times relevant, the Board and the named Board Members in their official capacities knew or should have known that the policies, procedures, training supervision and discipline of Vassar and Denno were inadequate for the tasks that they were required to perform.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 199 of Plaintiff's FAC for the reason that they are untrue.**

200.    At all times relevant, the Board and the named Board Members in their official capacities failed to establish, implement or execute adequate policies, procedures, rules and regulations to ensure Board Members did not engage in unconstitutional retaliation against individuals such as Plaintiff.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 200 of Plaintiff's FAC for the reason that they are untrue.**

201.    At all times relevant, the Board and the named Board Members in their official capacities were on notice or should have known of a history, custom, propensity, and pattern at times relevant to the allegations herein, for Vassar and Denno to act with deliberate indifference and unconstitutionally against individuals, specifically Plaintiff, by threatening to engage in and engaging in retaliation against individuals with whose constitutionally protected speech they

disagreed.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 201 of Plaintiff's FAC for the reason that they are untrue.**

202.    The Board and the named Board Members in their official capacities implicitly authorized, approved, or knowingly acquiesced in the retaliation against individuals, and knew or should have known that such treatment would deprive individuals, such as Plaintiff, of their constitutional rights.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 202 of Plaintiff's FAC for the reason that they are untrue.**

203.    By inadequately training and/or supervising Board Members and having a custom or policy of deliberate indifference to the constitutional rights of individuals such as Plaintiff, the Board and the named Board Members in their official capacities encouraged and cultivated the conduct which violated Plaintiff's rights under the First Amendment to the United States Constitution.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations**

of Paragraph 203 of Plaintiff's FAC for the reason that they are untrue.

204.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained and continues to sustain injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity; loss of professional opportunities; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to his reputation and good name; and loss of the ordinary pleasures of everyday life.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 204 of Plaintiff's FAC for the reason that they are untrue.**

205.    Defendants are not entitled to governmental or qualified immunity.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.483-84 at n3), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 205 of Plaintiff's FAC for the reason that they are untrue.**

<u>COUNT III</u>
**Injunctive Relief**

206.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

**ANSWER:  In response to Paragraph 206 of Plaintiff's Complaint, Defendant incorporates and realleges each and every answer stated in response to Paragraphs 1 through 205 as if fully stated and set forth herein.**

207.    Defendants' adverse actions against Dr. Lipton were in direct response to his statements reported by The Detroit News and were taken for the purpose of freezing or deterring further speech regarding matters of public concern.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 207 of Plaintiff's FAC for the reason that they are untrue.**

208.    Vassar and Denno used their positions as MSU Trustees with power and influence over students, administration, and faculty to incite and encourage retaliation against Dr. Lipton for his protected speech.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 208 of Plaintiff's FAC for the reason that they are untrue.**

209.    The Board of Trustees and named Board Members implicitly authorized and acquiesced in the unconstitutional conduct.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 209 of Plaintiff's FAC for the reason that they are untrue.**

210.    Plaintiff's right to free speech and expression under the law is one of which reasonable persons in the state officials' position would have known.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 210 of Plaintiff's FAC for the reason that they are untrue.**

211.    Plaintiff is seeking the recall, resignation, or removal of Vassar and Denno from their positions on the MSU Board of Trustees.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 211 of Plaintiff's FAC for the reason that they are untrue.**

212.    Plaintiff is also seeking an order enjoining any further disparagement or retaliation for his protected speech by any employee, agent, representative, or Trustee of MSU.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 212 of Plaintiff's FAC for the reason that they are untrue.**

213.    In the absence of such orders, Plaintiff will continue to suffer irreparable injury as he remains a faculty member subject to the actions and review of Defendants.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 213 of Plaintiff's FAC for the reason that they are untrue.**

214.    Further, irreparable harm is presumed where 42 U.S.C. § 1983, 28 U.S.C. § 2201, and 5 U.S.C. §§702, 704, and 706 authorizes such relief to remedy the violations of Plaintiff's Constitutional rights.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 214 of Plaintiff's FAC for the reason that they are untrue.**

215.    The threatened injury to Plaintiff outweighs any harm to Defendants as Defendants have also been and will continue to be damaged by presence of Vassar and Denno on the Board of Trustees and by any further actions of Vassar and/or Denno to silence faculty members' speech.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 215 of Plaintiff's FAC for the reason that they are untrue.**

216.    Such an injunction is not averse to public policy as the public has an interest in the MSU Board of Trustees not engaging in retaliation against MSU faculty members and in the removal of Vassar and Denno from the MSU Board of Trustees.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 216 of Plaintiff's FAC for the reason that they are untrue.**

217.    Dr. Lipton has no other adequate remedy at law to address the continued damage to his professional name and reputation and his continued forced silence.

