UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JACK LIPTON,

     Plaintiff,

                                 Case No. 1:24-cv-01029-HYJ-SJB

v.

                                 Hon. Hala Y. Jarbou

MICHIGAN STATE UNIVERSITY BOARD OF    Magistrate Judge Sally J. Berens
TRUSTEES et al.,

     Defendants.

---

**ANSWER, AFFIRMATIVE DEFENSES AND LIMITED
<u>RELIANCE ON JURY DEMAND BY DEFENDANT REMA VASSAR</u>**

Defendant Rema Vassar ("Dr. Vassar"), through her counsel, for her Answer to the

Amended Complaint, states as follows:

1.      Dr. Jack Lipton is the Founding Chair of the Department of Translational

Neuroscience and Associate Dean for Research Analytics in the College of Human Medicine at

Michigan State University ("MSU").

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 1 of the Amended

Complaint because she lacks information sufficient to form a belief as to their truth and, therefore,

leaves Plaintiff to his proofs.

2.      Prior to MSU, Dr. Lipton was the Founding Director of the Division of

Neuropharmacology in the Department of Psychiatry at the University of Cincinnati.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 2 of the Amended

Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

3.      While at the University of Cincinnati, he and his colleagues were awarded a Morris K. Udall Center of Excellence in Parkinson's Disease Research, one of only ten in the country, from the National Institutes of Health ("NIH").

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 3 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

4.      In 2009, Dr. Lipton and three of his University of Cincinnati colleagues were recruited to MSU to establish a neuroscience-focused department, with the Udall Center serving as a marquee program for this high-profile recruitment.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 4 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

5.      Dr. Lipton founded the Department of Translational Neuroscience in 2012, which is now housed in MSU's Grand Rapids Research Center.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 5 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

6.      Under Dr. Lipton's leadership, the Department of Translational Neuroscience has

been awarded over $100 million in research grants.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 6 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

7.    A notable grant included within this $100 million is the Michigan Alzheimer's Disease Research Center, a multi-university grant promoting care for individuals and families affected by memory loss and working to resolve racial and ethnic disparities for Alzheimer's Disease and related dementias.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 7 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

8.    Also of note, Dr. Lipton was awarded a Michigan Sequencing Academic Partnership for Public Health Innovation and Response ("MI-SAPPHIRE") grant at MSU totaling more than $5 million, to enable MSU and health care partners to increase the State of Michigan's ability to manage current and future pathogens and increase pandemic preparedness, with a specific focus on marginalized and medically underserved populations.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 8 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

9.    This award was a direct result of Dr. Lipton's advocacy for the health and welfare

of the MSU community, for which he proposed, spearheaded, developed, and directed MSU's Early Detection COVID-19 program in 2020, pioneering a saliva-based testing protocol that enabled MSU students, staff, and faculty to return to work, learning, and research during the pandemic.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 9 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

10.    Dr. Lipton is an internationally respected researcher in neurodegenerative disorders and diseases whose work has been cited over 6400 times in scientific literature.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 10 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

11.    Dr. Lipton was elected to serve as the Chair of MSU's Faculty Senate from August 16, 2023 to August 15, 2024.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 11 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

12.    The Faculty Senate Chair is a liaison to the Board of Trustees ("BOT") for over 3800 faculty members and delivers a formal address to the Board at each public meeting on behalf of the faculty they represent.

**ANSWER:**

Dr. Vassar admits only that the Faculty Senate Chairperson is a liaison to the Board of Trustees and that the Faculty Senate Chairperson reports to the Board of Trustees in that capacity. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 12 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

13.     On October 20, 2023, MSU Trustee Brianna Scott sent the BOT an open letter alleging ethical violations by MSU BOT Chair Rema Vassar and calling for Vassar's resignation.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 13 of the Amended Complaint.

14.     On October 27, 2023, a Board of Trustees meeting was held, during which multiple individuals spoke on the question of whether Vassar should resign, including Dr. Lipton in his role as Faculty Senate Chair.

**ANSWER:**

Dr. Vassar admits that there was a Board of Trustees meeting on October 27, 2023 and Plaintiff spoke at that meeting in his role as Faculty Senate Chair, that other persons spoke at that meeting and that the question of whether Dr. Vassar should resign was one of the subject on which Plaintiff and others spoke. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 14 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

15.     During his address, Dr. Lipton read a passed resolution from the Faculty Senate that requested further investigation into Vassar's actions and called for Vassar's resignation.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 15 of the Amended Complaint.

16.    Chair Vassar and MSU Trustee Dennis Denno had coordinated a large number of Vassar supporters to be in attendance, which ultimately resulted in an unusual level of disorder and chaos. The meeting and resulting chaos garnered widespread public attention.

**ANSWER:**

Dr. Vassar admits only that the meeting garnered widespread public attention, but denies the remaining allegations in paragraph 16 because they are not true.

17.    After the meeting, Dr. Lipton was approached by reporters for his perspective on the chaos. He stated that, in his opinion as a private individual,

> The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action," [Dr. Lipton] said. "The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room.

**ANSWER:**

Dr. Vassar denies that Plaintiff made this statement as a private individual. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 17 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

18.    After Dr. Lipton made these comments to The Detroit News, Vassar and Denno began a sustained effort of retaliation to discredit his truthful personal statements about the harm Vassar was causing the MSU community.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 18 because they are not true.

19.    Further in retaliation, in an effort to pit campus groups against Dr. Lipton for their

own political agenda, Vassar and Denno falsely accused Dr. Lipton of racism because he used the word "mob" in his statement.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 19 because they are not true.

20.     Vassar and Denno began encouraging MSU student groups to label Dr. Lipton a racist, publicly attack him in the media, post defamatory letters about him on social media and other public platforms, and file complaints with MSU's internal civil rights office as well as its external accrediting body accusing Dr. Lipton of race discrimination.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 20 of the Amended Complaint because they are not true.

21.     Vassar and Denno met with MSU student leaders and group members, advising them on the content of their letters and complaints against Dr. Lipton, and promising to support these students in planned statements they would make during public comments at upcoming meetings of the Board of Trustees.

**ANSWER:**

Dr. Vassar admits that she has met with MSU students and groups during her time as MSU Trustee. Dr. Vassar also admits that she would always support students in their advocacy and making their voices heard regardless of whether she agrees with what they wanted to say. Dr. Vassar denies the remaining allegations in paragraph 21 because they are not true.

22.     This support from Vassar and Denno also resulted in student groups requesting that leaders and members of the Black Faculty Staff and Administrators Association make public statements against Dr. Lipton.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 22 of the Amended Complaint because they are not true.

23.    Despite witnessing Vassar and Denno's unlawful retaliation during Board meetings, the Board of Trustees and named Board Members did not adequately respond either to support Dr. Lipton or to oppose or restrict Vassar and Denno's targeted attacks.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 23 of the Amended Complaint because they are not true.

24.    On December 15, 2023, Dr. Lipton apologized for his use of the word "mob" and acknowledged any unintentional racial interpretations of the word, but Vassar and Denno's harassment and incitement of accusations of racism against him continued.

**ANSWER:**

Dr. Vassar admits only that Plaintiff offered what he characterized as an apology for his prior statements, denied that she or Trustee Denno engaged in any lawful harassment or incitement and neither admits nor denies the remaining allegations in paragraph 24 of the Amended Complaint because she lacks information sufficient to for a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

25.    Vassar and Denno had a personal interest in attacking Dr. Lipton, as he continued to call for accountability in Vassar's violations of BOT ethical guidelines.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 25 because they are not true.

26.    As a result of Vassar and Denno's campaign of retaliation against Dr. Lipton for his

truthful speech, as well as the Board of Trustees and its individual Board Members' implicit approval of the unlawful retaliation, Dr. Lipton has suffered irreparable damage to his reputation and career and has been deterred from engaging in subsequent protected speech in violation of his rights under the First Amendment to the United States Constitution.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 26 because they are not true.

## JURISDICTION AND VENUE

27.    This Court has original jurisdiction over Plaintiff's federal and Constitutional claims under 28 U.S.C. §§ 1331 and 1361.

**ANSWER:**

Dr. Vassar denies that this Court can exercise subject matter jurisdiction over the claims in this case under the Eleventh Amendment and denies that this Court can exercise personal jurisdiction over her because the claims against her are barred by sovereign immunity.

28.    This Court has the authority to grant declaratory and injunctive relief and to compel or set aside agency action to address duties arising under the Constitution, laws, or treaties of the United States. 42 U.S.C. § 1983, 28 U.S.C. § 2201 and 5 U.S.C. §§ 702, 704, and 706.

**ANSWER:**

The allegations in paragraph 28 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that any "agency action" is involved, denies that 5 U.S.C. § 702, 704, and 706 have any applicability to the claims alleged in this case and denies that Plaintiff is entitled to any declaratory or injunctive relief in his favor.

29.    Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in and around East Lansing, Michigan.

9

**ANSWER:**

Dr. Vassar does not contest venue.

<h2 style="text-align:center">PARTIES</h2>

30.     Plaintiff Jack Lipton ("Dr. Lipton") is a resident of Kent County, State of Michigan, and at all relevant times was an employee of Defendant Michigan State University.

**ANSWER:**

Dr. Vassar admits that Plaintiff was an employee of Defendant Michigan State University, but neither admits nor denies the remaining allegations in paragraph 30 because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

31.     Michigan State University ("MSU") was at all relevant times and continues to be a public educational institution in East Lansing, Ingham County, Michigan, organized and existing under the laws of the State of Michigan.