**ANSWER: Because the Court dismissed this claim and ruled that the only claim that Plaintiff may assert against Defendant is Plaintiff's individual capacity claim against Defendant (*see* ECF No. 70, PageID.469; ECF No. 70, PageID.484-85), no answer is required. Nonetheless, to the extent an answer is required, Defendant denies the allegations of Paragraph 217 of Plaintiff's FAC for the reason that they are untrue.**

## DAMAGES

218.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:  In response to Paragraph 218 of Plaintiff's Complaint, Defendant incorporates and realleges each and every answer stated in response to Paragraphs 1 through 217 as if fully stated and set forth herein.**

219.    As a direct and proximate result of the above-described conduct, Plaintiff suffered general, specific, incidental and consequential injuries and damages, past, present and future, in excess of the jurisdictional threshold of this Court, an amount that shall be fully proven at the time of trial. These past, present, and future damages include, but are not limited to, the following:

a.    Pain, suffering, and mental and emotional distress;

b.    Physical manifestations of emotional distress including embarrassment, loss of self-

esteem, disgrace, and humiliation;

c.      Damage to employment and employment prospects;

d.      Damage to professional reputation;

e.      Economic loss;

f.      All other ordinary, incidental, or consequential damages that would or could be

reasonably anticipated to arise under the circumstances.

**ANSWER: In response to Paragraph 219 of Plaintiff's FAC, including all subparts, Defendant denies the allegations therein.**

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, and award costs, including attorney fees, as the premises permit, to Defendant.

Respectfully submitted,

STARR, BUTLER & STONER, PLLC

By:     s/ Zachary S. Jugan
        Daniel C. Waslawski (P78037)
        Zachary S. Jugan (P80944)
        Attorneys for Defendant Denno, only
        20700 Civic Center Dr., Ste. 290
        Southfield, MI  48076
        (248) 554-2700
        dwaslawski@starrbutler.com
Dated: June 11, 2025        zjugan@starrbutler.com

## LIMITED RELIANCE UPON AND OBJECTION TO JURY DEMAND

Defendant, Dennis Denno (Defendant"), through his attorneys, Starr, Butler & Stoner, PLLC, hereby states his limited reliance upon the jury demand previously made herein and, further, hereby demands a jury trial as to all legal claims and defenses at issue in this litigation, with the exception of any and all claims that sound in equity or which in the underlying matter, intrinsically

involve issues of law for the trial judge to decide and which, therefore, are properly triable only

by the judge assigned to this case.

Respectfully submitted,

STARR, BUTLER & STONER, PLLC

By:    s/ Zachary S. Jugan
        Daniel C. Waslawski (P78037)
        Zachary S. Jugan (P80944)
        Attorneys for Defendant Denno, only
        20700 Civic Center Dr., Ste. 290
        Southfield, MI  48076
        (248) 554-2700
        dwaslawski@starrbutler.com
Dated: June 11, 2025    zjugan@starrbutler.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

          Plaintiff,                            Case No. 24-1029

v.

                                                Hon. Hala Y. Jarbou

MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES, DIANNE
BYRUM, in her individual and official
capacities, DENNIS DENNO, in his
individual and official capacities, DAN
KELLY, in his individual and official
capacities, RENEE KNAKE JEFFERSON,
in her individual and official capacities,
SANDY PIERCE, in her individual and
official capacities, BRIANNA T. SCOTT,
in her individual and official capacities,
KELLY TEBAY, in her individual and official
capacities, and REMA VASSAR, in her
individual and official capacities,

          Defendants.

---

## **<u>DEFENDANT DENNIS DENNO'S AFFIRMATIVE DEFENSES</u>**

Defendant, Dennis Denno ("Defendant"), by and through his attorneys, Starr, Butler &
Stoner, PLLC, states as follows for his Affirmative Defenses to Plaintiff's FAC:

1.      Plaintiff's FAC, in whole or in part, fails to state a claim upon which relief can be
granted as a matter of fact and/or law.

2.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of
limitations, contractual limitation period(s), and/or jurisdictional prerequisites.