**ANSWER:**

Dr. Vassar admits that MSU is a public body corporate, that it is a public institute of higher education, that it is located in East Lansing, Michigan and that it was organized and exists under the laws of the state of Michigan. Dr. Vassar denies the remaining allegations in paragraph 31 of the Amended Complaint.

32.     Defendant Michigan State University Board of Trustees ("Board of Trustees" or "BOT") is the governing body of MSU.

**ANSWER:**

Dr. Vassar admits only that the Board of Trustees is a governing body of MSU, but denies that it is the sole governing authority of MSU.

33.     The Board of Trustees is a creation of the Michigan Constitution, and its members

are appointed by the governor or elected into office. Mich. Const. art. 8, § 5.

**ANSWER:**

 Dr. Vassar admits the allegations in paragraph 33 of the Amended Complaint.

 34. The Board of Trustees has the power of general supervision over the institution.

**ANSWER:**

 Dr. Vassar admits the allegations in paragraph 34 of the Amended Complaint.

 35. The Board of Trustees exercises final authority in the government of MSU.

**ANSWER:**

 Dr. Vassar admits only that paragraph 36 of the Amended Complaint paraphrases language from the Preamble to the Bylaws of the Board of Trustees of MSU, but denies that this paragraph completely and accurate states the legal authority of the MSU Board of Trustees.

 36. As provided in the Board of Trustees Bylaws, "[t]he board, the administration, and the faculty carry out their respective responsibilities not as isolated entities, but as major and primary constituents of a total University organization and structure which remain mutually interdependent and must be supportive of each other's purposes, functions, and obligations."

**ANSWER:**

 Dr. Vassar admits only the allegations in paragraph 36 of the Amended Complaint quotes from Article VIII of the Bylaws of the Board of Board of Trustees of MSU, but denies that this paragraph completely and accurate describes the organization and structure of MSU.

 37. The Bylaws require the Board of Trustees to protect faculty in the exercise of the rights of academic freedom, which includes "the unfettered pursuit and transmission of truth by the faculty who serve as the guardians, interpreters, and transmitters of a great intellectual heritage."

**ANSWER:**

Dr. Vassar admits only that the allegations in paragraph 37 of the Amended Complaint quote from a sentence found in Article VIII of the Bylaws of the Board of Trustees of MSU, but denies that this paragraph completely and accurately states how the principle of academic freedom exists and is protected at MSU.

38.    The Bylaws further provide that "any restraints on the freedom of expression at the University must be limited to measures to protect such free inquiry and to ensure that they are consistent with the preservation of an organized society in which peaceful, democratic means for changes in the social structure are readily available."

**ANSWER:**

Dr. Vassar admits only that the allegations in paragraph 38 of the Amended Complaint quote from a sentence found in Preamble to the Bylaws of the Board of Trustees of MSU, but denies that this paragraph completely and accurately defines how freedom of expression is guaranteed and protected at MSU.

39. The chair and/or vice chair may be removed by vote of at least six members of the board.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 39 of the Amended Complaint.

40.    At all relevant times, Defendants Dianne Byrum, Dennis Denno, Dan Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna T. Scott, Kelly Tebay, and Rema Vassar ("the named Board Members") were and continue to be the individual members of the Board of Trustees.

**ANSWER:**

Dr. Vassar admits that these individuals were individual members of the MSU Board of

Trustees at the time this lawsuit was filed, but deny that all of them continue to be members of this Board because that allegation is no longer true.

41.    The named Board Members are being sued both in their individual capacities and in their official capacities as members of the Board of Trustees.

**ANSWER:**

Dr. Vassar admits only that Plaintiff has tried to sue the Members of the Board of Trustees in their individual and personal capacities, but denies the remaining allegations in paragraph 41, including the implication that she is liable in either her individual or official capacity because those allegations are not true.

42.    Pursuant to the Bylaws, "[t]he authority of the Trustees is conferred upon them as a board, and they can bind the corporation and the University only by acting together as a board. No individual member shall commit the board to any policy, declaration, or action without prior approval of the board."

**ANSWER:**

Dr. Vassar admits only that the allegations in paragraph 42 of the Amended Complaint quote from a sentence found in Article VIII of the Bylaws of the Board of Trustees of MSU, but denies that this paragraph completely and accurately states the legal authority of the Board of Trustees.

## APPLICABLE LAW AND POLICY

43.    The First Amendment to the United States Constitution provides that Congress shall make no law "abridging the freedom of speech." U.S. Const. amend. I.

**ANSWER:**

The allegations in paragraph 43 are legal conclusions to which no response is required. To

the extent a response is required, Dr. Vassar denies that paragraph 43 accurately and completely summarizes the holdings of the case law cited therein.

44.     In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the United States Supreme Court held that students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

**ANSWER:**

The allegations in paragraph 44 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that paragraph 44 accurately and completely summarizes the holdings of the case law cited therein.

45.     In *Healy v. James*, 408 U.S. 169 (1972), the Supreme Court held that the First Amendment applies with the same force at public universities as at other educational institutions.

**ANSWER:**

The allegations in paragraph 45 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that paragraph 45 accurately and completely summarizes the holdings of the case law cited therein.

46.     First Amendment retaliation claims apply to public officials speaking as private citizens on matters of public concern. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017); *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

**ANSWER:**

The allegations in paragraph 46 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that paragraph 46 accurately and completely summarizes the holdings of the case law cited therein.

47.     In *Kentucky v. Graham*, the Supreme Court held that personal-capacity suits seek

to impose personal liability upon a government official for actions they take under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which [a government official] is an agent." 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978).

**ANSWER:**

       The allegations in paragraph 47 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that paragraph 47 accurately and completely summarizes the holdings of the case law cited therein and denies that she is liable under *Monell* for *inter alia* the reasons stated by the Court when it dismissed Plaintiff's *Monell* claims..

       48.    To establish municipal liability under section 1983, a plaintiff must establish that (1) they have suffered a deprivation of a constitutionally protected interest and (2) that the deprivation was caused by an official policy, custom, or usage of the municipality. *Monell*, 436 U.S. at 694.

**ANSWER:**

       The allegations in paragraph 48 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that she is liable under *Monell* for *inter alia* the reasons stated by the Court when it dismissed Plaintiff's *Monell* claims.

**FACTUAL ALLEGATIONS**

**Dr. Lipton's Academic Background and Credentials**

       49.    Dr. Lipton served as the Division Director for the Division of Translational Science and Molecular Medicine from 2009-2012 and was then appointed as the Founding Chair of the Department of Translational Neuroscience when it was established at MSU in 2012 and maintains that position presently.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 49 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

50.    Dr. Lipton recently took on the additional role as the Associate Dean of Research Analytics in the College of Human Medicine at MSU in May 2024.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 51 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

51.    During Dr. Lipton's tenure at MSU, he founded the Department of Translational Neuroscience, oversaw a massive growth in nationally competitive research awards in neuroscience-related biomedical research at MSU, developed and directed the COVID-19 testing program at MSU running over 700,000 tests, and was at the forefront in advocating for national university preparedness for future biomedical disasters by utilizing the resources and intellectual assets of biomedical research units.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 51 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

52.    Dr. Lipton is a nationally recognized neuroscientist whose research has been cited by other scientists over 6400 times, and who serves as the president of a national society of neuroscience leaders, the American Society of Medical School Neuroscience Department Chairs.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 52 of the Amended
Complaint because she lacks information sufficient to form a belief as to their truth and, therefore,
leaves Plaintiff to his proofs.

53.    Dr. Lipton also served as the MSU Faculty Senate Chair, an elected position
representing MSU's approximately 3800 faculty members, from August 16, 2023, through August
15, 2024.

**ANSWER:**

Dr. Vassar admits only that Plaintiff served as MSU Faculty Senate Chair in 2023 and 2024,
but neither admits nor denies the remaining allegations in paragraph 53 of the Amended Complaint
because she lacks information sufficient to form a belief as to their truth and, therefore, leaves
Plaintiff to his proofs.

54.    On August 16, 2024, Dr. Lipton began serving as the Faculty Senate Vice-Chair.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 54 of the Amended
Complaint because she lacks information sufficient to form a belief as to their truth and, therefore,
leaves Plaintiff to his proofs.

**Ethical and Conduct Allegations against MSU Board of Trustees Chair Rema Vassar**

55.    On October 20, 2023, Trustee Brianna Scott issued an open letter to the Board of
Trustees detailing numerous alleged ethical violations by Vassar, ultimately calling for the
resignation or removal of Vassar from the Board.

**ANSWER:**

Dr. Vassar admits only that Trustee Brianna Scott issued an open letter to the Board of

Trustees and that her letter made allegations against Dr. Vassar, but denies the remaining allegations in paragraph 55 of the Amended Complaint.

56.    Scott's allegations against Vassar included the following:

a.    Acting outside the scope of her authority as a Board Member and Board Chair;

b.    Inappropriately accepting benefits from members of the MSU community in violation of the BOT Code of Ethics and Conduct;

c.    Bullying and threatening former Interim President Theresa Woodruff; and, most tellingly,

d.    Threatening to falsely label BOT members as "racist" if they did not side with Vassar on a Bylaws amendment question.

**ANSWER:**

Dr. Vassar admits only that Trustee Brianna Scott's letter contains these allegations, but denies the remaining allegations in paragraph 56 of the Amended Complaint.