3.      Plaintiff's claims, in whole or in part, are barred because Plaintiffs did not suffer
any harm or damages attributable to Defendant.

4.      Plaintiff is estopped due to his own actions, omissions, statements, conduct, and/or
misconduct.

{00130582.DOCX}

5.      Plaintiff's claims and/or alleged damages, in whole or in part, are barred because the law does not entitle Plaintiff to the damages and/or relief sought and/or damages are speculative.

6.      Plaintiff's claims are barred, in whole or in part, because Defendant did not cause any injuries or damages allegedly sustained by Plaintiff.

7.      Plaintiff's claims, in whole or in part, are barred because Defendant at all times acted in compliance with the Michigan State University Board of Trustees Bylaws.

8.      The actions of Defendant were, at all times, justified, necessary, and with sufficient legal cause, and in conformity with settled principles of law.

9.      Plaintiff's claims, in whole or in part, are barred because Defendant did not owe Plaintiff any legal duty.

10.     Plaintiff's claims, in whole or in part, are barred because Defendant did not breach any legal duty allegedly owed to Plaintiff.

11.     Plaintiff's claims, in whole or in part, are barred based on Plaintiff's failure to exhaust all contractual remedies, administrative remedies, and/or internal remedies.

12.     Plaintiff did not suffer an adverse employment action.

13.     Defendant acted at all times within the bounds of good faith and for legitimate, non-retaliatory business reasons.

14.     Plaintiff's claims, in whole or in part, are barred because Plaintiff was not engaged in a constitutionally protected activity.

15.     Plaintiff's claims, in whole or in part, are barred because any alleged adverse action did not cause Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.

16.     Plaintiff's claims, in whole or in part, are barred because any alleged adverse action was not motivated as a response to Plaintiff's alleges exercise of his constitutional rights.

17.     Plaintiff's claims are barred, in whole or in part, because Defendant is entitled to absolute and/or qualified immunity granted by law.

18.     Plaintiff's claims are barred, in whole or in part, because Defendant is entitled to governmental and/or sovereign immunity granted by law.

19.     Plaintiff's claims, in whole or in part, are barred because Defendant is immune from suit under the Eleventh Amendment.

20.     Plaintiff's claims, in whole or in part, are barred because Plaintiff did not suffer any actual deprivation of any rights secured by the U.S. Constitution or laws of either the United States or the State of Michigan.

21.     Plaintiff's claims, in whole or in part, are barred because Plaintiff did not suffer any actual deprivation of any rights secured by the U.S. Constitution or laws of either the United States or the State of Michigan by a person acting under the color of state law.

22.     Plaintiff's claims, in whole or in part, are barred because any alleged statements made by Defendant in his individual capacity are protected by the First Amendment.

23.     Plaintiff's claims, in whole or in part, are barred because Plaintiff's FAC fails to plead conspiracy with the requisite specificity.

24.     Plaintiff's claims, in whole or in part, are barred because Plaintiff's FAC is devoid of any facts plausibly alleging an ongoing violation of Plaintiff's First Amendment rights.

25.     Plaintiff's claims, in whole or in part, are barred because Defendant cannot be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

26.     Plaintiff is not entitled to injunctive relief.

{00130582.DOCX}                                3

27.    There is no surviving cause of action for which the remedy of an injunction could be granted.

28.    Plaintiff has failed to mitigate his alleged damages, entitlement to which is expressly denied, and/or Defendant is entitled to a setoff of any interim earnings.

29.    Plaintiff's request for punitive damages is barred because the legal and/or factual bases for his claims do not permit the recovery of punitive damages.

30.    Defendant reserves the right to add additional affirmative defenses as may be learned in the course of discovery proceedings or otherwise.

Respectfully submitted,

STARR, BUTLER & STONER, PLLC

By:    s/ Zachary S. Jugan
Daniel C. Waslawski (P78037)
Zachary S. Jugan (P80944)
Attorneys for Defendant Denno, only
20700 Civic Center Dr., Ste. 290
Southfield, MI  48076
(248) 554-2700
dwaslawski@starrbutler.com
Dated: June 11, 2025          zjugan@starrbutler.com

## CERTIFICATE OF SERVICE

The undersigned says that on June 11, 2025, she has caused to be served a copy of **Defendant Dennis Denno's Answer to First Amended Complaint, Limited Reliance Upon and Objection to Jury Demand and Affirmative Defenses** and this **Certificate of Service** via the Court's electronic filing system upon all attorneys of record.

s/ Kiersten Plane