57.    On or around October 26, 2023, due to the concerning nature of Scott's allegations and the potential impact of Vassar's alleged actions on MSU students and the university community, the Faculty Senate voted in favor of calling for the resignation of Vassar from the BOT, in favor of filing a complaint with the Higher Learning Commission ("HLC") to investigate violations of accreditation, and in favor of making a separate request to the HLC for professional development training for the members of the MSU Board of Trustees.

**ANSWER:**

Dr. Vassar admits that the Faculty Senate approved a resolution that is dated October 26, 2023 and that this resolution calls for the resignation of Dr. Vassar, approves filing a complaint with HLC and requests professional development training for members of the MSU Board of

Trustees. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 57 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

58.    Following that Faculty Senate resolution, the Faculty Senate filed a complaint against Vassar with the HLC, signed by Dr. Lipton on behalf of the Faculty Senate, and based specifically on several allegations detailed in Scott's letter.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 58 of the Amended Complaint.

59.    The Faculty Senate's HLC Complaint cited the following incidents as violations of board conduct as laid out in the rules for university accreditation: 1) Vassar, as the chair of the MSU Board of Trustees, appearing in a magazine advertisement endorsing Spartan Wealth Management—a private business led by a former MSU Trustee; 2) that Vassar accepted items of value by traveling to a February 4, 2023, MSU basketball game at Madison Square Garden in New York on a private jet owned by an MSU donor and by sitting in court-side seats next to the donor; and 3) that Vassar, "without the knowledge or participation of the interim president," met "with Lansing officials to pitch moving university colleges and students to a Lansing site" rather than the East Lansing campus, usurping presidential authority and overstepping the Board's oversight role.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 59 to the extent that they are not consistent with the referenced HLC Complaint. She further denies that her conduct caused any impact upon MSU's accreditation by the HLC.

60.    These incidents violated either the Board's Code of Ethics and/or HLC criteria for

accreditation.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 60 of the Amended Complaint because they are not true.

61.    Following the Faculty Senate's call for Vassar's resignation, a meeting of the MSU Board of Trustees was held on October 27, 2023.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 61 of the Amended Complaint.

62.    At that meeting, a large contingent of Vassar's supporters was present—made up primarily of Michigan residents not affiliated with MSU, including Vassar's spouse and a number of her former sorority sisters, along with some students—and their actions caused the board meeting to devolve into chaos.

**ANSWER:**

Dr. Vassar admits that persons supporting her were present at October 27, 2023 meeting, that Dr. Vassar's husband, that Lucius Vassar was present and supports her, and that some students supporting Dr. Vassar were present. Dr. Vassar denies the remaining allegations in paragraph 62 of the Amended Complaint, including that it is somehow inappropriate for Michigan residents, whose taxes provide significant financial support to MSU, to attend or speak at a meeting of the Board of Trustees of MSU.

63.    When any meeting attendee spoke in support of holding Vassar accountable for her actions as outlined in Scott's letter, Vassar supporters interrupted and jeered them and attempted to prevent them from completing their statements.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 63 because they are not true.

64.     According to the Bylaws, "Those wishing to address the board must submit a Public Speaker Request Form to the secretary in advance of the posted deadline for doing so."

**ANSWER:**

Dr. Vassar admits that paragraph 64 of the Amended Complaint accurately quotes a portion of Article II of the Bylaws of MSU, but denies that this portion of the Bylaws is the sole criterion for determining whether a member of the public may speak at a public meeting of the MSU Board of Trustees.

65.     During the meeting's public participation phase, Vassar's spouse, Lucius Vassar, attempted to formally address the BOT without registering as a public speaker 48 hours in advance of the meeting, as required by the rules.

**ANSWER:**

Dr. Vassar admits only that Lucias Vassar attempted to make a public statement at the Board of Trustees meeting. Dr. Vassar denies the remaining allegations in paragraph 65 because they are not true, including, but not limited to, the fact that Mr. Vassar was speaking for Jayvonne Simmons, who, upon information and belief, had pre-registered to speak.

66.     After the Board Secretary noted this breach of protocol, Vassar supporters in the crowd made their own motion and voted amongst themselves to allow Lucius Vassar to speak.

**ANSWER:**

Dr. Vassar admits that members of the audience made their own motion to allow Lucias Vassar to speak, but neither admits nor denies the remaining allegations in paragraph 66 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and,

therefore, leaves Plaintiff to his proofs.

67.    The Board Secretary, who reports directly to Vassar, allowed Lucius Vassar to speak based on this vote of Vassar supporters, in clear violation of BOT meeting rules and the Bylaws.

**ANSWER:**

Dr. Vassar admits that Lucius Vassar was permitted to speak, but denies that the Board Secretary reports directly to Dr. Vassar and denies that the Board Secretary presides at meeting of the MSU Board of Trustees. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 67 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

68.    As the Chair of the Board of Trustees, Vassar neither intervened to call her supporters to order—not even when at least one attendee was escorted out of the meeting by police officers—nor did she uphold the rules of order governing Board of Trustees meetings.

**ANSWER:**

Dr. Vassar denies that the Chair of the MSU Board of Trustees presides over meetings of the Board of Trustees and denies that the Chair of the MSU Board of Trustees has the duty to uphold the rules of order governing Board of Trustees meetings. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 68 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

69.    During the BOT meeting, Trustee Renee Knake Jefferson corroborated Scott's allegation that Chair Vassar threatened to label her opponents as racist:

> And then on the amendment to the Chair selection process. So, the recently adopted amendment that changes the Chair selection process is a reform that the Board has been considering since at least 2019. And Chair Vassar stated during the work session that, when we discussed it, that she would publicly call those of us supporting that change as racist, and she followed through on that.

22

**ANSWER:**

Dr. Vassar admits only that Trustee Jefferson made this statement, but denies that the statement accurately reflects Dr. Vassar's statements during the referenced work session.

70.     Following the board meeting, a reporter asked Dr. Lipton for his perspective on how Scott's allegations of bullying and misconduct, along with the Faculty Senate's votes to mitigate any damage to the university community as a result of Vassar's actions, had been addressed.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 70 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

71.     In response to the reporter's request, Dr. Lipton noted that he would speak as a private individual and not on behalf of the Faculty Senate, then made the following statement to The Detroit News, which was published in an article on October 29, 2023: "The board meeting yesterday, filled with Chair Vassar supporters, demonstrated Trustee Scott's charges of intimidation and bullying in action. The chaos brought and disrespect shown by her supporters could have been stopped by a single statement from Chair Vassar, yet she elected to let the mob rule the room."

**ANSWER:**

Dr. Vassar denies that Plaintiff was speaking as a private individual because that allegation is not true. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 71 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

72.     Dr. Lipton's use of "mob rule" concerned the public attendees who had usurped the authority of the BOT by proposing and passing a motion—in violation of meeting rules—and whose motion had then been allowed to stand as legitimate by and to the benefit of Vassar.

**ANSWER:**

Dr. Vassar neither admits nor denies what Dr. Lipton intended by his statement because she lacks information sufficient to form a belief as to the truth of this allegation. Dr. Vassar denies the remaining allegations in paragraph 72.

73.     On or around October 27, 2023, Vassar requested a meeting with Dr. Lipton to discuss the Faculty Senate resolution. Dr. Lipton responded on October 30, 2023, agreeing to meet.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 73 of the Amended Complaint.

**MSU Board of Trustee Chair Vassar and Member Dennis Denno Begin a Sustained Campaign of Retaliation against Dr. Lipton**

74.     On or around October 31, 2023, Vassar amended her meeting request via email to include the following: "I would also like to address my concern regarding your depiction of our Black students."

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 74 of the Amended Complaint.

75.     When Dr. Lipton re-confirmed his agreement to meet and requested a time and date for the meeting, Vassar retracted her offer to meet through a message from the Board Secretary.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 75 because they are not true.

76.     In parallel, Vassar's supporters began to accuse Dr. Lipton of using racially charged language and exhibiting racial bias in his statement to The Detroit News, in particular citing to his

use of the word "mob."

**ANSWER:**

Dr. Vassar denies that she was working in parallel or coordinating the activities of others. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 76 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

77.    On or around November 1, 2023, Vassar and Denno met with MSU students and encouraged them to attack Dr. Lipton and file false complaints of race discrimination against him.

**ANSWER:**

Dr. Vassar admits only that she has met with MSU students, but denies the remaining allegations because they are not true.

78.    On November 2, 2023, the National Association for the Advancement of Colored People ("NAACP") Michigan State Conference Youth & College Division released a statement accusing Dr. Lipton of "racial terrorism."

**ANSWER:**

Dr. Vassar neither admits nor denies that the NAACP Michigan State Conference Youth & College Division released a statement on November 2, 2023 or that this statement is accurately paraphrased in paragraph 78 of the Amended Complaint because she lacks information sufficient to form a belief as to the truth of this allegation. Dr. Vassar  deny the implication that she is responsible for this alleged statement being issued.

79.    On November 4, 2023, the MSU Black Students Alliance ("BSA") issued a similar statement, accusing Dr. Lipton of "targeting a specific racial group," of engaging in "a direct attack on Black students' character," and of "[e]luding [sic] that black students intend to cause violence."

**ANSWER:**

Dr. Vassar neither admits nor denies that the MSUB SA issued "a similar statement" on November 4, 2023 or that the statement had the content alleged by paragraph 79 of the Amended Complaint because she lacks information sufficient to form a belief as to the truth of these allegations. Dr. Vassar  deny the implication that she is responsible for the MSU BSA statement.

80.    On November 14, 2023, the MSU Black Faculty, Staff and Administrators Association ("BFSAA") released a similar public statement.

**ANSWER:**

Dr. Vassar neither admits nor denies that BFSAA released "a similar public statement" on November 14, 2023 because she lacks information sufficient to form a belief as to the truth of this allegation. Dr. Vassar  deny the implication that she is responsible for the BFSAA statement.

81.    On November 20, 2023, the organization Diverse: Issues In Higher Education, on their nationally known website, published an op-ed authored by Vassar associate Clyde Barnett III, who accused Dr. Lipton of using the term "mob" in an effort to traumatize and silence students who are Black and Palestinian.

**ANSWER:**

Dr. Vassar admits only that she knows Clyde Barnett III and has cooperated with him on other matters, but denies that she was responsible for his writing this op-ed. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 81 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

82.    Upon information and belief, student Miselo Chola also filed a complaint with MSU's Office of Institutional Equity ("OIE") accusing Dr. Lipton of race discrimination.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 82 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

83.    Upon information and belief, Chola filed the complaint at Vassar's behest.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 83 because they are not true.

84.    On December 14, 2023, the MSU Board of Trustees held a private virtual lunch meeting with faculty liaisons, including Dr. Lipton, board members, and top MSU administrators.

**ANSWER:**

Dr. Vassar admits that there was a lunch working session of the Board of Trustees on December 14 and that this meeting was attended by Plaintiff, Board Members and MSU administrators, but denies the remaining allegations in paragraph 84 because they are not true.

85.    All of the named Board Members were in attendance at the December 14, 2023 meeting.

**ANSWER:**

Dr Vassar admits the allegations in paragraph 85 of the Amended Complaint.

86.    During that meeting, Trustee Dennis Denno read a prepared statement in which he and Vassar accused Dr. Lipton of "criminalizing students."

**ANSWER:**

Dr. Vassar denies that any statement made by Trustee Denno was made on her behalf and neither admits nor denies the remaining allegations in paragraph 86 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves

27

Plaintiff to his proofs.

87.    Denno characterized Dr. Lipton's use of the word "mob" as "racism and violent language."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 87 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

88.    Denno—who, as a member of the Board of Trustees, approves promotion and tenure for faculty at MSU—also suggested that other members of the Faculty Senate were not performing their duties as both senators and academics at the university:

> [Dr. Lipton] criminalized our African American, Arab American, and Muslim American students. And I'm really disappointed in the so-called leaders of the Faculty Senate for not speaking out against him. And that's your job. And if you're going to not speak out against racism and violent language, you're not very good academics.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 88 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

89.    None of the named Board Members or MSU administrators interjected to provide support to Dr. Lipton during this meeting.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 89 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

90.    Two hours later, the Instagram account of the MSU Hurriya Coalition, which

defines itself as "a collective of 20+ organizations fighting for freedom & justice in Palestine at MSU," posted an image of a complaint filed with the HLC against Dr. Lipton.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 90 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

91.    The complaint accused Dr. Lipton of "criminalizing" students—the very same language Denno had used at the lunch meeting two hours earlier.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 91 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

92.    Further, Denno encouraged Arab-American student organizations to attack Dr. Lipton in the media and in complaints to the university.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 92 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

93.    Denno told students, "The other thing you can do to help us [referring to himself and Chair Vassar], at least for me, is attack Jack Lipton, the Chair of the Faculty Senate. I mean this guy called you a mob . . . call him out, call him a racist."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 93 of the Amended

Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

94.     Denno instructed one Palestinian student activist via text, seeking advice on how to frame their statement to the press: "As an Arab American, Palestinian American, u [sic] feel threatened by Jack Lipton's racist comment calling u [sic] a part of a mob. He obviously has an anger management issue and the Faculty Senate should censure him."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 94 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

95.     According to the university's third-party investigation into the content of Scott's allegations and the ensuing events, the Miller & Chevalier Report found:

a.     "[Student] Interviewee 10 shared text messages reflecting that on November 14, 2023, Trustee Denno provided them with the email address of The Detroit News reporter that published Dr. Lipton' statement. Interviewee 10 asked Trustee Denno about what they should say to the reporter, to which Trustee Denno replied 'Lipton=racist;'" and

b.     Interviewee 10 told Miller & Chevalier that Chair Vassar and Trustee Denno pushed students to file the HLC report against Dr. Lipton.

**ANSWER:**

Dr. Vassar admits only that the Miller & Chevalier report states what is alleged in paragraph 95 of the Amended Complaint. Dr. Vassar denies that she pushed any students to file the HLC report against Dr. Lipton. Dr. Vassar nether admits nor denies the remaining allegations in

paragraph 95 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

96.    Rather than working to ensure that the upcoming December 15, 2023, Board of Trustees meeting did not escalate as it did on October 27, upon information and belief, Vassar and Denno instead organized students to accuse Dr. Lipton of a range of allegations during the public comment portion of the meeting—from "criminalizing students" to secretly interfering with the presidential search.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 96 because they are not true.

97.    The December 15 Board of Trustees meeting was held virtually because of the security concerns that arose due to the Board's failure to properly manage the October 27 meeting.

**ANSWER:**

Dr. Vassar admits only that the December 15 Board of Trustees meeting was held virtually, but denies the remaining allegations in paragraph 97 of the Amended Complaint.

98.    During the virtual December 15 meeting, press images clearly show Vassar and Denno attending the meeting together in the same room with multiple student members of BSA, MSU NAACP, and the MSU Hurriya Coalition, many of whom disparaged Dr. Lipton during the public comments portion of the meeting.

**ANSWER:**

Dr. Vassar admits only that MSU students, likely including members of the groups listed among other groups, joined her and Trustee Denno in the room where she and Trustee Denno were attending the virtual December 15, 2023 Board of Trustees Meeting, Dr. Vassar denies that any students disparaged Dr. Lipton because that allegation is not true. Dr. Vassar neither admits nor

denies the remaining allegations in paragraph 98 of the Amended Complaint because she lacks evidence sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

99.    Vassar and Denno's meeting with the students took place on-campus.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 99 of the Amended Complaint.

100.    Upon information and belief, the students were planning to attend the meeting in person, but at the last minute, Vassar and Denno invited them to participate virtually in the same room with them.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 100 of the Amended Complaint because they are not true.

101.    Vassar and Denno publicly identified themselves as Trustees before, during, and after the meeting.

**ANSWER:**

Dr. Vassar admits only that she was acting as a Trustee at this meeting, but denies that she or Mr. Denno identified themselves as Trustees at this meeting. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 101 because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

102.    The students and individuals who spoke out against Dr. Lipton in the meeting all used the same or similar language to refer to Dr. Lipton as a "racist," as causing the "criminalization" of students, and as creating a hostile and unsafe environment for learning at MSU.

**ANSWER:**

Dr. Vassar admits only that persons critical of Plaintiff used similar language when describing their concerns about him and his statements. Dr. Vassar denies the implication that she encouraged anyone to make the specific statements that they made at this meeting and denies that she is legally responsible for these statements being made. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 102 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs

103.    The audio recording of the December 15, 2023 meeting includes audible background noises and shouts from students in the background when Vassar and Denno each spoke.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 103 of the Amended Complaint because she lacks evidence sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

104.    Vassar and Denno's decision to participate in the virtual meeting in person with students who had organized to disparage Dr. Lipton provides clear evidence of their continued support and encouragement of the students' harassment of Dr. Lipton in their official capacity as Trustees of the MSU Board.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 104 of the Amended Complaint because they are not true.

105.    All of the named Board Members virtually attended the December 15, 2023 meeting.

33

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 105 of the Amended Complaint.

106.    None of the named Board Members or MSU administrators interjected to provide support to Dr. Lipton during this meeting.

**ANSWER:**

Dr. Vassar neither admits nor denies the remaining allegations in paragraph 106 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs

107.    This coordinated retaliation further harmed Dr. Lipton's professional reputation and access to opportunities both within and outside of MSU.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 107 of the Amended Complaint because they are not true.

108.    Following Vassar and Denno's instructions that students should file complaints and send letters against Dr. Lipton, and Denno's implication that the Faculty Senate members were not quality academics, some MSU faculty members began to distance themselves from Dr. Lipton.

**ANSWER:**

Dr. Vassar denies that she instructed any students to file complaints or send letters against Dr. Lipton. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 108 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

109.    At a Faculty Senate meeting on November 21, 2023, at-large Faculty Senate member d'Ann de Simone, said, in reference to Dr. Lipton's October 29 statement to The Detroit

News,

> This statement is in response to students, senators, and colleagues who have voiced concern over language used to describe the October 27th meeting of the Board of Trustees and the remarks that were mentioned earlier today. I would like to say on behalf of my colleagues that comments at academic governance meetings and in the press represent an individual and do not necessarily represent the views of the MSU Faculty Senate.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 109 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

110.    The Faculty Senate meetings in which members spoke out against Dr. Lipton were recorded and open to all MSU faculty members, further harming Dr. Lipton's name and reputation among his colleagues, peers, and the university community at large.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 110 of the Amended Complaint because she lacks evidence sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

111.    As Vassar and Denno well knew, Dr. Lipton did not and has never made any racially biased statements and is not racist.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 111 of the Amended Complaint because they are not true.

112.    Upon information and belief, Denno chose to encourage pro-Palestine Arab American students to disparage Dr. Lipton because Dr. Lipton is Jewish.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 112 of the Amended Complaint because they are not true.

113.   On December 15, 2023, at the very next Board of Trustees meeting after the October 27 meeting, Dr. Lipton apologized for using the word "mob" in his comments to The Detroit News and clarified that he did not use that word with any racial or discriminatory intent but only to characterize the lack of order of the October 27 meeting. He said:

> With respect to Board meetings and discourse, unlike most meetings at this body, today's session is virtual. Let's be clear, we are on Zoom today because eight officials who are elected state-wide to oversee this institution were unable or unwilling to maintain basic order in the room on October 27. Everyone who signs up to address the Board is, of course, free to share their views. No one is entitled to interrupt others, let alone shout at or belittle them. No one. Regardless of what position they are taking on what issue. This includes specific members of the board, when working in meetings with faculty. Those at the board table oversee a $4 billion budget but were unprepared to manage a meeting for just a few hours. Time limits were ignored, members of the audience conducted a vote on whether to let the Chairperson's husband speak despite not signing up to do so, and the Board Secretary permitted it. Trustee Denno put forth a resolution to release the Nassar documents when he knew it was out of order. That complete dysfunction and the virtual meeting it resulted in are testaments to the entitlement, lack of leadership, and theatrics that permeate the board. Such behaviors exemplify an uncurious and close-minded approach that is anathema to a healthy university culture. In a statement to the media about that chaos, I said that Chairperson Vassar allowed the mob to rule the room. My goal was to support Trustee Brianna Scott in her courageous attempt to hold the Chairperson accountable. A complaint to the Office of Institutional Equity was filed against me as a result of the use of the word mob. And I have heard from some members of our community who felt that the word mob was racially loaded. While I was not referring to members of any specific racial or ethnic groups, I recognize the impact of my statement on some Spartans was real and I apologize. I will certainly be more careful with my words in the future. Let me state unequivocally, that Black and Arab students as well as students of all races and ethnicities belong at Michigan State University and deserve to feel welcome here. Last night I joined

36

leadership from the Black Faculty, Staff, and Administrators Association for a valuable dialogue on my comments and how they were received. I left with a better understanding about how my statements made others feel and I hope that they left with a better understanding of the concern that I was trying to express. Nobody has the right to interrupt others during these meetings. I appreciate the BFSAA's time and willingness to engage with me on this topic. I really enjoyed the exchange. But let's be clear, this is a university. Universities exist to allow us to experience and participate in discourse. Let's demonstrate that we can all be in the same room, take turns talking, and speak our truths respectively. We can disagree, without ascribing motives to others. While Trustee Denno feels it appropriate to call me an Anti-Arab or Anti-Black racist, I don't think that our disagreements make him antisemitic. We simply disagree. I hope that we can focus on ideas instead of personalities in the future. To the public attending or participating in Board meetings, show the respect you expect of others when you speak. No one is trying to silence anyone. Let's just take turns talking. To the wider community, sometimes you might hear an opinion or an assertion that you don't agree with. I heard plenty today, including untrue suggestions that I tried to stop the presidential search, that I am a racist, that I criminalize students, that the complaint filed with the Higher Learning Commission was mine and not the Faculty Senate's, and that I am trying to hurt the Chairperson, rather than keep the Board accountable. But universities allow inquiry, discourse, and free speech. We should all respect it. To certain members of the board, please manage your meetings. Stay in your lane, and please end your coordinated, pervasive, and damaging retaliatory behavior against your Trustee colleagues, against members of the administration, and against faculty members now before our new president is seated. Thank you.

**ANSWER:**

Dr. Vassar admits only that Plaintiff made this statement at the December 15, 2023 Board of Trustees. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 113 of the Amended Complaint, including the genuineness of Plaintiff's purported apology, because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs

114.    The October 30, 2023 student-filed OIE complaint was closed without investigation and without making any finding against Dr. Lipton.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 114 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

115.    HLC closed the December 13, 2023 student-filed complaint, finding no grounds to investigate Dr. Lipton.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 115 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

### The Miller & Chevalier Investigation

116.    MSU hired independent law firm Miller & Chevalier to investigate the allegations against Vassar detailed in Scott's October 20 letter.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 116 of the Amended Complaint.

117.    Miller & Chevalier also investigated several other concerns raised during its investigatory interviews, including allegations made against Denno, and Dr. Lipton's comments to the Detroit News.

**ANSWER:**

Dr. Vassar admits only that the Miler & Chevalier report states that it performed such an investigation, but neither admits nor denies the remaining allegations in paragraph 117 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs

118.    Miller & Chevalier issued a report on February 28, 2024, finding that the students who had filed complaints and issued statements against Dr. Lipton were largely encouraged to do so by Vassar and Denno.

**ANSWER:**

Dr. Vassar admits only that the Miler & Chevalier report states this, but denies that this statement is accurate because that allegation is not true.

119.    One of the students identified in the Miller & Chevalier Report as "Interviewee 10" provided Miller & Chevalier with text messages and recordings of conversations, both written and verbal, in which Denno provided advice regarding the language to use in written complaints and letters against Dr. Lipton and advised the student to contact news outlets to disparage Dr. Lipton and label him a racist.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 119 because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

120.    According to the report, Denno also encouraged leaders of MSU student groups, namely Arab American and African American affinity groups, to further Denno's own agenda to disparage Dr. Lipton.

**ANSWER:**

Dr. Vassar admits only that the Report states this, denies that she provided students with any media outlet contract information to disparage Plaintiff and neither admits nor denies the remaining allegations in paragraph 120 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

121.    The report found that, on multiple occasions, Vassar and Denno coached and

assisted students in drafting complaints and letters accusing Dr. Lipton of racism to local news outlets hoping that MSU leadership might take action against him.

**ANSWER:**

Dr. Vassar admits only that the Report states this, but denies that this statement in the Report is true and affirmatively states that the Report is otherwise inaccurate and incomplete.

122.    Upon information and belief, some of these communications took place via Vassar and Denno's MSU email addresses.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 122.

123.    The report found that Vassar and Denno provided students with media outlet contact information to disparage Dr. Lipton.

**ANSWER:**

Dr. Vassar admits only that the Report states this, denies that she provided students with any media outlet contract information to disparage Plaintiff and neither admits nor denies the remaining allegations in paragraph 123 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

124.    The report found that Vassar and Denno organized the in-person gathering of representatives of African American and Arab American student affinity groups for the virtual December 15, 2023 Board of Trustees meeting.

**ANSWER:**

Dr. Vassar admits only that the Report states this, but neither admits nor denies the remaining allegations in paragraph 124 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

125.     In the report, Denno admitted to encouraging students to attack Dr. Lipton: "The other thing you can do to help [Vassar and me], at least for me, is attack Jack Lipton, the Chair of the Faculty Senate. I mean this guy called you a mob... call him out, call him a racist."

**ANSWER:**

Dr. Vassar admits only that the Report states this, but neither admits nor denies the remaining allegations in paragraph 125 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

126.     Denno's response to the allegation that he made the above statement was that he "probably said that" and that he doesn't "give a shit about Jack Lipton."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 126 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

127.     When investigators asked Denno about a recording of his voice in a meeting with students in which he stated, "This guy is supposed to be independent or non-partisan and he's a tool of the Administration and he's a tool to begin with." Denno told investigators, "I don't give two shits about Jack Lipton ... But he is a tool, so I probably did [make the statement]."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 127 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

128.     The Miller & Chevalier Report included text messages from student Miselo Chola stating that Vassar was "quite pissed" that HLC was not going to initiate an investigation into Dr.

41

Lipton.

**ANSWER:**

Dr. Vassar admits only that the Miller & Chevalier Report states that a student's text message noted that "Dr. Vassar is quite pissed too." Dr. Vassar denies that she was upset that HLC was not going to initiate an investigation into Dr. Lipton. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 128 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

129.    With respect to the October 27 meeting, the Miller & Chevalier Report found, "Without exception, the Interviewees described the meeting as chaotic, with participants shouting over each other and interrupting speakers. One Trustee reported feeling 'blindsided.' An Interviewee, who watched the hearing remotely, described being 'embarrassed' by the meeting dynamics and by the interactions between Chair Vassar and Trustee Scott."

**ANSWER:**

Dr. Vassar admits only that the Miller & Chevalier Report states this. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 129 of the Amended Complaint because she lacks evidence sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

130.    Vassar and Denno's knowingly false and defamatory claims against Dr. Lipton constitute clear retaliation from some of the most powerful people at MSU because he voiced an opinion, as a private individual, against Vassar's decision to not uphold meeting protocols during the October 27 board meeting.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 130 because they are not true.

131.    After the Miller & Chevalier Report was issued, the Board of Trustees voted on whether and how to discipline Vassar and Denno.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 131 of the Amended Complaint.

132.    The Board voted to censure Vassar and Denno and to refer the matter to Governor Gretchen Whitmer's office, as she has the legal authority to remove them from office.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 132 of the Amended Complaint.

133.    Specifically, each named Board Member, other than Vassar and Denno, voted to limit Vassar and Denno's censure to less than nine months and did not render a decision on recommending removal.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 133 because they are not true.

134.    The censure included removing Vassar and Denno from all assigned duties and suspended them from Board activities and benefits outside of their roles as elected officials for the remainder of 2024.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 134 of the Amended Complaint.

**Damages to Dr. Lipton Due to Vassar and Denno's Retaliation**

135.    Vassar and Denno's false and retaliatory claims have harmed and continue to harm Dr. Lipton's reputation and professional opportunities within his field.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 135 of the Amended Complaint because they

are not true.

136.    Dr. Lipton has already suffered damages, as he has been prevented from consideration for advanced positions in his field at a time in his career where he is eminently qualified to progress.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 136 because they are not true.

137.    On or around April 15, 2024, Dr. Lipton was explicitly told by a superior that the public attack on his character was seen as a liability for a promotion to the position of Associate Dean for Research Analytics.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 137 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

138.    In Dr. Lipton's search for higher level professional opportunities outside of MSU, an executive search firm associate shared that the public attacks on his character labeling him a "racist" will negatively impact his employment chances, despite his superb qualifications.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 138 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

139.    As an at-large member of the Faculty Senate, MSU Bylaws on Academic Governance required Dr. Lipton to include his name on the ballot as a candidate for re-election as the Faculty Senate Chair for the 2024-2025 school year.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 139 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

140.    However, because of the ongoing damage to Dr. Lipton's career and reputation due to Defendants' actions and inactions detailed in this Complaint and to reduce his exposure to ongoing harassment, he actively campaigned against his own re-election as Faculty Senate Chair. His candidate statement read: "DO NOT VOTE FOR ME."

**ANSWER:**

Dr. Vassar denies that Plaintiff's career or reputation has been damaged because of any alleged actions or omissions of any of the Defendants. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 140 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

### Dr. Lipton's Attempts to Resolve this Matter without Litigation

141.    On or around January 16, 2024, in an attempt to resolve this matter amicably with the Board of Trustees, Dr. Lipton's counsel communicated an offer of settlement to the Board of Trustees' attorney, MSU General Counsel Brian Quinn.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 141 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs. Dr. Vassar further moves to strike the allegations in this paragraph pursuant to Rule 12(f)(2).

142.    On or around March 26, 2024, Dr. Lipton's counsel sent a second offer of

Case 1:24-cv-01029-HYJ-SJB    ECF No. 91, PageID.685    Filed 07/03/25    Page 46 of 72

settlement, this time with a monetary demand, to Quinn.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 142 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs. Dr. Vassar further moves to strike the allegations in this paragraph pursuant to Rule 12(f)(2).

143.    Pursuant to the MSU Board of Trustees bylaws, "The authority of the Trustees is conferred upon them as a board, and they can bind the corporation and the University only by acting together as a board. No individual member shall commit the board to any policy, declaration, or action without prior approval of the board."

**ANSWER:**

Dr. Vassar admits only the allegations in paragraph 143 of the Amended Complaint accurately quote a portion of the MSU Board of Trustees bylaws, but denies that this paragraph completely and accurately describes the legal authority of the Board.

144.    Upon information and belief, in violation of his ethical obligations as an attorney, Quinn did not consult with the full board prior to responding to Dr. Lipton's second offer of settlement.

**ANSWER:**

Dr. Vassar objects to answering the allegations in paragraph 144 of the Amended Complaint because answering these allegations would require the disclosure of attorney-client privileged communications between Mr. Quinn and the Boart of Trustees. Dr. Vassar further moves to strike the allegations in this paragraph pursuant to Rule 12(f)(2).

145.    On April 11, 2024, Tebay, Scott, and Kelly spoke with Dr. Lipton about the matters

outlined in this Complaint.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 145 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

146. Tebay told Lipton, "We ruined your career."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 146 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

147.    Scott told Lipton, "You should sue us."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 147 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

**The Board's Continued Retaliation Against Dr. Lipton to the Present Day**

148.    On Thursday, September 5, 2024, MSU's Board of Trustees and top administrators held a lunch meeting at which the faculty liaisons to the Board requested the Trustees develop a statement regarding their own commitment to civil discourse that echoed an MSU Presidential statement on the matter.

**ANSWER:**

Dr. Vassar admits that there was a working lunch meeting on September 5, 2024 and that this subject was raised, but denies that this was the purpose of the meeting. not the purpose of the

meeting

149.    All of the named Board Members were in attendance at the September 5, 2024 meeting except Knake Jefferson.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 149 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

150.    At that meeting, Vassar asked Dr. Lipton to share an example of a lack of civil discourse in the last year by the Board.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 150 of the Amended Complaint.

151.    Dr. Lipton cited an incident during a March 3, 2024, virtual Board of Trustees meeting, in which Vassar displayed an explicit hand gesture on multiple occasions during comments made by Trustee Scott and Trustee Dianne Byrum.

**ANSWER:**

Dr. Vassar admits only that Plaintiff mentioned this alleged incident.

152.    MSU's Office of Audit, Risk and Compliance ("OARC") investigated the matter and issued a subsequent report, finding: "OARC staff review of the video clearly identifies the explicit gesture (displaying middle finger) for a prolonged period of time when Trustee Byrum was speaking and when Trustee Scott was speaking."

**ANSWER:**

Dr. Vassar admits only that the OAR report states this, but denies that the findings are accurate.

153.    Despite the clear video and photographic depictions of the explicit gesture and the OARC report finding, Vassar told Dr. Lipton that the incident was both "false" and, inexplicably, "a result of eczema."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 153 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to her proofs.

154.    Vassar then explained to Dr. Lipton that he did not have any grounds to speak about civil discourse, since he had used the term "mob" to label students, and since in her opinion, he had displayed an absence of self-reflection in his October 29 quote to The Detroit News.

**ANSWER:**

Dr. Vassar admits that she disagreed with Plaintiff and that she was critical of his use of the word "mob" to describe students, but denies that she used the language alleged in paragraph 154 of the Amended Complaint and the remaining allegations in this paragraph.

155.    This exchange occurred in the presence of the entire Board of Trustees, MSU President Kevin Guskiewicz, MSU Interim Provost Thomas Jeitschko, MSU General Counsel Brian Quinn, and faculty colleagues.

**ANSWER:**

Dr. Vassar neither admits nor denies that Mr. Quinn was present because she lacks information sufficient to form a belief as to the truth of this allegation. Dr. Vassar admits the remaining allegations in paragraph 155 of the Amended Complaint.

156.    In other words, even after the imposed censure, Vassar chose to target Dr. Lipton, affirmatively seek his commentary, and disparage him for his honest response, while at the same

time inaccurately re-characterizing his quote as "labeling students," in an attempt to embarrass and humiliate him in front of his superiors.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 156 of the Amended Complaint.

157.    Despite knowledge of the Miller & Chevalier Report detailing Vassar and Denno's coordinated and sustained effort to retaliate against Dr. Lipton for his exercise of free speech and the Board of Trustees' subsequent censure of Vassar and Denno, no one on the Board or in the administration interjected to provide support to Dr. Lipton during this exchange.

**ANSWER:**

Dr. Vassar denies that she or Trustee Denno engaged in a coordinated and sustained effort to retaliate against Plaintiff and denies that she acted unlawfully in any manner. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 157 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

**The Board's Failure to Hold Vassar and Denno Accountable and Protect Dr. Lipton from Further Abuse**

158.    In the evening of Thursday, September 5, 2024, in light of Vassar's harassment of him at the lunch event, Dr. Lipton spoke with current Board of Trustees Chair Dan Kelly.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 158 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

159.    Dr. Lipton asked Chair Kelly if the Board of Trustees could have censured Vassar and Denno and limited their ability as Trustees for their entire terms, or if there had been a reason

the censure was set to end on December 31, 2024.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 159 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

160.    Kelly told Dr. Lipton that the Board could have censured Vassar and Denno for a longer period, up to and including the full duration of their board terms but chose not to.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 160 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

161.    Within the past week, Kelly has publicly admitted in the media that the Board's responsibilities include oversight:

> Whenever possible, the university should be united and moving in the same direction…But when you go through a matter like Nassar, or even some of the other issues we've been through in the last seven-and-a-half years, there is a role to step out and act independently and exercise their oversight…[W]hen there's suspicions that we're headed in the wrong direction…then it is our job to be that oversight.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 161 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

162.    On September 29, 2024, MSU held an investiture ceremony for President Kevin Guskiewicz.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 162 of the Amended Complaint.

163.    At that ceremony, Defendants allowed Vassar and Denno to sit on the stage with university leaders and visiting dignitaries and share the spotlight with the rest of the Board in full academic regalia, despite being suspended from all board related activities.

**ANSWER:**

Dr. Vassar admits only that she and Trustee Denno sat on the stage with other university leaders and visiting dignitaries in full academic regalia, but denies the remaining allegations in paragraph 163 of the Amended Complaint because they are not true.

164.    This act constituted a deliberate public display of support for Vassar and Denno, actively overruling their censure.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 164 of the Amended Complaint because they are not true.

165.    Dr. Lipton was invited by President Guskiewicz and attended the event, sitting ten rows from the front of the stage.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 165 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

166.    After the ceremony, an MSU donor hosted a reception for a select number of MSU leaders, donors, and trustees.

**ANSWER:**

Dr. Vasar admits only that there was a reception, but neither admits nor denies the remaining allegations in paragraph 166 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

167.    Dr. Lipton was invited by the President to attend the reception.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 167 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

168.    Defendants allowed Vassar and Denno to attend this event as well, in violation of the censure resolution.

**ANSWER:**

Dr. Vassar admits that she and Trustee Denno attended this event, but denies the remaining allegations in paragraph 168 of the Amended Complaint because they are not true.

169.    Seeing Vassar and Denno mingling with MSU leaders and donors shocked and humiliated Dr. Lipton.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 169 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

170.    Defendants humiliated and silenced Dr. Lipton by allowing Vassar and Denno to attend these events in violation of their own resolution that barred Vassar and Denno from Board-related activities that were not required by law.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 170 because they are not true.

171.    On November 15, 2024, the MSU BSA posted an accusation on Instagram falsely charging Dr. Lipton with "continuously harass[ing]" student and BSA member Miselo Chola.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 171 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

172.    The post goes on: "BSA was mentioned in a lawsuit, not as defendants but accused of being 'manipulated' into activism, undermining our voices."

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 172 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

173.    Upon information and belief, this refers to the instant lawsuit in which Chola is mentioned in the Miller & Chevalier Report.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 173 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

174.    This demonstrates the Board of Trustees' and named Board Members' continued failure to properly address and remedy the ongoing retaliation by Vassar and Denno toward Dr. Lipton.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 174 because they are not true.

175.    Given that the Board itself referred Vassar and Denno to the Governor for consideration of their removal, and that Defendants failed to enforce their own sanction against Vassar and Denno, it is clear that the Board of Trustees and the named Board Members cannot be trusted to uphold even basic operating standards as they concern the trustees in question.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 175 because they are not true.

176.    The Board of Trustees and the named Board Members affirmatively voted to only censure Vassar and Denno for less than nine months.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 176 of the Amended Complaint.

177.    Kelly confirmed to Dr. Lipton that the Board of Trustees could have censured Vassar and Denno for longer but chose not to.

**ANSWER:**

Dr. Vassar neither admits nor denies the allegations in paragraph 177 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

178.    Through their censure resolution, Defendants consciously decided not to recommend Vassar and Denno for removal, despite spending over $2 million on an investigation that demonstrated, by a preponderance of the evidence, that Vassar and Denno had repeatedly violated their duties and obligations as Trustees and had taken specific action to retaliate against Dr. Lipton.

**ANSWER:**

Dr. Vassar denies that she and Trustee Denno have violated any of their legal duties or obligations, deny that they have acted unlawfully and denied that they have taken any actions to retaliate against Plaintiff. Dr. Vassar neither admits nor denies the remaining allegations in paragraph 178 of the Amended Complaint because she lacks information sufficient to form a belief as to their truth and, therefore, leaves Plaintiff to his proofs.

179.    Further, Defendants sent a recommendation to the Governor that Vassar and Denno be considered for removal with no other finding.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 179 of the Amended Complaint.

180.    Such actions demonstrate that the Board of Trustees and named Board Members are unwilling to protect Dr. Lipton and other potential victims of Vassar and Denno's abuse.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 180 of the Amended Complaint.

181.    Vassar and Denno's official censure ends on January 1, 2025, at which time they will again have full, unfettered access to all of the powers, privileges, and duties of the MSU Board of Trustees.

**ANSWER:**

Dr. Vassar admits the allegations in paragraph 181 of the Amended Complaint.

**COUNT I**

**Retaliation**
**42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution**
**(The Named Board Members)**

182.    Plaintiff incorporates by reference the allegations contained in the previous

paragraphs as if fully restated herein.

**ANSWER:**

Dr. Vassar incorporates her responses to the preceding paragraphs as if restated in full herein.

183.    Defendants were at all times acting under color of law when they unlawfully retaliated against Plaintiff in violation of his First Amendment rights.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 183 because they are not true.

184.    Plaintiff made comments to The Detroit News as a private individual on a matter of public interest, the chaos and disruption caused by Vassar at the October 27, 2023 MSU Board of Trustees meeting.

Dr. Vassar denies the allegations in paragraph 184 because they are not true.

185.    Whether speech by a public employee is protected depends on whether the speech was ordinarily within the course of his duties as a public employee, not whether it merely concerns those duties. *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345 (6th Cir. 2010).

**ANSWER:**

The allegations in paragraph 185 are legal conclusions to which no response is required. To the extent a response is required, Dr. Vassar denies that paragraph 185 accurately and completely summarizes the holdings of the case law cited therein.

186.    Plaintiff's speech was protected by the First Amendment to the U.S. Constitution as it was not ordinarily within the course of his duties as an MSU employee.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 186 of the Amended Complaint because they are not true.

187.    After Plaintiff spoke to The Detroit News, Vassar and Denno abused their authority as Trustees and engaged in retaliation including but not limited to calling Dr. Lipton a "racist" and a "tool," engaging in public and private disparagement of his character, encouraging MSU students to file false complaints and draft false statements against him, encouraging MSU students to make false statements to the media, and other acts which harmed and damaged his reputation as outlined in this Complaint.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 187 of the Amended Complaint because they are not true.

188.    The named Board Members witnessed Vassar and Denno's unconstitutional retaliation on several occasions, including at the December 14, 2023 private meeting and the December 15, 2023 virtual Board of Trustees meeting.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 188 of the Amended Complaint because they are not true.

189.    The named Board Members also gained further knowledge of Vassar and Denno's unconstitutional retaliatory conduct upon issuance of the Miller & Chevalier Report.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 189 of the Amended Complaint because they are not true.

190.    Despite this knowledge, Defendants allowed Vassar and Denno's retaliatory campaign to continue, including at the subsequent September 5, 2024 meeting.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 190 of the Amended Complaint because they are not true.

191.    By failing to appropriately respond to Vassar and Denno's retaliation, Defendants implicitly authorized and acquiesced in the unconstitutional conduct.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 191 of the Amended Complaint because they are not true.

192.    Defendants' retaliation was designed to silence Plaintiff and prevent him from further speaking out against Vassar which would likely prevent an ordinary person from continuing to engage in the exercise of free speech, and did prevent Plaintiff from continuing to engage in the exercise of free speech.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 192 of the Amended Complaint because they are not true.

193.    Defendants' retaliation has had a chilling effect that acts as a deterrent to free speech.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 193 of the Amended Complaint because they are not true.

194.    Plaintiff's protected speech was a motivating factor in Defendants' retaliatory

actions.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 194 of the Amended Complaint because they are not true.

195.    Plaintiff's right to free speech and expression under the law is one of which reasonable officials in the named Board Members' positions would have known.

**ANSWER:**

Dr. Vassar denies that Plaintiff's rights were violated, denies that her actions violated any rights of Plaintiff and denies the remaining allegations in paragraph 195 of the Amended Complaint because they are not true.

196.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained and continues to sustain injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity; loss of professional opportunities; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to his reputation and good name; and loss of the ordinary pleasures of everyday life.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 196 of the Amended Complaint because they are not true.

**COUNT II**

**Monell Liability**
**42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution**
**(All Defendants)**

197.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

**ANSWER:**

Dr. Vassar incorporates her responses to the preceding paragraphs as if restated in full herein.

198.    At all times relevant, the Board and the named Board Members in their official capacities failed to properly train, discipline and supervise Vassar and Denno, promulgating and maintaining de facto unconstitutional customs, policies, or practices rendering them liable for the constitutional violations alleged herein under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).

**ANSWER:**

A response to the allegations in paragraph 198 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 198 because they are not true.

199.    At all times relevant, the Board and the named Board Members in their official capacities knew or should have known that the policies, procedures, training supervision and discipline of Vassar and Denno were inadequate for the tasks that they were required to perform.

**ANSWER:**

A response to the allegations in paragraph 199 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 199 because they are not true.

200.    At all times relevant, the Board and the named Board Members in their official capacities failed to establish, implement or execute adequate policies, procedures, rules and regulations to ensure Board Members did not engage in unconstitutional retaliation against individuals such as Plaintiff.

**ANSWER:**

A response to the allegations in paragraph 200 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 200 because they are not true.

201.    At all times relevant, the Board and the named Board Members in their official capacities were on notice or should have known of a history, custom, propensity, and pattern at times relevant to the allegations herein, for Vassar and Denno to act with deliberate indifference and unconstitutionally against individuals, specifically Plaintiff, by threatening to engage in and engaging in retaliation against individuals with whose constitutionally protected speech they disagreed.

**ANSWER:**

A response to the allegations in paragraph 201 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 201 because they are not true.

202.    The Board and the named Board Members in their official capacities implicitly authorized, approved, or knowingly acquiesced in the retaliation against individuals, and knew or should have known that such treatment would deprive individuals, such as Plaintiff, of their constitutional rights.

**ANSWER:**

A response to the allegations in paragraph 202 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 202 because they are not true.

203.    By inadequately training and/or supervising Board Members and having a custom

or policy of deliberate indifference to the constitutional rights of individuals such as Plaintiff, the Board and the named Board Members in their official capacities encouraged and cultivated the conduct which violated Plaintiff's rights under the First Amendment to the United States Constitution.

**ANSWER:**

A response to the allegations in paragraph 203 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 203 because they are not true.

204.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained and continues to sustain injuries and damages, including, but not limited to, economic loss, loss of earnings and earnings capacity; loss of professional opportunities; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to his reputation and good name; and loss of the ordinary pleasures of everyday life.

**ANSWER:**

A response to the allegations in paragraph 204 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 204 because they are not true.

205.    Defendants are not entitled to governmental or qualified immunity.

**ANSWER:**

A response to the allegations in paragraph 205 is not required because the Court has already determined that Plaintiff does not have a claim under *Monell*. To the extent that a response is required, Dr. Vassar denies the allegations in paragraph 205 because they are not true.

## COUNT III

### Injunctive Relief

206.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

**ANSWER:**

Dr. Vassar incorporates her responses to the preceding paragraphs as if restated in full herein.

207.    Defendants' adverse actions against Dr. Lipton were in direct response to his statements reported by The Detroit News and were taken for the purpose of freezing or deterring further speech regarding matters of public concern.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 207 of the Amended Complaint because they are not true.

208.    Vassar and Denno used their positions as MSU Trustees with power and influence over students, administration, and faculty to incite and encourage retaliation against Dr. Lipton for his protected speech.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 208 of the Amended Complaint because they are not true.

209.    The Board of Trustees and named Board Members implicitly authorized and acquiesced in the unconstitutional conduct.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 209 of the Amended Complaint because they

are not true.

210.    Plaintiff's right to free speech and expression under the law is one of which reasonable persons in the state officials' position would have known.

**ANSWER:**

Dr. Vassar denies that Plaintiff's rights were violated, denies that her actions violated any rights of Plaintiff and denies the remaining allegations in paragraph 195 of the Amended Complaint because they are not true.

211.    Plaintiff is seeking the recall, resignation, or removal of Vassar and Denno from their positions on the MSU Board of Trustees.

**ANSWER:**

Dr. Vassar admits only that Plaintiff is seeking such relief, but denies that this Court has the legal authority to grant this relief and denies that her conduct justifies this relief.

212.    Plaintiff is also seeking an order enjoining any further disparagement or retaliation for his protected speech by any employee, agent, representative, or Trustee of MSU.

**ANSWER:**

Dr. Vassar admits only that Plaintiff is seeking such an order, but denies that she has engaged in any unlawful disparagement or retaliation, denies that he was engaging in protected speech when he spoke with the *Detroit News* and denies that Plaintiff is entitled to such an order as a matter of law or fact.

213.    In the absence of such orders, Plaintiff will continue to suffer irreparable injury as he remains a faculty member subject to the actions and review of Defendants.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 213 because they are not true.

214.    Further, irreparable harm is presumed where 42 U.S.C. § 1983, 28 U.S.C. § 2201, and 5 U.S.C. §§702, 704, and 706 authorizes such relief to remedy the violations of Plaintiff's Constitutional rights.

**ANSWER:**

Dr. Vassar denies that 5 U.S.C. § 702, 704, and 706 have any applicability to the claims alleged in this case, denies that Plaintiff has suffered any harm, denies that he is entitled to any declaratory or injunctive relief in his favor and denies the remaining allegations in paragraph 214 of the Amended Complaint.

215.    The threatened injury to Plaintiff outweighs any harm to Defendants as Defendants have also been and will continue to be damaged by presence of Vassar and Denno on the Board of Trustees and by any further actions of Vassar and/or Denno to silence faculty members' speech.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 215 because they are not true.

216.    Such an injunction is not averse to public policy as the public has an interest in the MSU Board of Trustees not engaging in retaliation against MSU faculty members and in the removal of Vassar and Denno from the MSU Board of Trustees.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 216 because they are not true.

217.    Dr. Lipton has no other adequate remedy at law to address the continued damage to his professional name and reputation and his continued forced silence.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 217 because they are not true.

## DAMAGES

218.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:**

Dr. Vassar incorporates her responses to the preceding paragraphs as if restated in full herein.

219.    As a direct and proximate result of the above-described conduct, Plaintiff suffered general, specific, incidental and consequential injuries and damages, past, present and future, in excess of the jurisdictional threshold of this Court, an amount that shall be fully proven at the time of trial. These past, present, and future damages include, but are not limited to, the following:

a.    Pain, suffering, and mental and emotional distress;

b.    Physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, and humiliation;

c.    Damage to employment and employment prospects;

d.    Damage to professional reputation;

e.    Economic loss;

f.    All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

**ANSWER:**

Dr. Vassar denies the allegations in paragraph 219 because they are not true.

WHEREFORE Defendant Rema Vassar requests that this Honorable Court dismiss the Amended Complaint with prejudice, award her all of the costs, including attorney and expert fees incurred to defend this action and award her such other relief as this Court deems just and equitable.

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
C. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
tludden@lipsonneilson.com

Dated: July 3, 2025

## AFFIRMATIVE DEFENSES

Defendant Dr. Rema Vassar, through her counsel, for her affirmative defenses to the Amended Complaint, states as follows:

### AFFIRMATIVE DEFENSE 1

The Eleventh Amendment to the United States Constitution prohibits federal courts from exercising subject matter jurisdiction over state officials sued in their official capacity. Therefore, this Court should dismiss the claims against Dr. Vassar in her official capacity.

### AFFIRMATIVE DEFENSE 2

Dr. Vassar is protected from liability in her personal capacity under the doctrine of qualified immunity. Therefore, this Court should dismiss the claims against Dr. Vassar in her personal capacity.

### AFFIRMATIVE DEFENSE 3

Plaintiff has failed to state a claim on which relief can be granted. Therefore, this Court should dismiss the Amended Complaint with prejudice.

### AFFIRMATIVE DEFENSE 4

Plaintiff did not suffer any adverse employment action, which is an essential element of his sole remaining claim against Dr. Vassar. Therefore, this Court should dismiss the claims against Dr. Vassar with prejudice.

68

## AFFIRMATIVE DEFENSE 5

Plaintiff's claims, in whole or in part, are barred because Plaintiff was not engaged in a constitutionally protected activity when he spoke with the Detroit News. Therefore, this Court should dismiss the Amended Complaint with prejudice.

## AFFIRMATIVE DEFENSE 6

Plaintiff's claims, in whole or in part, are barred because any alleged adverse action did not cause Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. Therefore, this Court should dismiss the Amended Complaint with prejudice.

## AFFIRMATIVE DEFENSE 7

Plaintiff's claims, in whole or in part, are barred because any alleged adverse action was not motivated as a response to Plaintiff's alleged exercise of his constitutional rights. Therefore, this Court should dismiss the Amended Complaint with prejudice.

## AFFIRMATIVE DEFENSE 8

Plaintiff's claims, in whole or in part, are barred because Plaintiff did not suffer any actual deprivation of any rights secured by the U.S. Constitution or laws of either the United States or the State of Michigan. Therefore, this Court should dismiss the Amended Complaint with prejudice.

## AFFIRMATIVE DEFENSE 9

Plaintiff's claims, in whole or in part, are barred because Plaintiff did not suffer any actual deprivation of any rights secured by the U.S. Constitution or laws of either the United States or the State of Michigan by a person acting under the color of state law. Therefore, this Court should dismiss the Amended Complaint with prejudice.

**AFFIRMATIVE DEFENSE 10**

Plaintiff's claims, in whole or in part, are barred because any alleged statements made by Dr. Vassar in her individual capacity are also protected by the First Amendment. Therefore, this Court should dismiss the Amended Complaint with prejudice.

**AFFIRMATIVE DEFENSE 11**

Plaintiff's claims, in whole or in part, are barred because the Amended Complaint fails to plead conspiracy with the requisite specificity. Therefore, this Court should dismiss the Amended Complaint with prejudice.

**AFFIRMATIVE DEFENSE 12**

Plaintiff's claims, in whole or in part, are barred because Plaintiff has failed to allege facts that would plausibly state a claim for an ongoing violation of Plaintiff's First Amendment rights. Therefore, this Court should dismiss the Amended Complaint with prejudice.

**AFFIRMATIVE DEFENSE 13**

Plaintiff's claims, in whole or in part, are barred because none of the Defendants can be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Therefore, this Court should dismiss Count II of the Amended Complaint with prejudice.

**AFFIRMATIVE DEFENSE 14**

Plaintiff has not suffered any irreparable harm and is not otherwise entitled to injunctive relief.

**AFFIRMATIVE DEFENSE 15**

This Court does not have the legal authority to remove Dr. Vassar from her elected office of Trustee of Michigan State University. Therefore, Plaintiff is barred from seeking or obtaining this requested injunctive relief.

**AFFIRMATIVE DEFENSE 16**

Plaintiff has failed to mitigate his alleged damages, entitlement to which is expressly denied, or Defendants are entitled to a setoff of any interim earnings if Plaintiff can establish that he is entitled to monetary relief.

**AFFIRMATIVE DEFENSE 17**

Plaintiff's request for punitive damages is barred because the legal or factual bases for his claims do not permit the recovery of punitive damages.

**AFFIRMATIVE DEFENSE 18**

Plaintiff chose to insert himself into what was an essentially political dispute involving public officials elected by the people of the state of Michigan to serve them on the Board of Trustees of Michigan State University. He further decided – allegedly in his personal capacity - to publicly criticize other members of the public that were also participating in a public discussion of a political issue. Plaintiff can hardly complain, and is not entitled to any judicial relief, because some of those people criticized by Plaintiff chose to criticize him back.

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
C. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
tludden@lipsonneilson.com

Dated: July 3, 2025

**LIMITED RELIANCE ON JURY DEMAND**

Defendant Dr. Rema Vassar relies upon the jury demand filed herein and demands a jury trial on all claims triable thereby.

Respectfully submitted,

LIPSON NEILSON P.C.

*/s/ C. Thomas Ludden*
. Thomas Ludden (P45481)
Attorneys for Defendant Vassar Only
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
Dated: July 3, 2025                                              tludden@lipsonneilson.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all ECF

participants.

/s/ C. Thomas Ludden